DONALD W. SEARLES (Cal. Bar No. 135705)
Email: searlesd@sec.gov
DOUGLAS M. MILLER (Cal. Bar No. 240398)
Email: millerdou@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka Patel, Associate Regional Director
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Southern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION, <br><br> Plaintiff, <br><br> vs. <br><br> STUART FROST AND FROST MANAGEMENT COMPANY, LLC, <br><br><br> Defendants. | Case No.8:19-cv-01559-JLS-JDE <br><br> **DECLARATION OF DONALD W. SEARLES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STUART FROST AND FROST MANAGEMENT COMPANY, LLC AS TO LIABILITY AND INJUNCTIVE RELIEF** |

I, Donald W. Searles, hereby declare pursuant to 28 U.S.C. § 1746:

1. I represent the Securities and Exchange Commission ("SEC") in this action, and I am a Senior Trial Counsel for the SEC's Los Angeles Regional Office. I have personal knowledge of the following facts and, if called as a witness, could and would testify competently thereto.

2. I am submitting this declaration in support of the SEC's Motion for Partial Summary Judgment Against Stuart Frost and Frost Management Company, LLC as to liability and injunctive relief.

3. Attached hereto as **Exhibit 1** is a true and correct copy of the Demand for Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

4. Attached hereto as **Exhibit 2** is a true and correct copy of the Amended Counterclaims filed by Respondents in the *Matter of Frost Management Company, et al. v. Hollencrest Bayview Partners, et al.,* JAMS No. 1200052341 ("Amended Counterclaims").

5. Attached hereto as **Exhibit 3** is a true and correct copy of the Final Award in the *Matter of Frost Management Company, et al. v. Hollencrest Bayview Partners, et al.,* JAMS No. 1200052341 ("Final Award").

6. Attached hereto as **Exhibit 4** is a true and correct copy of the Orange County Superior Court corrected amended judgment confirming Final Award.

7. Attached hereto as **Exhibit 5** is a true and correct copy of the California Court of Appeal, Fourth Appellate District, Division Three, dismissal of appeal of Final Award.

8. Attached hereto as **Exhibit 6** is a true and correct copy of JAMS Ex. 1 (Draft Seed Fund Operating Agreement).

9. Attached hereto as **Exhibit 7** is a true and correct copy of JAMS Ex 2 (Fund II Limited Partnership Agreement).

10. Attached hereto as **Exhibit 8** is a true and correct copy of JAMS Ex.

1

4 (FVP GP Operating Agreement, dated May 29, 2013).

11. Attached hereto as **Exhibit 9** is a true and correct copy of JAMS Ex. 18-Frost (photograph of whiteboard at July 19, 2006 meeting).

12. Attached hereto as **Exhibit 10** is a true and correct copy of JAMS Ex. 21 (outline of talking points by Hollencrest for July 19, 2016 meeting concerning undisclosed conflicts of interest, failure to disclose material information, and breach of fiduciary duties).

13. Attached hereto as **Exhibit 11** is a true and correct copy of JAMS Ex. 28 (FVP Investor Executive Summary, February 2012).

14. Attached hereto as **Exhibit 12** is a true and correct copy of JAMS Ex. 78 (Email dated April 29, 2016 attaching Seed Fund 2015 year-end financial statements and Q4 2015 Quarterly Report).

15. Attached hereto as **Exhibit 13** is a true and correct copy of JAMS Ex. 79 (Email dated April 29, 2016 attaching Fund II 2015 year-end financial statements and Q4 2015 Quarterly Report).

16. Attached hereto as **Exhibit 14** is a true and correct copy of JAMS Ex. 87 (Fund II Quarterly Report as of December 31, 2016).

17. Attached hereto as **Exhibit 15** is a true and correct copy of JAMS Ex. 90 (Management representation letter to Marcum, dated April 30, 2013, signed by Guerry and Frost, on behalf of Seed Fund).

18. Attached hereto as **Exhibit 16** is a true and correct copy of JAMS Ex. 111 (Management representation letter to Marcum, dated March 31, 2016, signed by Guerry and Frost, on behalf of Seed Fund).

19. Attached hereto as **Exhibit 17** is a true and correct copy of JAMS Ex. 117 (Seed Fund investment committee consent, dated July 7, 2012).

20. Attached hereto as **Exhibit 18** is a true and correct copy of JAMS Ex. 152 (Fund II investment committee minutes, dated April 17 2014).

21. Attached hereto as **Exhibit 19** is a true and correct copy of JAMS Ex. 157

2

(Fund II investment committee minutes, dated June 19, 2014).

22.    Attached hereto as **Exhibit 20** is a true and correct copy of JAMS Ex. 178 (Fund II investment committee resolution, dated February 18, 2015).

23.    Attached hereto as **Exhibit 21** is a true and correct copy of JAMS Ex. 223 (FVP Investor Executive Summary, dated October 18, 2011).

24.    Attached hereto as **Exhibit 22** is a true and correct copy of JAMS Ex. 250 (Email dated December 2, 2011, from Frost to Pellizzon and Schulman. encouraging Hollencrest investors to invest before close of Seed Fund).

25.    Attached hereto as **Exhibit 23** is a true and correct copy of JAMS Ex. 251 (Email dated January 17, 2011, from Frost to Pellizzon and Schulman, encouraging Hollencrest investors to invest in Frost VP Funds).

26.    Attached hereto as **Exhibit 24** is a true and correct copy of JAMS Ex. 310 (Email exchange dated April 21. 2014, between Frost and Wolford, where Frost is representing that GE has committed $40 million).

27.    Attached hereto as **Exhibit 25** is a true and correct copy of JAMS Ex. 349 (Email dated April 8, 2016, in which Wolford is requesting Q4 2015 quarterly reports for Seed Fund and Fund II).

28.    Attached hereto as **Exhibit 26** is a true and correct copy of JAMS Ex. 351 (Email dated April 27, 2016, in which Wolford is requesting Q4 2015 quarterly reports for Seed Fund and Fund II).

29.    Attached hereto as **Exhibit 27** is a true and correct copy of JAMS Ex. 352 (Email dated April 29, 2016, in which Wolford is requesting Q4 2015 quarterly reports for Seed Fund and Fund II).

30.    Attached hereto as **Exhibit 28** is a true and correct copy of JAMS Ex. 370 (Email dated July 11, 2016, in which Vigouroux reports to Colaco, Pellizzon and Wolford the he has been mandated by Frost to stop speaking with them).

31.    Attached hereto as **Exhibit 29** is a true and correct copy of JAMS Ex. 372 (Email dated July 12, 2016, from Pellizzon to Frost, requesting meeting regarding

material information of concern).

32.    Attached hereto as **Exhibit 30** is a true and correct copy of JAMS Ex. 383 (Email dated July 14, 2016, from Wolford to Frost and others requesting that all recipients be present for meeting on July 19, 2016).

33.    Attached hereto as **Exhibit 31** is a true and correct copy of JAMS Ex. 387 (Email dated July 18, 2016, from Sheakley to Greg Pellizzon concerning July 19, 2019 meeting with Frost).

34.    Attached hereto as **Exhibit 32** is a true and correct copy of JAMS Ex. 408 (Respondents' demand, dated July 26, 2016, to inspect books and records of portfolio companies).

35.    Attached hereto as **Exhibit 33** is a true and correct copy of JAMS Ex. 422 (Email dated October 21, 2016, attaching a confidential letter from Stuart Frost to investors, reporting that Frost has filed a demand for arbitration, among other things).

36.    Attached hereto as **Exhibit 34** is a true and correct copy of JAMS Ex. 448 (notes of July 19, 2016 meeting).

37.    Attached hereto as **Exhibit 35** is a true and correct copy of JAMS Ex. 499 (Email dated December 6, 2014 from Green to Vigouroux and Guerry regarding conversation with GE).

38.    Attached hereto as **Exhibit 36** is a true and correct copy of JAMS Ex. 501 (Email dated January 10, 2015, from Frost to Green and other FVP members regarding status of relationship with GE).

39.    Attached hereto as **Exhibit 37** is a true and correct copy of JAMS Ex. 507 (email dated January 26, 2016, from  Joseph Kann, at Rockwell, to Frost and Guerry questioning why FDC management is compensated in so many different ways and that the "model feels expensive.").

40.    Attached hereto as **Exhibit 38** is a true and correct copy of JAMS Ex. 514 (Email dated November 4, 2016 from Giles to Frost and Guerry concerning DST's complaining that "we are spending their money on companies they know nothing

4

about.").

41.     Attached hereto as **Exhibit 39** is a true and correct copy of JAMS Ex. 525 (Email dated September 29, 2014 from Kramer to Frost, complaining about lack of timely communication and expressing concerns about Frost's commitment level while being a continent away)

42.     Attached hereto as **Exhibit 40** is a true and correct copy of JAMS Ex. 597 (Services agreement, dated September 4, 2013, between FVP and SegOne, signed by Frost and Burke).

43.     Attached hereto as **Exhibit 41** is a true and correct copy of JAMS Ex. 653 (Letter from International School of Florence, dated January 30, 2014, accepting Frost's children for classes beginning in September 2014).

44.     Attached hereto as **Exhibit 42** is a true and correct copy of JAMS Ex. 748 (Invoice dated October 1, 2012 from FVP to FMC for "management services" for November and December 2012, in amount of $16,000 per month).

45.     Attached hereto as **Exhibit 43** is a true and correct copy of JAMS Ex. 754 (Spreadsheet showing deductions from Frost's allocation of Fund II net management fees, and deductions for Ferrari, yacht, children's private school in Florence, Italian villas, moving expenses, chartered air travel, credit card expenses, resulting in net distributable income of approximately $3,303 in 2014, and $24,385 in 2015.

46.     Attached hereto as **Exhibit 44** is a true and correct copy of JAMS Ex. 766 (Email dated February 7, 2017 from Guerry to Marcum explaining incubator fees, that fee is fixed at $40,000 per month, but that some companies, through outside investors, have been able to negotiate lower amounts, or have moved from the incubator).

47.     Attached hereto as **Exhibit 45** is a true and correct copy of JAMS Ex. 773 (Email dated August 8, 2016, in which Frost is asking Guerry "just for kicks – can you do a refresh on the fund cash flow assuming 12 new companies between now and July?").

48.    Attached hereto as **Exhibit 46** is a true and correct copy of JAMS Ex. 774 (Email dated May 20, 2014, in which Guerry is reporting to Frost "right now we need 2 more companies to cover our costs (with Genie coming out in June)").

49.    Attached hereto as **Exhibit 47** is a true and correct copy of JAMS Ex. 776 (Email dated July 25, 2014 from Guerry to Frost summarizing Frost's personal expenses deducted from Frost's share of net management fees).

50.    Attached hereto as **Exhibit 48** is a true and correct copy of JAMS Ex. 777 (Email dated August 26, 2014 from Patel to Guerry stating that "the incubator doesn't have more cash because we picked up the $100K expense for air partners" [referring the Frost's chartered jet expenses while living in Italy].

51.    Attached hereto as **Exhibit 49** is a true and correct copy of JAMS Ex. 780 (Email dated March 29, 2015 in which Guerry is reporting to Frost "We are still a bit stretched at the incubator. We need one more company in order to cover the plan for the rest of the year.").

52.    Attached hereto as **Exhibit 50** is a true and correct copy of JAMS Ex. 794 (Email dated February 18, 2017, in which Giles is reporting DST is "very pissed about investment and starting 2 Newco's without their knowledge feels very sneaky to them.").

53.    Attached hereto as **Exhibit 51** is a true and correct copy of JAMS Ex. 795 (Email dated September 20, 2016 from Lelinski to Giles discussing $10,000 as a reasonable monthly incubator fee).

54.    Attached hereto as **Exhibit 52** is a true and correct copy of JAMS Ex. 796 (Email dated June 10, 2016, in which Frost is reporting to various members of the incubator "It's critically important to get the incubator to break even ASAP.  To achieve this we need to…start a few new companies ASAP.").

55.    Attached hereto as **Exhibit 53** is a true and correct copy of JAMS Ex. 798 (Email dated March10, 2016, in which Frost reports "It looks like the next wire into the fund will hit next Wednesday. As a result, payroll will be in everyone's account two

6

days later (i.e. Thurs instead of Tues).

56. Attached hereto as **Exhibit 54** is a true and correct copy of JAMS Ex. 799 (Email dated December 10, 2014), in which Guerry is reporting to Frost an updated forecast, adding one more net new company, and further stating that if the $70,000 in incubator fees coming in from Syntego, Edge and SegOne go away, "we would need two new companies (beyond Newco 23) to over the incubator allocation.").

57. Attached hereto as **Exhibit 55** is a true and correct copy of JAMS Ex. 829 (Email dated June 24, 2016 from Vigouroux to Frost, attaching Colaco's investment proposal in light of deteriorating financial condition of the incubator).

58. Attached hereto as **Exhibit 56** is a true and correct copy of JAMS Ex. 830 (Email dated June 28, 2016 from Vigouroux to Frost, in which Frost rejects Colaco's investment proposal).

59. Attached hereto as **Exhibit 57** is a true and correct copy of JAMS Ex. 840 (Seed Fund Operating Agreement signed by Wolford).

60. Attached hereto as **Exhibit 58** is a true and correct copy of JAMS Ex. 852 (Frost email – do not offer services on "some kind of ala carte bases. It's prix fixe only).

61. Attached hereto as **Exhibit 59** is a true and correct copy of JAMS Ex. 853 (Services agreement, dated September 12, 2012, signed by Frost and Guerry).

62. Attached hereto as **Exhibit 60** is a true and correct copy of JAMS Ex. 855 (Service agreement dated July 13, 2013 between FDC and Manna, signed by Frost and Guerry).

63. Attached hereto as **Exhibit 61** is a true and correct copy of JAMS Ex. 881 (Frost's K-1 for 2014).

64. Attached hereto as **Exhibit 62** is a true and correct copy of JAMS Ex. 936 (Email dated July 27, 2016, in which Lelinski states "DST will be PISSED if they find out you gave us $500k and within days we used $200K to pay Frost for "phantom past debt.").

7

65.    Attached hereto as **Exhibit 63** is a true and correct copy of JAMS Ex. 948 (Fund III quarterly report showing that it was formed and invested $270,000 in Adaptive Well three days before Adaptive Well was dissolved).

66.    Attached hereto as **Exhibit 64** is a true and correct copy of JAMS EX. 1011 (Email dated November 14, 2014, from Frost to other members of incubator, in which Frost states that the situation with GE "is even worse than I imagined. It is simply not tenable for them to insist we have a mgt team in place before they fund and then hear them complain that we've burned through too much cash.").

67.    Attached hereto as **Exhibit 65** is a true and correct copy of JAMS Ex. 1052 (Outline of Testimony of Keith Palzer, October 13, 2017).

68.    Attached hereto as **Exhibit 66** is a true and correct copy of JAMS Ex. 1082 (Email exchange dated February 7, 2012, in which Shulman is commenting to Frost and others on the latest version of the Seed Fund presentation, recommending mention of the "what the checks and balances are for investment decisions?  Possibly this involves the investment committee and/or advisory board?").

69.    Attached hereto as **Exhibit 67** is a true and correct copy of JAMS Ex. 1088 (Email dated March 22, 2017, on behalf of Young to Frost, complaining about Frost's misrepresentations to DST and stating that "DST is shocked about the size and frequency of the "management fee" being charged by your management company in relation to the limited, if any valued being added to the process…As you should know, ideation companies such as this cannot take on the burden of excessive expenses, such as your management fees, and still be successful…").

70.    Attached hereto as **Exhibit 68** is a true and correct copy of JAMS EX. 1089 (Email dated May 5, 2017, from Giles to representatives of DST, providing accounting of how DST's $5 million investment was spent, including payment of incubator fees to portfolio companies that had no CEOs or employees).

71.    Attached hereto as **Exhibit 69** is a true and correct copy of JAMS Ex. 1090 (Email dated July 10, 2014, in which Guerry is reporting to Frost that "As of my last

budget forecast, we were running a bit tight given the lack of a second new company in the latest batch.").

72.    Attached hereto as **Exhibit 70** is a true and correct copy of JAMS Ex. 1097 (Email dated January 28, 2015, in which Guerry is reporting to Frost concerns raised by Mahoney regarding timing and amount of incubator fees and Guerry's explanation to Mahoney that they charge fees as soon as the Investment Committee approves the investment and that "starting the companies with an incubator allocation is required for us to cover our expenses."  Frost replies that Mahoney "needs to get with the program.").

73.    Attached hereto as **Exhibit 71** is a true and correct copy of JAMS Ex. 1101 (Slide 249 (referencing GE), 256 and 274).

74.    Attached hereto as **Exhibit 72** is a true and correct copy of JAMS Ex. 1102 (email dated August 27, 2015 between Frost and Calhoun requesting voluntary reduction of incubator fees as services are not needed, to which Frost responds "the incubator answer is no simply not an option.:)

75.    Attached hereto as **Exhibit 73** is a true and correct copy of JAMS Ex. 1103 (Email dated September 24, 2015, in which Guerry is reporting to Frost "Here is the updated forecast through 9/30.  We will draw $20-30K on the LOC this month to make it.  That will leave $40-50K available.  We really need to start a couple of companies.").

76.    Attached hereto as **Exhibit 74** is a true and correct copy of JAMS Ex. 1111 (Email dated March 4, 2016, from Guerry to Frost, reporting that he had given information to Paul Cate "but not in enough detail for him to be able to separate out the related party payments (incubator fee)."

77.    Attached hereto as **Exhibit 75** is a true and correct copy of JAMS Ex. 1114 (email between Sootkoos and Guerry, forwarded to Frost, regarding Sootkoos request to refund $42,000 incubabor fee as portfolio company had only weeks of runway left).

78.    Attached hereto as **Exhibit 76** is a true and correct copy of JAMS Ex. 1117 (Email dated June 10, 2016, in which Guerry is reporting to Frost that "there is

9

possibility we can get through" if "we get a couple of companies funded…").

79.    Attached hereto as **Exhibit 77** is a true and correct copy of JAMS Ex. 1135 (Email dated June 7, 2014, from Frost to Turney, in which Frost denies the rumor that he is moving to Italy).

80.    Attached hereto as **Exhibit 78** is a true and correct copy of JAMS Ex. 1146 (Email dated March 1, 2016, in which Guerry and Frost discuss their commitment to Rockwell to revise the incubator fees, and that it may lead to a significant reduction in fees, which would lead to a "need to add 3 companies to cover our nut at this lower rate…4th company would allow us to add to incubator.").

81.    Attached hereto as **Exhibit 79** is a true and correct copy of JAMS Ex. 1203 (Email dated June 8, 2016, from Frost to Guerry and others within FDC, stating "If we can funding, starting a few new companies is still possible… New companies would be incredibly helpful in terms of incubator cash flow.").

82.    Attached hereto as **Exhibit 80** is a true and correct copy of JAMS Ex. 1290 (Wolford's supplemental request for documents).

83.    Attached hereto as **Exhibit 81** is a true and correct copy of JAMS Ex. 1311 (Expert Report of Alex Malecki).

84.    Attached hereto as **Exhibit 82** is a true and correct copy of JAMS Ex. 1319 (Board Resolution dated August 29, 2016, approving dissolution of Adaptive Well).

85.    Attached hereto as **Exhibit 83** is a true and correct copy of JAMS Ex. 1327 (Expert Report of David Weekly).

86.    Attached hereto as **Exhibit 84** is a true and correct copy of JAMS Ex. 1372 (Manna Series C price calculations).

87.    Attached hereto as **Exhibit 85** is a true and correct copy of JAMS Ex. 1393 (Summary of arbitration costs invoiced to Seed Fund by FDC).

88.    Attached hereto as **Exhibit 86** is a true and correct copy of JAMS Ex. 1452 (Email dated July 17, 2015, from Guerry to representatives of DST explaining that typical fee is $40,000 per month and do not vary from month to month or stage to

stage).

89.     Attached hereto as **Exhibit 87** is a true and correct copy of excerpts from a certified copy of the transcript of Alexander Maleki's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

90.     Attached hereto as **Exhibit 88** is a true and correct copy of excerpts from a certified copy of the transcript of Cary Breese's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

91.     Attached hereto as **Exhibit 89** is a true and correct copy of excerpts from a certified copy of the transcript of David Weekly's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

92.     Attached hereto as **Exhibit 90** is a true and correct copy of excerpts from a certified copy of the transcript of Doug Lawson's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

93.     Attached hereto as **Exhibit 91** is a true and correct copy of excerpts from a certified copy of the transcript of John Burke's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

94.     Attached hereto as **Exhibit 92** is a true and correct copy of excerpts from a certified copy of the transcript of Keith Palzer's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

95.     Attached hereto as **Exhibit 93** is a true and correct copy of excerpts from a certified copy of the transcript of Mark Lelinski's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et*

11

*al.*, JAMS No. 1200052341.

96.    Attached hereto as **Exhibit 94** is a true and correct copy of excerpts from a certified copy of the transcript of Stuart Frost's testimony during Day 8 of Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

97.    Attached hereto as **Exhibit 95** is a true and correct copy of excerpts from a certified copy of the transcript of Stuart Frost's testimony during Day 9 of Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

98.    Attached hereto as **Exhibit 96** is a true and correct copy of excerpts from a certified copy of the transcript of Stuart Frost's testimony during Day 12 of Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

99.    Attached hereto as **Exhibit 97** is a true and correct copy of excerpts from a certified copy of the transcript of Stuart Frost's testimony during Day 13 of Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

100.    Attached hereto as **Exhibit 98** is a true and correct copy of excerpts from a certified copy of the transcript of William Guerry's testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

101.    Attached hereto as **Exhibit 99** is a true and correct copy of excerpts from a certified copy of the transcript of Stuart Frost's March 11, 2021 deposition testimony in this matter.

102.    Attached hereto as **Exhibit 100** is a true and correct copy of David Weekly's Arbitration Slides from his testimony during Arbitration in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

103.   Attached hereto as **Exhibit 101** is a true and correct copy of Robert Wolford's Compendium of Declarations and Exhibits in support of their request for punitive damages in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

104.   Attached hereto as **Exhibit 102** is a true and correct copy of the List of Depositions taken in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

105.   Attached hereto as **Exhibit 103** is a true and correct copy of Respondents and Counterclaimants Trial Brief in the Matter of *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 1200052341.

106.   Attached hereto as **Exhibit 104** is a true and correct copy of the Seed Fund Stock Purchase Agreement regarding Cirro, Inc.

107.   Attached hereto as **Exhibit 105** is a true and correct copy of the Fund II Stock Purchase Agreement regarding Maana, Inc.

108.   Attached hereto as **Exhibit 106** is a true and correct copy of FMC's 2012 Form ADV.

109.   Attached hereto as **Exhibit 107** is a true and correct copy of FMC's 2013 Form ADV.

110.   Attached hereto as **Exhibit 108** is a true and correct copy of FMC's 2014 Form ADV.

111.   Attached hereto as **Exhibit 109** is a true and correct copy of FMC's 2015 Form ADV.

112.   Attached hereto as **Exhibit 110** is a true and correct copy of FMC's 2016 Form ADV.

113.   Attached hereto as **Exhibit 111** is a true and correct copy of FMC'S 2017 Form ADV.

114.   Attached hereto as **Exhibit 112** is a true and correct copy of JAMS Ex. 1078.

I declare under penalty of perjury that the foregoing is true and correct.


Executed on March 26, 2021 at Los Angeles, California.


                                        */s/Donald W. Searles*
                                        Donald W. Searles

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On March 26, 2021 I caused to be served the document entitled **DECLARATION OF DONALD W. SEARLES IN SUPPORT OF PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MOTION FOR PARTIAL SUMMARY JUDGMENT AGAINST STUART FROST AND FROST MANAGEMENT COMPANY, LLC AS TO LIABILITY AND INJUNCTIVE RELIEF** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐ **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  March 26, 2021

*/s/ Donald W. Searles*
Donald W. Searles

1

*SEC v. Stuart Frost, et al.*
**United States District Court—Central District of California**
**Case No. 8:19-cv-01559-JLS-JDE**

**SERVICE LIST**

Raymond C. Marshall
Robert Guite
Melissa Eaves
Sheppard, Mullin, Richter & Hampton, LLP
Four Embarcadero Center, 17th Floor
San Francisco, CA 94111
rmarhall@sheppardmullin.com
rguite@sheppardmullin.com
meaves@sheppardmullin.com
***Attorneys for Defendants Stuart Frost and Frost Management Company, LLC***

2