DONALD W. SEARLES (Cal. Bar No. 135705)
Email:  searlesd@sec.gov
DOUGLAS M. MILLER (Cal. Bar. No. 240398)
Email: millerdou@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Counsel
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

## Southern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>          Plaintiff,<br><br>    vs.<br><br>STUART FROST AND FROST MANAGEMENT COMPANY, LLC,<br><br>        Defendants. | Case No. 8:19-cv-01559-JLS-JDE<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:      July 16, 2021<br>Time:     10:30 a.m.<br>Ctrm:    10A<br>Judge:   Hon. Josephine L. Staton |

# TABLE OF CONTENTS

I.    INTRODUCTION .................................................................................... 1

II.   PROCEDURAL HISTORY ..................................................................... 1

III.  PLAINTIFF'S CLAIMS .......................................................................... 2

    A.    Summary Statement of Each Claim ............................................... 2

    B.    Elements Required to Establish Each Claim .................................. 3

        1.    Claim One – Sections 206(1) and 206(2) of the Advisers Act . 3

            a.    Investment Adviser ..................................................... 4

            b.    Misrepresentation ....................................................... 4

            c.    Scienter ...................................................................... 5

            d.    Negligence .................................................................. 6

            e.    Instrumentality of interstate commerce ...................... 6

        2.    Claim Two – Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder ................................................................. 6

    C.    Brief Description of Key Evidence in Support of Each Claim .......... 7

        1.    Claims One and Two ...................................................................... 7

            a.    The Offering Documents and Marketing Materials ....... 7

            b.    Expert Witnesses ........................................................ 9

            c.    Lay Witnesses ........................................................... 10

    D.    Anticipated Evidentiary Issues ..................................................... 11

    E.    Issues of Law ............................................................................... 12

        1.    Standards of Proof ....................................................................... 12

        2.    A permanent injunction is appropriate ............................... 14

        3.    Disgorgement Should Be Ordered ................................................ 15

        4.    Civil penalties should be imposed ................................... 16

    F.    Bifurcated Issues ......................................................................... 16

    G.    Jury Trial ...................................................................................... 16

    H.    Attorneys' Fees ........................................................................... 16

I.      Abandonment of Issues...............................................................16

# **TABLE OF AUTHORITIES**

## **CASES**

*Abrahamson v. Fleschner*,
    568 F.2d 862 (2d Cir. 1977) .................................................................. 4, 12

*Fin. Servs., Inc.*
    908 F. Supp. 718 (C.D. Cal 1995) ......................................................... 16

*Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*,
    JAMS No. 120005234 ................................................................................ 1

*Herman & MacLean v. Huddleston*
    459 U.S. 375 (1983) ................................................................................... 5

*Hollinger v. Titan Capital Corp.*
    914 F.2d 1564 (9th Cir. 1990) ................................................................. 5

*IMS/CPAs & Assocs.*,
    Securities Act Rel. No. 8031, 2001 SEC LEXIS 2323 (Nov. 5, 2001) .......... 13

*In re ChinaCast Educ. Corp. Sec. Litig.*,
    809 F.3d 471 (9th Cir. 2015) .................................................................. 14

*Liu v. SEC*
    140 S. Ct. 1936 (2020) ...................................................................... 15, 16

*Monetta Fin. Servs., Inc. v. SEC*,
    390 F.3d 952 (7th Cir. 2003) ............................................................. 5, 13

*SEC v. Abacus International Holding Corp.*
    [2001 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 2001 WL 940913
    (N.D. Cal. August 16, 2001) .................................................................. 16

*SEC v. ABS Manager, LLC*,
    No. 13cv319-GPC(BGS), 2014 U.S. Dist. LEXIS 175071 (S.D. Cal.
    Dec. 18, 2014 ......................................................................................... 13

*SEC v. Ahmed*
    308 F. Supp. 3d 628 (D. Conn. 2018) .................................................... 14

*SEC v. Berger*,
    244 F. Supp. 2d 180 (S.D.N.Y. 2001) ..................................................... 13

*SEC v. Burns*
    816 F.2d 471 (9th Cir. 1987) ................................................................... 5

*SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180 (1963) ........... 4, 5, 13, 14

*SEC v. First City Financial Corp., Ltd.*
    890 F.2d 1215 (D.C. Cir. 1989) ............................................................. 15

*SEC v. First Pacific Bancorp*
    142 F.3d 1186 (9th Cir. 1998) ................................................................ 15

*SEC v. GLT Dain Rauscher, Inc.*
  254 F.2d 852 (9th Cir. 2001) ................................................................ 6

*SEC v. Haligiannis,*
  470 F. Supp. 2d 373 (S.D.N.Y. 2007) ............................................. 4, 12

*SEC v. Janus Spectrum LLC,*
  Nos. 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710 (9th Cir. July
  1, 2020) ................................................................................................ 15

*SEC v. Mack*
  CV-1008383 DSF(PSWx), 2021 U.S. Dist. LEXIS 200288 (C.D. Cal.
  Aug. 7. 2012) ....................................................................................... 14

*SEC v. Mizrahi,*
  No. CV 19-2284 PA (JEMX), 2020 WL 6114913 (C.D. Cal. Oct. 5,
  2020) 15

*SEC v. Murphy*
  626 F.2d 633 (9th Cir. 1980) ......................................................... 14, 15

*SEC v. Nutmeg Grp., LLC,*
  162 F. Supp. 3d 754 (N.D. Ill. 2016) ................................................... 12

*SEC v. Platforms Wireless*
  617 F.3d 1072 (9th Cir. 2010) .................................................. 5, 15, 16

*SEC v. Quan,* 11-cv-723 (ADM)
  2013 WL 556252 (D. Minn. Oct. 8, 2013) ............................................. 7

*SEC v. Steadman,*
  967 F.2d 636 (D.C. Cir. 1992) ...................................................... 6, 7, 12

*SEC v. Wall Street Publ'g Inst., Inc.,*
  591 F. Supp. 1070 (D.D.C. 1984) ................................................... 5, 13

*SEC v. Yorkville Advisors, LLC,*
  No. 12 Civ. 7728 (GBD), 2013 U.S. Dist. LEXIS 110624 (S.D.N.Y.
  Aug. 2013) .............................................................................................. 7

*Steadman v. SEC,*
  603 F.2d 1126 (5th Cir. 1979) ............................................................. 13

*Vernazza v. SEC,*
  327 F.3d 851 (9th Cir. 2003) ............................................. 5, 6, 12, 13, 14

**Investment Advisors Act of 1940**

Section 202(a)(11)
  [15 U.S.C. §§ 80b-2(a)(11)] ................................................................. 12

Section 206
  [15 U.S.C. §§ 80-b6] ........................................................................ 5, 13

Section 206(1)
  [15 U.S.C. §§ 80b-6(1)] ............................................. 1, 2, 3, 4, 5, 12

Section 206(2)
[15 U.S.C. §§ 80b-6(2)]......................................... 1, 2, 3, 4, 6, 7, 12, 14

Section 206(4)
[15 U.S.C. §§ 80b-6(4)].................................... 1, 3, 6, 7, 12, 14

Section 209(e)
[15 U.S.C. §§ 80b-9(e)].................................................2, 16

**FEDERAL REGULATIONS**

Rule 206(4)-8
[17 C.F.R. § 275.206(4)-8]......................................1, 6, 7, 12, 14

Rule 206(4)-8(a)(1)
[17 C.F.R. § 275.206(4)-8(a)(1)]....................................... 6

Rule 206(4)-8(a)(1)-(a)(2)
[17 C.F.R. § 275.206(4)-8(a)(1)-(a)(2)]...................................3, 7

Rule 206(4)-8(a)(2)
[17 C.F.R. § 275.206(4)-8(a)(2)].................................... 7

**FEDERAL RULES OF CIVIL PROCEDURE**

Rule 38(b)
Fed. R. Civ. P. 38(b) ............................................ 16

**OTHER AUTHORITIES**

Advisers Act Rel.
No. 2628 at 23-24.............................................7, 12

*Amendments to Form ADV*
Advisers Act Rel. No. 3060, 2010 SEC LEXIS 2679 (Aug. 12, 2010).......... 13

Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0.................4, 6

Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.3....................5

U.S. Code Title 26. Internal Revenue Code
[26 U.S.C. § 6621].............................................. 15

## I.      INTRODUCTION

Pursuant to Local Rule 16-4, and the Court's Amended Civil Trial Order (Dkt. Nos. 24 & 31), Plaintiff Securities and Exchange Commission ("SEC") hereby submits this Memorandum of Contentions of Fact and Law.

## II.     PROCEDURAL HISTORY

The SEC's complaint, filed on August 13, 2019, alleges that Frost Management Company, LLC ("FMC"), an exempt reporting adviser to five private venture capital funds, and its sole owner, Stuart Frost ("Frost") (collectively "Defendants"), violated Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act"), 15 U.S.C. §§ 80b-6(1), 80b-6(2), 80b6(4), and Rule 206(4)-8 thereunder, 17 C.F.R. § 275.206(4)-8.  (Dkt. No. 1.)  In substance, the complaint alleges that Defendants breached their fiduciary duties as investment advisers and engaged in a scheme to defraud their advisory clients, consisting of five private venture capital funds and the funds' individual investors.  Defendants are alleged to have done this by: (1) charging over $14 million in undisclosed and excessive incubator fees to start-up companies in which the funds had invested; (2) not disclosing the actual amount of incubator fees that the companies paid Frost's company, Frost Data Capital, LLC ("FDC"): (3) creating more portfolio companies to generate even more excessive fees, and (4) charging some funds undisclosed management fees that were not earned and were paid to FMC and Frost.  (*Id.* at ¶¶ 4. 50.)

The SEC's case was filed after a 17-day arbitration hearing, initiated by Defendants, entitled *Frost Management Company, et al. v. Hollencrest Bayview Partners, LP et al.*, JAMS No. 120005234, which involved essentially the same underlying conduct, breaches of fiduciary duties and scheme to defraud at issue in this action.  That arbitration was preceded by an approximate 10-month period of fact discovery, in which 35 witnesses were deposed.  The arbitrator, Hon. Stephen J. Sundvold (Ret.), found that Frost breached his fiduciary duties, committed fraud, and

acted at least recklessly in managing two of the five private venture capital funds that are at issue in this action.

On March 26, 2021, the SEC moved for summary judgment as to liability and injunctive relief against Defendants based, in part, on the extensive evidentiary record and arbitration award entered against Defendants. (Dkt. No. 45.) The SEC contends that the arbitration proceeding involved the same underlying facts, breaches of fiduciary duty, and material misstatements and omissions that are pled in the SEC's complaint. (*Id.*) The SEC has asked the Court to grant summary judgment under the collateral estoppel doctrine. (*Id.*) The Court is scheduled to hear the SEC's motion for summary judgment on August 20, 2021. Defendants' opposition to the SEC's motion for summary judgment is due to be filed on or before July 30, 2021.

The SEC seeks entry of permanent injunctions against Defendants from committing future violations of the above statutory and regulatory provisions. The SEC also seeks an order requiring the disgorgement of all ill-gotten gains, together with prejudgment interest thereon, and the payment of civil penalties. *See* 15 U.S.C. §§ 80b-9(e).

## III.  **PLAINTIFF'S CLAIMS**

### A.  **Summary Statement of Each Claim**

1.  <u>Claim One</u> – Claim One alleges that Defendants violated Sections 206(1) and (2) of the Advisers Act through material misstatements and omissions, and breaches of fiduciary duties to the Funds and the Funds' investors, by failing to disclose material information and conflicts of interest regarding the incubator fees that were being paid using investor funds, including:

(a)   failing to disclose to the Frost VP Seed, LLC (the "Seed Fund"), the Frost VP Seed International, LLC (the "International Seed Fund"), and the FVP International Feeder Fund L.P. (the "International Feeder Fund"), that the portfolio companies in which they invested would be charged incubator fees;

(b)   failing to disclose to the Funds that the portfolio companies would

1   be charged flat-rate incubator fees as opposed to incubator fees charged on a case-by-
2   case basis, or at or below market rates;

3           (c)    failing to disclose the amount of incubator fees actually charged to
4   the portfolio companies in quarterly status reports provided to the Funds' investors;

5           (d)    failing to disclose the existence or the amount of incubator fees
6   actually charged to the portfolio companies to the Funds' advisory committees;

7           (e)    failing to disclose to the Funds that Frost created some of the new
8   portfolio companies for the principal purpose of generating additional incubator fees
9   to cover FDC's overhead and Frost's extravagant personal expenses; and

10           (f)    charging the portfolio companies in which the Funds invested
11   over $14 million in excessive incubator fees.

12       In addition, Claim One alleges that Defendants charged the Seed Fund and
13   International Seed Fund undisclosed management fees of $402,875 and improperly
14   charged the Frost VP Early Stage Fund II, LP ("Fund II") over $1.7 million in
15   management fees that should have been offset by the excessive incubator fees
16   charged.

17       2.   <u>Claim Two</u> – Claim Two alleges that Defendants violated Section 206(4)
18   of the Advisers Act and Rule 206(4)-8(a)(1)-(a)(2) thereunder, by repeatedly
19   defrauding investors in the Funds in failing to disclose the existence of and/or the
20   amount of incubator fees and management fees, thus making the Funds' governing
21   agreements, pitch materials, and quarterly status reports misleading.   In addition, the
22   complaint alleges that Defendants engaged in multiple years of deceptive conduct by
23   charging undisclosed, excessive and/or improper incubator and management fees and
24   by starting new portfolio companies to generate additional incubator fees to cover
25   FDC's overhead and Frost's personal expenses.

26      **B.**   **Elements Required to Establish Each Claim**

27        **1.**   **Claim One – Sections 206(1) and 206(2) of the Advisers Act**

28   For its claims under Section 206(1) and (2), the SEC has the burden of proving

each of the following elements by a preponderance of the evidence:

1.      Defendants were investment advisers;

2.      Defendants utilized the mails or interstate commerce to employ a device, scheme, or artifice defraud;

3.      Defendants' device, scheme or artifice to defraud violated their fiduciary duty to their advisory clients in that it included false and misleading statements or omissions of material fact; and

4.      Defendants acted with scienter, for purposes of Section 206(1), and with scienter or negligence, for purposes of Section 206(2). .

*See* 15 U.S.C. §§ 80b-6(1) & 80b-6(2).

### a.      Investment Adviser

"People who manage[] the funds of others for compensation are 'investment advisers' within the meaning of the [Advisers Act].'"  *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977)) (president/COO of investment adviser who had exclusive control over the management, operation, and investment decisions of hedge fund was an investment adviser under the Advisers Act).  An investment adviser is a fiduciary with "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients."  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963).

### b.      Misrepresentation

A misrepresentation is a statement of material fact that is false or misleading when it is made.  A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (definition of recurring terms).  An investment adviser's failure to disclose material information constitutes "fraud or deceit" under

the Advisers Act.  *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2003) (citing *Capital Gains*, 375 U.S. at 200).  Courts have held that an investment adviser's potential conflicts of interest are material and must be disclosed.  *Vernazza v. SEC*, 327 F.3d 851, 859 (9th Cir. 2003)  (citing *Capital Gains*, 375 U.S. at 201)*; SEC v. Wall Street Publ'g Inst., Inc.*, 591 F. Supp. 1070, 1084 ((D.D.C. 1984) (failure to disclose an economic self-interest constitutes a breach of an investment adviser's fiduciary duty under Section 206).

### c.    Scienter

Scienter under Section 206(1) requires a showing that the defendant acted knowingly or recklessly.   It does not require a showing of 'willful intent to defraud.'"  *Vernazza*, 327 F.3d  at 860; *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990).  It can be shown by either "deliberate recklessness" or "conscious recklessness," and may be inferred from circumstantial evidence.  *SEC v. Platforms Wireless*, 617 F.3d 1072, 1092 (9th Cir. 2010); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91, n.30 (1983); *SEC v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987).

A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant also acts knowingly if he or she omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.3 (definition of "knowingly").

Recklessness means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.  *See id.*, Civil § 18.3 (discussed in definition of "knowingly").

### d.      Negligence

A violation of Section 206(2) only requires a showing of simple negligence. *See SEC v. Steadman*, 967 F.2d 636, 641-43 n.5 (D.C. Cir. 1992); *see also Vernazza v. SEC*, 327 F.3d at 860 .   A person acts "negligently" when he or she fails to act with reasonable prudence or fails to conform to the standard of care that would be exercised by a reasonable person.   *See SEC v. GLT Dain Rauscher, Inc.*, 254 F.2d 852, 856 (9th Cir. 2001).

### e.      Instrumentality of interstate commerce

An instrumentality of interstate commerce includes the postal mails, e-mails, telephone, telegraph, telefax, interstate highway system, Internet and similar methods of communication and travel from one state to another within the United States.   *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (modified) (definition of recurring terms).

### 2.      Claim Two – Section 206(4) of the Advisers Act and Rule 206(4)-8 Thereunder

For its claim under Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder, the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.      Defendants were the investment advisers of a pooled investment vehicle;

2.      Defendants utilized the mails or interstate commerce;

3.      Defendants made an untrue statement of material fact to an investor or prospective investor in the pooled investment vehicle or omitted a material fact necessary under the circumstances to keep the statement that was made from being misleading; and

4.      Defendants acted with at least negligence.

*See* 15 U.S.C. §§ 80b-6(4); 17 C.F.R. § 275.206(4)-8.

Rule 206(4)-8(a)(1) provides that it is a fraudulent practice for an investment adviser to make any untrue statement of a material fact to an investor or prospective

investor in a pooled investment vehicle, or to omit to state a material fact necessary to make the statement made, in light of the circumstances under which they were made, not misleading.  Rule 206(4)-8(a)(2) provides that it is a fraudulent practice for an investment adviser to a pooled investment vehicle to engage in "fraudulent, deceptive, or manipulative" conduct with respect to any investor or prospective investor in the pooled investment vehicle.  17 C.F.R. § 275.206(4)-8a(1)-(2). Scienter is not required for violations of Section 206(4) or Rule 206(4)-8 thereunder. *Steadman*, 967 F.2d at 647; *see also SEC v. Quan*, 11-cv-723 (ADM), 2013 WL 556252, at \*16 (D. Minn. Oct. 8, 2013) (applying *Steadman* to Rule 206(4)-8); *SEC v. Yorkville Advisors, LLC*, No. 12 Civ. 7728 (GBD), 2013 U.S. Dist. LEXIS 110624 \*3 (S.D.N.Y. Aug. 2013) (SEC must establish at least negligence to prove violations of 206(2) and 206(4)); Advisers Act Rel. No. 2628 at 23-24.

## C.   Brief Description of Key Evidence in Support of Each Claim

### 1.   Claims One and Two

#### a.   The Offering Documents and Marketing Materials

At the heart all of the SEC's claims against Frost and FMC is the allegation that they breached their fiduciary duties to the fund investors by failing to disclose material information and conflicts of interest regarding the nearly $22 million in incubator fees that were paid using investor funds.  Therefore, as to both Claims One and Two, in order to show the lack of disclosure, the SEC will rely primarily on the offering documents and marketing materials for the various funds, which Frost and FMC disseminated to investors.  These offering documents and marketing materials will include the PowerPoint presentations made to investors, operating and partnership agreements signed by investors, various email exchanges between Frost and investors, and executive summaries provided to investors.  The SEC anticipates that it will call investors who received these documents and that they will testify that these documents failed to disclose the existence of or the actual amount of incubator fees being paid using investors funds.

For example, the SEC anticipates that it will show in connection with one of the funds, the Seed Fund, that investors received the Frost VP Seed, LLC Amended and Restated Operating Agreement (the "Seed Fund Agreement"). The SEC will show that the Seed Fund Agreement does not authorize the manager of the Seed Fund, that is Frost Management Company ("FMC"), to collect a management fee. It merely authorizes payment by the Seed Fund to reimburse the managers "out-of-pocket" expenses. Although the Seed Fund Agreement identifies FDC ("the Incubator"), and that investment opportunities in companies formed by the Incubator ("Portfolio Companies") will be offered to the Seed Fund, nowhere does the Seed Fund Agreement disclose to investors or otherwise authorize that the Seed Fund will be responsible for payment of the Incubator's expenses, the payment of the Portfolio Companies fees paid to the Incubator, or the dollar amount of any such fees.

To further show the lack of disclosure about the fees being paid with investor money from the Seed Fund, the SEC anticipates it will introduce marketing materials that were provided to investors in connection with the Seed Fund. These marketing materials led investors to believe the Incubator would provide services pursuant to arms-length transactions between the Incubator and the Portfolio Companies, and in a capital efficient manner:

> It is expected that the services provided from the incubator to the startup companies will be agreed to between the Boards of each individual company and [the incubator] *on a case-by-case basis*, and are expected to be *adjusted based on the individual needs of each company* as their business matures. [The incubator's] policy will be to *only charge for services that the startup companies would require in the normal course of business*. In general, this should mean that the startups receive higher quality services at a lower price than they would otherwise be able to afford (due to [the incubator's] ability to provide economies of scale.

The SEC anticipates the marketing materials will also show that Frost touted a "lean" start-up approach: "Our approach is to ensure that each company is highly capital efficient, especially in the earlier stages." Frost further represented that the Incubator's mode was "based on the popular Lean Startup methodology." The SEC

anticipates it will show that this methodology emphasizes that start-ups should spend only what is necessary in their early stages, and that Frost touted that this process "allows us to bring new products to market very quickly and with modest initial investments."

Similarly, the SEC anticipates that it will show in connection with the Frost VP Early Stage Fund II, L.P., Limited Partnership Agreement (the "Fund II Agreement") that, unlike the Seed Fund Agreement, it authorized the Fund II general partners to collect a management fee of two percent (2%) per year. All "normal operating expenses" incurred in connection with the management of Fund II were to be paid from the management fee, including salaries, wages, travel, entertainment, overhead, rent, office expenses, and other expenses incurred in managing the investments of Fund II. The Fund II Agreement, unlike the Seed Fund Agreement, states that the Incubator "may receive a monthly fee" from the Portfolio Companies in exchange for certain shared services ("Service Fee"). However, the Service Fee would reduce the amount of the management fee defendants were entitled to receive unless "such Service Fee [did] not exceed reasonable market rates." The SEC anticipates that it will show none of the Frost entities ever bothered to research market rates and that what Frost and FMC charged the Portfolio Companies far exceeded market rates such services.

### b.    Expert Witnesses

To show that these and other representations in the offering documents and marketing materials were materially false and misleading, the SEC anticipates it will call three expert witness: David B. Weekly, Alex Malecki and Keith Palzer. The SEC anticipates that Weekly, a certified public accountant, will testify, in substance, that investor funds were spent in a manner that was inconsistent with and beyond the representations made in the offering documents and the marketing materials for the funds. According to his expert report, the SEC anticipates Weekly will testify that the total excess incubator expenses paid to FDC through December 31, 2017 was

$15,440,841 and that, of this amount, the excess fees attributable to investor funds was $12,798,195. The SEC anticipates that Weekly will also testify about how much money Frost was paid by the Incubator, which was at least $2,983,685 according to his expert report.

The SEC anticipates that Malecki, an expert with specialized knowledge of standard industry practices involving the incubation of startup companies, the services typically provided by the incubator to portfolio companies, and the reasonable costs and fees for such services, will testify, in substance, that the fees the Incubator charged the Portfolio Companies, which were typically in the range of $35,000 to $40,000 per month, were excessive and not in accord with industry standards. In other words, the fee agreements would not be categorized as an "arms-length" transaction, were not for services that startup companies would require in the normal course of business, and the Incubator's flat rate, "one size fits all" fee model was not consistent with industry standards.

Palzer is an expert with specialized knowledge in investment fund manager governance, management, and operations, including private fund alternative investment vehicles such as private equity, venture capital, hedge, private credit, structured credit, commodity, managed futures, and other funds. The SEC anticipates that he will testify, in substance, that Frost and FMC failed to meet investment fund management industry standards in failing to disclose to investors in the Seed Funds that the Portfolio Companies in which the funds invested would be charged service fees by the Incubator. The SEC anticipates he will further testify that Frost failed to comply with industry standards by (i) selling securities issued by the Portfolio Companies to the funds without obtaining proper consent; (ii) neglecting to convene or utilize "limited partner advisory committees" ("LPACs"); (iii); and (iv) failing to cause the funds to issue financial reports as required by the organizational documents.

### c.    Lay Witnesses

The SEC anticipates calling several lay witnesses, including Fund investors

and several of the chief executive officers ("CEOs") of the Portfolio Companies, who will further demonstrate that representations in the offering documents and marketing materials were materially false and misleading, and that the incubator fees charged to the Portfolio companies were excessive.  For example, the SEC anticipates that several of the CEOs of the Portfolio Companies will testify that they consistently complained that the fees charged by the Incubator did not reflect the value received from the Incubator.  One or more are anticipated to describe the fees as "inflated" and that they valued the services at a fraction of what they were paying.  The SEC anticipates that the CEOs will also testify that the services provided and the fees charged by the Incubator were non-negotiable and that even though they objected to paying them they were required to pay nonetheless.  Finally, to show the fees were not adjusted based on the individual needs of each company as their business matured, the SEC anticipates the CEO witnesses will testify that when they asked for a breakdown or accounting of how the fees were calculated, their requests were repeatedly rejected.  One or more of the CEOs are expected to testify that when they tried to negotiate a lower fee based on the services the company needed, Frost responded by stating that "[the Incubator] does not offer its services on some kind of a la carte basis. It's prix fixe only."

### D.    Anticipated Evidentiary Issues

The SEC has filed three *in limine* motions to preclude defendants Frost and FMC from offering certain evidence and/or arguments at trial.  One of the motions seeks to preclude Defendants from offering two experts' testimony at trial. Dkt. No. 61.  The SEC's second *in limine* motion seeks to preclude Defendants from offering any evidence or argument at trial that they reasonably relied on the advice or presence of counsel.  Dkt. No. 62.  In its third in *limine* motion, the SEC seeks to preclude Defendants from offering any evidence or argument at trial regarding an unsigned version of an operating agreement related to the Seed Fund.  Dkt. No. 63.

E.     **Issues of Law**

1.     **Standards of Proof**

Section 206(1) and 206(2) of the Advisers Act make it unlawful for an investment adviser to employ any device, scheme, or artifice to defraud any client or prospective client or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.  Scienter is required for Section 206(1) and may be established by showing knowing or reckless conduct, while Section 206(2) can be satisfied by a showing of simple negligence. *See SEC v. Steadman*, 967 F.2d at 641-43 n.5; *see also Vernazza*, 327 F.3d at 860. Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder prohibit an investment adviser from, directly or indirectly, engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative.  The SEC must establish at least negligence to prove a violation of 206(4); Advisers Act Rel. No. 2628 at 23 - 24.

As a threshold matter, both FMC and Frost are investment advisers.  Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. . . ."  FMC meets this definition because it provided investment advice for fees that it charged; it also registered as an exempt reporting adviser that registered with California in 2012.  This fact is not is dispute.

Frost also meets the definition of investment adviser.  Courts have held that "'people who manage[] the funds of others for compensation are 'investment advisers' within the meaning of the [Advisers Act].'"  *SEC v. Haligiannis,* 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977)); *accord SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 772 (N.D. Ill. 2016) *SEC v. ABS Manager, LLC*, No. 13cv319-GPC(BGS), 2014 U.S. Dist. LEXIS 175071, at 10 (S.D. Cal. Dec. 18, 2014; *SEC v. Berger*, 244 F. Supp. 2d

180, 193 (S.D.N.Y. 2001.  Here, Frost is the sole owner and managing member of FMC as well as the sole owner of the managing members and general partners of the Funds, and he received compensation for giving advice to the funds through those ownership interests and in directing the funds' investments in the portfolio companies.  Again, these facts are not in dispute.

An investment adviser is a fiduciary with "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients." *Capital Gains*, 375 U.S. at 194 .  An investment adviser's failure to disclose material information constitutes "fraud or deceit" under the Advisers Act.  *Monetta* , 390 F.3d at 955 (citing *Capital Gains*, 375 U.S. at 200).  Courts have held that an investment adviser's potential conflicts of interest are material and must be disclosed.  *Vernazza*, 327 F.3d at 859 (citing *Capital Gains*, 375 U.S. at 201)*; see also IMS/CPAs & Assocs.*, Securities Act Rel. No. 8031, 2001 SEC LEXIS 2323, at *31 (Nov. 5, 2001) (Commission op.) ("economic conflicts of interest, such as undisclosed compensation, are material facts that must be disclosed"); *Wall Street Publ'g Inst.,* 591 F. Supp. at 1084  (failure to disclose an economic self-interest constitutes a breach of an investment adviser's fiduciary duty under Section 206).

The SEC does not have to prove that Defendants were registered advisers with SEC in order to prove any of its Section 206 violations.  These violations apply to any "investment adviser," regardless of their registration status.

The SEC must prove that Defendants' breaches of fiduciary duty were material. The standard for "materiality under the Advisers Act is whether there is a substantial likelihood  that a reasonable investor (here, client) would have considered the information [at issue] important." *Amendments to Form ADV*, Advisers Act Rel. No. 3060, 2010 SEC LEXIS 2679, at *23 n.35 (Aug. 12, 2010); *see also Steadman*, 603 F.2d at 1130 .  Based on the evidence the SEC expects to present, any reasonable investor would consider it important when deciding whether to invest to know that

the portfolio companies in which they had invested were paying undisclosed or improperly charged incubator fees that diminished the portfolio companies' assets. Investors would also have considered it important to know that some of the portfolio companies in which they were invested were not created because Frost thought these companies could pursue new and viable ideas but were created to generate additional incubator fees to cover Frost's extravagant personal expenses. Similarly, investors would have considered it important to know of the undisclosed and/or improperly charged management fees because paying these fees directly impacted the Funds' assets.

The same evidence showing that Frost knowingly and/or recklessly breached his fiduciary duties to the Funds also demonstrates his scienter. *See, e.g., Vernazza*, 327 F.3d at 860; *SEC v. Ahmed*, 308 F. Supp. 3d 628, 655 (D. Conn. 2018); *SEC v. Mack*, CV-1008383 DSF(PSWx), 2021 U.S. Dist. LEXIS 200288, at *6 (C.D. Cal. Aug. 7. 2012).

Further, for purposes of Frost's liability under 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8, there can be no question that Frost acted at least negligently by falling below the standard of care expected of an investment adviser through his self-dealing. For an investment adviser, the standard of care is based on its fiduciary duty. *SEC v. Capital Gains*, 375 U.S. at 191-92. Because Frost controlled FMC, his scienter and negligence can be imputed to the firm. *See, e.g., In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (scienter of senior controlling officers may be imputed to corporation).

## 2.    A permanent injunction is appropriate

To obtain an permanent injunction, the SEC must establish that there is a reasonable likelihood of future violations. *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980). Whether a likelihood of future violations exists depends upon the totality of the circumstances. *Id.* The existence of past violations may give rise to an inference that there will be future violations. *Id.* Courts also consider factors such as

the degree of scienter involved, the isolated or recurrent nature of the violative conduct, the defendant's recognition of the wrongful nature of the conduct, the likelihood that, because of the defendant's occupation, future violations may occur, and the sincerity of defendant's assurances (if any) against future violations.  *See Murphy*, 626 F.2d at 655.  For all of the reasons set forth above, permanent injunctions are appropriate.

### 3.    Disgorgement Should Be Ordered

Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable; a district court has broad equity powers to order the disgorgement of ill-gotten gains obtained through violation of the securities laws.  *SEC v. Platforms Wireless*, 617 F.3d 1072, 1096 (9th Cir. 2010); *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998).  In *Liu v. SEC*, the Supreme Court recently reaffirmed the Commission's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims."  *Liu v. SEC*, 140 S. Ct. 1936, at 1940 (2020); *see SEC v. Janus Spectrum LLC, Nos*. 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710, at \*3 (9th Cir. July 1, 2020).

*Liu* did not disturb the principle that "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'"  *Platforms Wireless*, 617 F.3d at 1096 (quoting *SEC v. First Pac. Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998)); *SEC v. Mizrahi*, No. CV 19-2284 PA (JEMX), 2020 WL 6114913, at \*1 (C.D. Cal. Oct. 5, 2020).  Once the SEC has done this, the burden then shifts to the defendants to "demonstrate that the disgorgement figure was not a reasonable approximation."  *Platforms Wireless*, 617 F.3d at 1096, quoting *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989).

Additionally, disgorgement normally includes prejudgment interest calculated based on the rate provided in 26 U.S.C. § 6621 for tax underpayments.  *See Platforms Wireless*, 617 F.3d at 1099.  This "ensure[s] that the wrongdoer does not profit from

the illegal activity," *SEC v. Cross Fin. Servs., Inc.*, 908 F. Supp. 718, 734 (C.D. Cal 1995), *aff'd sub nom. SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998), and nothing in *Liu* has disturbed this principle.

### 4.   Civil penalties should be imposed

If the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" a third tier penalty may be imposed.  *See* 15 U.S.C. §§ 80b-9(e).  The factors used to determine the appropriateness of an injunction are helpful when assessing penalties.  *SEC v. Abacus International Holding Corp.*, [2001 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 91, 542, 2001 U.S. Dist. LEXIS 12635, 2001 WL 940913, *5 (N.D. Cal. August 16, 2001).

### F.   Bifurcated Issues

All relief is to be determined by the Court.

### G.   Jury Trial

Defendants demanded a jury trial in their Answer to the SEC's complaint pursuant to Federal Rule of Civil Procedure 38(b). (Dkt. No. 16.)

### H.   Attorneys' Fees

The SEC does not seek attorney's fees in this action.

### I.   Abandonment of Issues

The SEC is not abandoning any of the claims pleaded in its complaint.


Dated:  June 25, 2021

                                          */s/ Donald W. Searles*
                                          Donald W. Searles
                                          Douglas M. Miller
                                          Attorney for Plaintiff
                                          Securities and Exchange Commission

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On June 25, 2021, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on all the parties to this action addressed as stated on the attached service list:

☐ **OFFICE MAIL:** By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐ **PERSONAL DEPOSIT IN MAIL:** By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐ **EXPRESS U.S. MAIL:** Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐ **HAND DELIVERY:** I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐ **UNITED PARCEL SERVICE:** By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☒ **ELECTRONIC MAIL:** By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒ **E-FILING:** By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐ **FAX:** By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  June 25, 2021

*/s/ Donald W. Searles*
Donald W. Searles

1

1
2

***SEC v. Stuart Frost, et al.***
**United States District Court—Central District of California**
**Case No. 8:19-cv-01559-JLS-JDE**

3

**<u>SERVICE LIST</u>**

4

5
6
7
8

Andrew C. Callari
34197 Pacific Coast Highway, Suite 100
Dana Point, CA 92629
ac@callarisummers.com
***Attorney for Defendant Frost Management Company, LLC***

9
10
11
12
13

Stuart Frost
6 Heavenly Isle
Ladera Ranch, CA 92694
Telephone: (949) 338-6312
Email: stu.frost@geminos.ai
***Pro Se Defendant***

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28