MARC J. SCHNEIDER, State Bar No. 214609
 mschneider@stradlinglaw.com
JASON DE BRETTEVILLE, State Bar No. 195069
 jdebretteville@stradlinglaw.com
KATHLEEN M. MARCUS, State Bar No. 199857
 kmarcus@stradlinglaw.com
LISA M. NORTHRUP, State Bar No. 293784
 lnorthrup@stradlinglaw.com
SEAN T. LOBB, State Bar No. 324213
 stlobb@stradlinglaw.com
STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone: (949) 725-4000
Facsimile: (949) 725-4100

Attorneys for Defendant
STUART FROST

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STUART FROST and FROST MANAGEMENT COMPANY, LLC,<br><br>Defendants. | CASE NO. 8:19-cv-01559-JLS-JDE<br>Hon. Josephine L. Staton<br><br>**DEFENDANT STUART FROST'S NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 2 TO EXCLUDE EVIDENCE AND ARGUMENT REGARDING DEFENDANTS OWING A FIDUCIARY DUTY TO INVESTORS**<br><br>Complaint Filed August 13, 2019 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 2
8:19-cv-01559-JLS-JDE

**TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD:**

**PLEASE TAKE NOTICE** that on January 28, 2022 at 10:30 a.m.., or as soon thereafter as this matter may be heard before the above-entitled court, and pursuant to the Court's scheduling order, Defendant Stuart Frost ("Frost") will and hereby does move for an order: (i) to preclude the SEC from arguing, referring to, or introducing any evidence relating to any purported fiduciary duty owed by Frost to investors in the funds; and (ii) requiring a limiting instruction directing the jury to consider the SEC's evidence in support of Frost having defrauded investors in the funds only for the purposes of the SEC's second claim alleged under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8. The order is sought pursuant to Federal Rules of Evidence 401, 403, and 105.

This Motion in *Limine* ("Motion") is based upon this Notice of Motion and Motion, Frost's other concurrently filed motions in *limine*, the omnibus declaration of Jason de Bretteville, the Court's record, and on such oral and documentary evidence as the Court may consider.

Counsel had a meet and confer regarding the present Motion on September 24, 2021, but were unable to resolve the issues.

DATED: October 1, 2021        STRADLING YOCCA CARLSON
                                & RAUTH
                              A Professional Corporation


                              By:   */s/ Marc J. Schneider*
                                    Marc J. Schneider
                                    Jason de Bretteville
                                    Kathleen M. Marcus
                                    Sean T. Lobb
                                    Lisa M. Northrup

                                    *Attorneys for Defendant*
                                    *STUART FROST*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-
NOTICE OF MOTION AND MOTION IN *LIMINE* NO. 2
8:19-cv-01559-JLS-JDE

# TABLE OF CONTENTS

**Page(s)**

I. INTRODUCTION .................................................................................... 6

II. FACTUAL BACKGROUND ................................................................... 7

    A. Frost Management Company and the Funds ................................ 7

    B. The SEC's Two Investment Advisers Act Claims ........................ 8

III. ARGUMENT ............................................................................................ 8

    A. Frost Does Not Allegedly Owe A Fiduciary Duty To Investors Under Either Of The SEC's Alleged Claims ................................ 8

        1. The SEC's First Claim Only Puts At Issue Frost's Fiduciary Duty To The Funds ................................................ 9

        2. The SEC's Second Claim Does Create A Fiduciary Duty Owed To Investors ............................................................... 12

    B. Evidence And Argument Related To Frost Owing A Fiduciary Duty To Investors Is Not Relevant And Is Inadmissible ............. 14

IV. CONCLUSION ...................................................................................... 17

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Boydstun v. U.S. Bank*,
　726 F. App'x 601 (9th Cir. 2018) ................................................................... 14

*Goldstein v. SEC*,
　451 F.3d 873 (D.C. Cir. 2006) ..................................................... 10, 11, 12, 13

*Parker v. Joe Lujan Enters., Inc.*,
　848 F.2d 118 (9th Cir. 1988) ......................................................................... 11

*SEC v. Conrad*,
　No. 1:16-CV-02572-LMM, 2017 U.S. Dist. LEXIS 160423 (N.D.
　Ga. May 2, 2017) ........................................................................................... 10

*SEC v. Mannion*,
　789 F. Supp. 2d 1321 (N.D. Ga. 2011) .......................................................... 12

*SEC v. Northshore Asset Mgmt.*,
　2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ................................ 10

*SEC v. Trabulse*,
　526 F. Supp. 2d 1008 (N.D. Cal. 2007) ......................................................... 10

*Securities and Exchange Commission v. Capital Gains Research
　Bureau, Inc.*,
　375 U.S. 180 (1963) ......................................................................................... 9

*United States SEC v. Quan*,
　No. 11-723 ...................................................................................................... 13

*United States v. Joe*,
　8 F.3d 1488 (10th Cir. 1993) ......................................................................... 16

*United States v. Lay*,
　612 F.3d 440 (6th Cir. 2010) .................................................................... 11, 12

*United States v. Wright*,
　943 F.2d 748 (7th Cir. 1991) ......................................................................... 16

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-4-
TABLE OF AUTHORITIES
8:19-cv-01559-JLS-JDE

**Statutes**

15 U.S.C. § 80b–6 (Investment Advisers Act Section 206) ............................*passim*

**Other Authorities**

Fed. R. Evid. 401 ..................................................................................................... 2, 14

Fed. R. Evid. 403 ..................................................................................................... 2, 15

Fed. R. Evid. 105 ..................................................................................................... 2, 15

17 C.F.R. § 275.206(4)-8 (Rule 206(4)-8) ........................................................*passim*

Prohibition of Fraud by Advisers to Certain Pooled Investment SEC,
Rel. No. IA-2628, 2007 SEC LEXIS 1736 (Aug. 3, 2007) ...................................... 13

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-
TABLE OF AUTHORITIES
8:19-cv-01559-JLS-JDE

# MEMORANDUM OF POINTS AND AUTHORITIES

## I. INTRODUCTION

The SEC has alleged two claims of investment fraud against defendants Stuart Frost ("Frost") and Frost Management Company, LLC ("FMC") under the Investment Advisers Act of 1940 ("Advisers Act").

To succeed on its first claim alleging a violation under Sections 206(1) and 206(2) of the Advisers Act, the SEC must prove that Frost engaged in fraud in violation of a fiduciary duty owed to his advisory clients—the funds. This puts at issue the representations and disclosures made to Frost's advisory clients, the funds, and not the investors in the funds. That is because the investors were not Frost's advisory clients.

Conversely, to succeed on its second claim alleging a violation under Section 206(4) and Rule 206(4)-8, the SEC must prove that Frost defrauded the investors in the funds. This second claim puts at issue the representations and disclosures made to the investor in the funds. It does not, however, arise from, relate to, or in any way concern any purported fiduciary duty owed by Frost to investors in the funds.

Accordingly, Frost respectfully requests two categories of relief designed to ensure that any verdict in this case is aligned with the legal basis for the two claims asserted by the SEC.

First, the SEC should be precluded from arguing, referring to, or introducing any evidence relating to any purported fiduciary duty owed by Frost to investors in the funds. This simply is not at issue with respect to either of the SEC's two claims. Such evidence and argument is irrelevant, confusing, and potentially prejudicial.

Second, when the SEC introduces evidence in support of its claim that Frost defrauded investors in the Funds, including, but not limited to disclosures, marketing materials, and other communications with investors in the Funds, Frost

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

respectfully requests that the Court issue a limiting instruction. That limiting instruction should direct to the jury to consider the evidence only for the purposes of the SEC's second claim.

## II.     FACTUAL BACKGROUND

### A.     Frost Management Company and the Funds

Frost is a highly successful entrepreneur, with two substantial exits resulting in considerable returns to investors. (*See* Dkt. 82-6 at ¶¶ 3-4.) Seeking to build on his successes, Frost created a unique business model when he founded Frost Data Capital, LLC (the "Incubator"). (*See id*. at ¶ 5.) The Incubator managed, built, mentored, and provided resources to certain early-stage portfolio companies. (*See* Declaration of Jason de Bretteville ("de Bretteville Decl.") ¶ 2, Ex. 1.)

As part of this model, Frost helped create five venture capital funds to invest in the portfolio companies: (i) Frost VP Seed, LLC (the "Seed Fund"); ii) Frost VP Early Stage Fund II, L.P. ("Fund II"); (iii) Frost VP Seed International, LLC ("International Seed Fund"); (iv) FVP International Feeder Fund L.P. ("International Feeder Fund"); and (v) Frost Fund III, L.P. ("Fund III") (collectively the "Funds"). (*See id*. at ¶¶ 2-4, Exs. 1-3.) Sophisticated, accredited investors chose to collectively invest over $60 million in the Funds. (*See id*. at ¶¶ 2-3, 5-8, Exs. 1 at 10, 2 at 1, 4 at § 9.1, 5 at § 9.2, 6 at § 9.2, 7 at § 9.2.)

FMC functioned as an investment adviser to the Funds. (*See id*. at ¶¶ 4-5, Exs. 3, 4 at 1.) The Funds were FMC's only clients. (*See id*.) Some of the Funds had investment committees, which approved the Funds' investments into the portfolio companies. (*See id*. at ¶¶ 9-11, Exs. 8-10.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-

MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

### B. The SEC's Two Investment Advisers Act Claims

The SEC has alleged two claims against Frost under the Advisers Act.

The SEC's first claim alleges that Frost violated Sections 206(1) and 206(2) of the Advisers Act because Frost "made material misstatements and omissions, and breached [his] fiduciary duties to the *Funds*, . . ." (Dkt. 1 ("Compl.") ¶ 122 (emphasis added).) The SEC subtitled this claim "Fraud by an Investment Adviser." (*Id.* at 16.)

The SEC's second claim alleges that Frost violated Section 206(4) of the Adviser's Act and Rule 206(4)-8(a)(1)-(a)(2) by having "repeatedly defrauded *investors* in the Funds." (*Id.* ¶ 127 (emphasis added).) The SEC subtitled this claim "Fraud Involving a Pooled Investment Vehicle." (*Id*. at 18.)

## III. ARGUMENT

### A. Frost Does Not Allegedly Owe A Fiduciary Duty To Investors Under Either Of The SEC's Alleged Claims.

A critical difference between the SEC's two claims is that the first claim alleges fraud on the Funds, while the second claim alleges fraud on the investors in the Funds. (*See* Compl. ¶¶ 122, 127.) Neither claim is based on, or otherwise places at issue or asserts, Frost's (or FMC's) purported fiduciary duty to investors. Absent clear instructions from the Court, this asymmetry in the claims asserted by the SEC raises a serious risk of confusion on the part of the jury.

The only alleged fiduciary duty at issue in this case is that owed by Frost to certain Funds. As explained more fully below, there is no alleged fiduciary duty to investors at issue with respect to the first claim because that claim is based on an alleged fraud on the Funds as the advisory clients of FMC and Frost, not the investors. As for the second claim, there is no fiduciary duty to investors (or anyone else) at issue because Rule 206(4)-8 did not create, and is not based on, any fiduciary duty owed to anyone.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-
MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

This, inarguably, is confusing. It creates a risk that the jury will rely on evidence that is relevant only to one claim in reaching a verdict as to the other claim. We submit, therefore, that a limiting instruction pertaining to these critical distinctions would be helpful to the jury, and is necessary to avoid prejudice to Frost.

### 1. The SEC's First Claim Only Puts At Issue Frost's Fiduciary Duty To The Funds.

The SEC's first claim is alleged under Sections 206(1) and 206(2) of the Advisers Act. (*See* Compl. ¶¶ 120 - 125.) Section 206(1) provides that "[i]t shall be unlawful for any investment adviser . . . (1) to employ any device, scheme, or artifice to defraud any *client* or prospective client[.]" 15 U.S.C. § 80b–6 (emphasis added). Section 206(2) similarly provides that it is unlawful for an investment adviser to "(2) to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any *client* or prospective client[.]" 15 U.S.C. § 80b–6 (emphasis added).

Unsurprisingly, courts have interpreted the Advisers Act as providing that an investment adviser owes a fiduciary duty to her clients. *See Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92, 201 (1963). In the context of private funds, such as the venture capital funds at issue here, courts have further held that the "client" for purposes of Sections 206(1) and 206(2) are the funds, not the investors in the funds:

> An investor in a private fund may benefit from the adviser's advice (or he may suffer from it) but he does not receive the advice *directly*. He invests a portion of his assets in the fund. The fund manager -- the adviser -- controls the disposition of the pool of capital in the fund. The adviser does not tell the *investor* how to spend his money; the investor made that decision when he

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

invested in the fund. Having bought into the fund, the investor fades into the background; his role is completely passive.

*Goldstein v. SEC*, 451 F.3d 873, 879-80 (D.C. Cir. 2006) (emphasis in original).

Thus, "[t]he adviser owes fiduciary duties only to the fund, not to the fund's investors." *Goldstein*, 451 F.3d at 881; *see also SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1016 (N.D. Cal. 2007) ("With respect to the Investment Advisers Act, the SEC must show a breach of fiduciary duty to the fund itself.") (citing *Goldstein*, 451 F.3d at 881); *SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at *19 (S.D.N.Y. May 5, 2008) ("Because under the Advisers Act, Saldutti's clients were the Ardent Entities, a failure to disclose information or misrepresentations to the Ardent Entities investors cannot form the basis for a claim that Saldutti breached his fiduciary duties to the Ardent Entities.") (citing *Goldstein*, 451 F.3d at 881). This is a necessary distinction, because "[i]f the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest" and "[i]t simply cannot be the case that investment advisers are the servants of two masters in this way." *Goldstein*, 451 F.3d at 881.

The SEC has previously conceded that Sections 206(1) and 206(2) require the fraud to be on the funds. *See SEC v. Conrad*, No. 1:16-CV-02572-LMM, 2017 U.S. Dist. LEXIS 160423, at *4 (N.D. Ga. May 2, 2017) ("[SEC] does not dispute that Section 206(1) and Section 206(2) requires that the fraud be upon the hedge funds as Defendants' clients. . . ."). Indeed, in this very case, the SEC has only alleged that Frost (and FMC) owed a fiduciary duty to the Funds: the SEC's first claim alleges that Frost violated Sections 206(1) and 206(2) of the Advisers Act because Frost "made material misstatements and omissions, and breached [his] fiduciary duties to the **Funds**, . . ." (Dkt. 1 ("Compl.") ¶ 122 (emphasis added).)

The SEC now appears to recognize that it cannot prove that Frost breached a fiduciary duty to the Funds because the Funds' investment committees and CFO

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-
MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

were fully aware of the information that the SEC now claims as a material omission.  In response to this realization, the SEC appears to be pivoting to make a new, legally unfounded argument that Frost (and FMC) owed a fiduciary duty directly to investors (and not only to the Funds), as indicated in its opposition to Frost's *ex parte* application for relief to file a motion for summary judgment.  (*See* Dkt. 81 at 6-7.)  The Court should reject the SEC's new position on two bases.

First, the SEC is bound by its pleadings at this late stage of the litigation.  In *Parker v. Joe Lujan Enters., Inc.*, the Ninth Circuit affirmed the district court's denial of a motion for leave to amend where the motion was untimely under the court's scheduling order, movant failed to justify the delay in seeking leave to amend to "assert an entirely new theory of liability which was inconsistent with the original complaint[,]" and "granting of the motion to amend would have substantially prejudiced the [non-movants,]" including because the non-movants would "be forced to reprepare its case for trial on an entirely different factual theory of liability." *Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988).  Here, there is not good cause to amend to assert a new legal theory as the deadline to amend has long since lapsed (*see* Dkt. 31) and Frost would be prejudiced in his preparation for trial based on such an amendment.  *See Parker*, 848 F.2d at 121.

Second, the SEC's new, unpled position is contrary to *Goldstein* and its progeny, which hold that Frost only owed fiduciary duties to the Funds (and not the investors), as explained above.  Frost anticipates that the SEC, in attempting to justify this pivot, may argue that this case is analogous to *United States v. Lay,* 612 F.3d 440 (6th Cir. 2010)*,* in which the Sixth Circuit affirmed the jury's finding that an investment adviser owed a fiduciary duty to the investor in a hedge fund.  But the Sixth Circuit explained that the anomalous result in that case arose from the fact that it did not involve "a typical hedge fund adviser-investor relationship." *Id*.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-
MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

at 447.  Rather, the fund only had a single investor and that investor had an "active role" in its investment in the fund.  *Id*. at 446.   No such facts are present here.

Any reliance on *Lay* outside of its peculiar facts would be misplaced, as prior courts have previously found.  For example, in *SEC v. Mannion*, the SEC tried to escape the application of *Goldstein* by citing to *Lay*.  The district court rejected the SEC's argument explaining that *Lay* "does not apply to these circumstances" because *Lay* "was based on the unique circumstances of that case." *SEC v. Mannion*, 789 F. Supp. 2d 1321, 1338 (N.D. Ga. 2011).  The court pointed to the fact that the SEC's complaint failed to contain allegations analogous to those in *Lay*.  *See id*.  The same is true here.

Each of the Funds had multiple investors—collectively there were over 150 investors in the Funds.  (*See* de Bretteville Decl. ¶ 12, Ex. 11 (*see* response to item no. 13 for each of the Funds).)  Additionally, Frost had a typical adviser-investor relationship with the Funds whereby he provided advice to the Funds about which portfolio companies each of the Funds should invest in, not the investors.  (*See* de Bretteville Decl. ¶¶ 9-12, Exs. 8-11.)  Frost did not provide advice as an investment adviser to the investors in the Funds.  Furthermore, as in *Mannion*, the SEC alleges that FMC's only clients were the Funds, and the SEC has not alleged any contrary facts that would support the application of *Lay*.  (*See* Compl. ¶ 25.)  Thus, notwithstanding any late arguments to the contrary, the SEC's first claim puts at issue Frost's fiduciary duty owed to his clients, the Funds, not the investors in the Funds.  This is a clear point of law on which the SEC should concede.

### 2. The SEC's Second Claim Does Create A Fiduciary Duty Owed To Investors.

The SEC's second claim is brought under 206(4) of the Advisers Act and Rule 206(4)-8.  (*See* Compl. ¶¶ 126 - 130.)  Section 206(4) makes it unlawful for an investment adviser "to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b–6.  The history behind

Section 206(4) makes clear that it is not founded on a fiduciary duty owed to investors, or anyone else.

Following the holding in *Goldstein* limiting the underlying duty to that owed to a fund, the SEC recognized that it could no longer bring claims alleging fraud on the investors in a fund under Sections 206(1) and 206(2). The SEC cast about looking for an alternate means of bringing such a claim, and settled on its rule making authority under Section 206(4). Section 206(4) was a potentially viable solution because it is not stated in terms of a fraud on the client (i.e., the fund), and it grants the SEC broad authority to pass rules and regulations to "prescribe means reasonably designed to prevent, such acts, practices, and courses of business as are fraudulent, deceptive, or manipulative." 15 U.S.C. § 80b–6. Accordingly, the SEC created Rule 206(4)-8 (*see* 17 C.F.R. § 275.206(4)-8), which is not based on, and which does not impose a fiduciary duty owed to any investor, or anyone else for that matter.

"We proposed the rule in response to the opinion of the Court of Appeals for the District of Columbia Circuit in Goldstein v. SEC . . . it was unclear whether the Commission could continue to rely on sections 206(1) and (2) of the Advisers Act to bring enforcement actions in certain cases where investors in a pool are defrauded by an investment adviser to that pool." Prohibition of Fraud by Advisers to Certain Pooled Investment, SEC Rel. No. IA-2628, 2007 SEC LEXIS 1736, at *2 (Aug. 3, 2007). The SEC further explained that "Rule 206(4)-8 does not create under the Advisers Act a fiduciary duty to investors or prospective investors in a pooled investment vehicle not otherwise imposed by law." *Id*. at *25; *see also United States SEC v. Quan*, No. 11-723 ADM/JSM, 2013 U.S. Dist. LEXIS 145146, at *49 -50 n. 10 (D. Minn. Oct. 8, 2013) (explaining same) (citing Prohibition of Fraud by Advisers to Certain Pooled Investment, SEC Release No. 8766, 2006 SEC LEXIS 3194, 2006 WL 3814994, at *7 (December 27, 2006).)

Thus, while the SEC's second claim puts at issue whether Frost engaged in the alleged fraud on the investors in the Funds, it does not put at issue whether Frost owed any fiduciary duty to investors or anyone else, or whether Frost breached any such duty.  Nonetheless, the SEC implied in its reply memorandum to defendant Stuart Frost's opposition to plaintiff's motion for partial summary judgment that the second claim implicates a fiduciary duty.  (*See* Dkt. 88 at 9.) Any such argument should be rejected for the reasons stated herein.

### B. Evidence And Argument Related To Frost Owing A Fiduciary Duty To Investors Is Not Relevant And Is Inadmissible.

Frost respectfully requests two categories of relief stemming from the irrelevance and inadmissibility of evidence and argument related to Frost owing any purported fiduciary duty to any investors in any of the Funds.

First, Frost requests that the Court preclude the SEC from arguing or otherwise asserting, through documentary evidence or testimony, that Frost or FMC owed a fiduciary duty to the investors in the Funds.  This is appropriate because, as explained *supra*, neither of the SEC's claims is based on Frost owing a fiduciary duty to any investors in any Funds.  Accordingly, there is no probative value to such argument or evidence as it does not help to prove or disprove a relevant fact or element of proof under the Advisers Act.  *See* Fed. R. Evid. 401; *Boydstun v. U.S. Bank*, 726 F. App'x 601, 602 (9th Cir. 2018) (affirming district court's exclusion of evidence of damages stemming from a company's failed loan application because the governing statute only applied to damages incurred by individual consumers).

The breach of fiduciary duty asserted by the SEC has been a constantly moving target.  (*Compare* Compl. ¶ 122 *with* Dkt. 81 at 6-7 and Dkt. 88 at 9.)  This Court should not permit the SEC to similarly attempt to confuse and mislead the jury as to Frost's fiduciary duty.  Specifically, any attempt by the SEC to mislead the jury into believing that Frost owed a duty to the investors, much less that he

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-
MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

breached that nonexistent duty, would be profoundly confusing and prejudicial. Even if some such duty was owed (it was not), and even it was breached (it was not), injecting evidence of an irrelevant breach of duty into this action would remain highly prejudicial and confusing. The Court should not, therefore, allow the SEC to accuse Frost of an irrelevant, closely related breach, or to confuse the jury by introducing irrelevant evidence of any such purported breach. *See* Fed. R. Evid. 403.

Second, the jury should not be tricked into concluding that Frost breached a duty owed to the Funds based on evidence or argument that he misled investors. When the SEC introduces evidence in support of its second claim regarding alleged fraud on the investors in the Funds, including limited to disclosures, marketing materials, and other communications with investors, that evidence is irrelevant to the first claim, which is directed to a fraud on the Funds, not the investors. While admissible as to the second claim, such evidence clearly poses risks of confusion and undue prejudice as to the first claim.

We submit that a limiting instruction is particularly necessary in this case because the SEC's first claim (under Section 206(1)) turns on whether Frost breached a fiduciary duty owed to the Funds, not any investor—a critical and yet easily missed nuance. Without an appropriate limiting instruction, there is a substantial risk that a jury will find Frost liable on the first claim based on evidence that is relevant only to the second claim, i.e., evidence of some purported failure to disclose a fact to investors.

This is of great concern because the negative implications of a guilty verdict on the first claim are far more serious than the implications of a guilty verdict on the second claim. Specifically, if the SEC prevails on its first claim, then Frost would be subject to a "bad actor" designation with profound negative consequences. This risk can only be mitigated by making the jury aware of this distinction at the time the evidence is admitted.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-
MEMORANDUM OF POINTS AND AUTHROTIES
8:19-cv-01559-JLS-JDE

When evidence is admitted that is admissible for only a specific purpose, such limiting instructions are mandatory. Federal Rule of Evidence 105 provides that a court "<u>must</u> restrict the evidence to its proper scope and instruct the jury accordingly." Fed. R. Evid. 105 (emphasis added). Accordingly, if and when evidence related to disclosures to investors is first introduced by the SEC in support of its second claim, Frost requests that a limiting jury instruction be read at the time of introduction of the evidence, and again in the closing jury instructions. *See United States v. Joe*, 8 F.3d 1488, 1496 (10th Cir. 1993) (explaining it was proper that "court gave the limiting instruction both at the time the evidence was admitted and at the end of the case"); *United States v. Wright*, 943 F.2d 748, 752 (7th Cir. 1991) ("[W]e note that the judge gave a limiting instruction to jurors when the evidence was introduced and thereafter in the court's charge to the jury at the close of the case.").

Specifically, Frost requests that the following limiting instruction be provided to the jury at the time of introduction of evidence relevant solely to the second claim:

> Some evidence may be admitted only for a limited purpose. When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose. The evidence you are about to receive may be considered only for the limited purpose of determining whether Frost or FMC defrauded investors in the Funds in violation of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8 in support of the SEC's second claim. The evidence may not be considered in support of the SEC's first claim or for any other purpose.

Likewise, Frost requests the following limiting instruction as part of the closing instructions to the jury:

Some evidence has been admitted only for a limited purpose as I previously instructed you at the time the evidence was admitted. In deliberating, you must consider this evidence, which included evidence related to disclosures, marketing materials, and communication with investors, only for the limited purpose of determining whether Frost or FMC defrauded investors in the Funds in violation of Section 206(4) of the Investment Advisers Act and Rule 206(4)-8 in support of the SEC's second claim. The evidence may not be considered in support of the SEC's first claim or for any other purpose.

## IV. CONCLUSION

For the foregoing reasons, Frost respectfully requests that this Court grant Frost's requested relief in full.

DATED: October 1, 2021

STRADLING YOCCA CARLSON
 & RAUTH
A Professional Corporation

By: */s/ Marc J. Schneider*
Marc J. Schneider
Jason de Bretteville
Kathleen M. Marcus
Sean T. Lobb
Lisa M. Northrup

*Attorneys for Defendant
STUART FROST*