DONALD W. SEARLES (Cal. Bar. No. 135705)
Email: searlesd@sec.gov
DOUGLAS M. MILLER (Cal. Bar. No. 240398)
Email: millerdou@sec.gov
CHARLES E. CANTER (Cal. Bar. No. 263197)
Email: canterc@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Counsel
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

### Southern Division

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STUART FROST AND FROST MANAGEMENT COMPANY, LLC,<br><br>Defendants. | Case No. 8:19-cv-01559-JLS-JDE<br><br>**PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT STUART FROST'S SUPPLEMENTAL DECLARATION OF MARC J. SCHNEIDER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PARTIAL SUMMARY JUDGMENT** |

Case No. 8:19-cv-01559-JLS-JDE

## I.    INTRODUCTION

As the Securities and Exchange Commission ("the SEC") has explained, the arbitration award to which this Court should give preclusive effect is altogether a product of Delaware law—just as Defendants intended when entering into the agreements that gave rise to the arbitration.  Although this conclusion is apparent from the arbitration record, Defendant Frost filed a Supplemental Declaration attaching four discovery requests from the arbitration proceedings.  Dkt. 101.  Frost would have the Court conclude that a handful of pre-printed forms and boilerplate citations to a few California discovery statutes buried in a massive arbitration record somehow converted the arbitration to a product of California law.  A close examination of these documents, however, reveals that they in no way alter the Court's collateral estoppel analysis and in no way transform the Delaware arbitration. The Court should instead look to the arbitration parties' express agreements and to what the arbitrator expressly decided in determining what law governed the arbitration proceeding.

## II.    ARGUMENT

When Defendants entered into the Frost VP Seed, LLC Operating Agreement and the Frost VP Early Stage Fund II, L.P. Limited Partnership Agreement, they expressly agreed that the agreements would be governed by Delaware law and that any dispute arising out of those agreements would be subject to binding arbitration conducted in accordance with the Delaware Arbitration Act.  Frost availed himself of these provisions when he initiated the arbitration, writing:

> This dispute arises out of two agreements, the Frost VP Seed, LLC Operating Agreement, effective September 22, 2011 . . . , and the Frost VP Early Stage Fund II, L.P. Limited Partnership Agreement effective May 29, 2013 . . . . Both agreements have arbitration agreements requiring arbitration administered by JAMS. The arbitration agreements are in section 13.10 of the Frost VP Seed, LLC Operating Agreement,

1

and in section 15.5 of the Frost VP Early Stage Fund II, L.P. Limited Partnership Agreement.

Declaration of Donald Searles ("Searles Decl."), Ex. 1 at p. 18, Dkt. 44-4 at 5. Section 13.10(f) of the Frost VP Seed, LLC Operating Agreement provides: "This paragraph 13.10 shall be construed to the maximum extent possible to comply with the laws of the State of Delaware, including, to the extent applicable, the Uniform Arbitration Act (10 Del. C. § 5701 et seq.) (the 'Delaware Arbitration Act')."  Searles Decl., Ex. 1 at p. 45, Dkt. 44-4 at 32.  Section 15.1 of the Frost VP Early Stage Fund II, L.P. Limited Partnership Agreement provides "This Agreement shall be governed by and construed under the laws of the State of Delaware" and section 15.5(d) provides that "[a]bsent the filing of an application to correct or vacate the arbitration award under Title 10 of the Delaware Code sections 5713 through 5717, each party shall fully perform and satisfy the arbitration award within fifteen (15) days of the service of the award."  Searles Decl., Exh. 1 at pp. 88, 89, Dkt. 44-4 at 76, 77. Nowhere in the arbitration demand is any reference made to the California Arbitration Act, Cal. Civ. Proc. Code §§ 1280 *et seq*.

Frost's gamble backfired, and the respondents to his arbitration demand counterclaimed, expressly relying on Delaware law to assert derivative claims on behalf of the funds.  *See, e.g.*, Searles Decl., Ex. 103 at pp. 1385-1429, Dkt. 44-10 at 92-136 (Respondents' Trial Brief).  Following the 17-day arbitration hearing, the arbitrator issued an "Order Appointing Replacement Manager, Establishing Oversight Committees and Reconfirming the Elimination of Voting Rights of Frost Venture Partners GP LLC" that was later incorporated into the final award and that stated:

> "There was no dispute between the parties that the Arbitrator has authority under the parties' agreements and Delaware law to remove Stuart Frost (and the managing Frost entities) from the management of Frost VP Seed, LLC ("Seed Fund") and Frost VP Early Stage Fund II, LP ("Fund II"), and appoint an independent replacement manager."

2

Searles Decl., Ex. 3 at p. 260, Dkt. 44-4 at 249.

In his final award, the arbitrator reiterated that "[j]urisdiction to arbitrate this matter was pursuant to the Operating Agreements of the Seed Fund (. . . para. 13.10) and Fund II (. . . para. 15.5)." Searles Decl. Ex. 3 at 217, Dkt. 44-4 at 206. The arbitrator then proceeded to conclude that, under Delaware law, the respondents could bring their derivative claims on behalf of the funds because "[t]he primary harm here was to the Funds." *id.* at 218, Dkt. 44-4 at 207. Thus, under Delaware law, the arbitrator found, among other things: that the Incubator Fees "were unreasonable" and "in violation of Frost's fiduciary obligations to the Funds;" that management fees charged to the Seed Fund were "improper;" and that "payment of . . . personal expenses by the Incubator was improper." *Id.* at 221-22, Dkt. 44-4 at 210-11. Finally, the arbitrator referenced the Fund agreements in finding that Frost acted recklessly and in awarding punitive damages to the Funds, thus applying Delaware law throughout the final award. *Id.* at 227-28, Dkt. 44-4 at 216-17. Indeed, the arbitrator cited no provision of California law in his final award.

In his supplemental declaration, Frost relies on four discovery requests exchanged by the parties to the arbitration. Each of them seeks information from a California resident or entity and each, not surprisingly, contains some reference to a provision of California law or is on a California Superior Court form. The first, a notice of deposition to a California resident, contains a reference to California Civil Procedure Code § 2025.010 and a reference to California Civil Procedure Code § 2025.220; it does not refer to the California Civil Procedure Code § 1283, the provision of the California Arbitration Act regarding depositions.

Frost also points to a subpoena for a deposition issued by the arbitrator, again directed to a California resident. The subpoena is on a Superior Court subpoena form and contains various references to provisions of the California Civil Procedure Code, but the subpoena does not refer to section 1282.6 of the California Civil Procedure Code, which addresses subpoenas issued under the California Arbitration Act, nor

3

does the subpoena otherwise state that the arbitration is being conducted pursuant to the California Arbitration Act.

Frost next identifies a set of form interrogatories from Frost (who initiated the arbitration in reliance on the provisions providing for arbitration under Delaware law) to one of the arbitration respondents, another resident of California. The form contains no reference to the California Arbitration Act or otherwise indicates the arbitration is being conducted pursuant to the California Arbitration Act.

Last, Frost submits a request for production of documents to the Incubator, which was located in California. As with the other discovery requests, this one contains a reference to the California Civil Procedure Code, here section 2031.010. But as with the other discovery requests, the request for production of documents contains no reference to the California Arbitration Act or otherwise indicates the arbitration is being conducted pursuant to the California Arbitration Act.

The use of California procedural forms or references to provisions of California discovery provisions—the sort of boilerplate references included nearly all discovery requests—says nothing about the law governing the underlying arbitration. Indeed, it is unsurprising that the parties would default to California discovery practice where the parties and witnesses are located in California.

Despite his direct and extensive participation in the arbitration, the only documents Frost has identified that reference any provision of California Arbitration law are the petitions filed on Form ADR-106, which contain the pre-printed sentence: "This petition requests the court to confirm, correct, or vacate an award in an arbitration conducted according to an agreement between the parties that is subject to Code of Civil Procedure section 1285 et seq." *See* Dkt. 99-1 at 5. But the Court should not elevate a form over substance. Even in those petitions, the respondents at paragraph 4 cite to the operative provisions of the agreements, *see* Dkt. 99-1 at 6, and attach excerpts from the agreements providing for the application of Delaware arbitration law, *see* Dkt. 99-1 at 13-14, 16-17. The respondents also included an

4

attachment in response to paragraph 3 of the petition noting that they had brought their claims derivatively under Delaware law. *See* Dkt. 99-1 at 8.

In short, the arbitration was conducted from beginning to end under Delaware law, in accordance with the clear terms of the agreements that Frost assented to when he formed the Funds.

## III.  CONCLUSION

For the foregoing reasons, the SEC respectfully submits that the arbitration was conducted pursuant to Delaware law.

Respectfully submitted,

Dated:  October 6, 2021

*/s/ Charles E. Canter*
CHARLES E. CANTER
DOUGLAS M. MILLER
DONALD W. SEARLES
Attorneys for Plaintiff
Securities and Exchange Commission

5

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

> U.S. SECURITIES AND EXCHANGE COMMISSION,
> 444 S. Flower Street, Suite 900, Los Angeles, California 90071
> Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On October 6, 2021 I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S RESPONSE TO DEFENDANT STUART FROST'S SUPPLEMENTAL DECLARATION OF MARC J. SCHNEIDER IN SUPPORT OF DEFENDANT'S OPPOSITION TO PARTIAL SUMMARY JUDGMENT** on all the parties to this action addressed as stated on the attached service list:

☐    **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐    **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐    **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐    **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐    **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐    **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒    **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐    **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.

Date:  October 6, 2021         */s/ Charles E. Canter*
                              Charles E. Canter

*SEC v. Stuart Frost, et al.*
**United States District Court—Central District of California**
**Case No. 8:19-cv-01559-JLS-JDE**

**SERVICE LIST**

Andrew C. Callari
34197 Pacific Coast Highway, Suite 100
Dana Point, CA 92629
ac@callarisummers.com
***Attorney for Defendant Frost Management Company, LLC***

Marc J. Schneider
mschneider@stradlinglaw.com
Jason De Bretteville
jdebretteville@stradlinglaw.com
Kathleen M. Marcus
kmarcus@stradlinglaw.com
Sean T. Lobb
stlobb@stradlinglaw.com
Lisa M. Northrup
lnorthrup@stradlinglaw.com
Straddling Yocca Carlson & Rauth
660 Newport Center Drive, Suite 1600
Telephone: (949) 725-4000
***Attorneys for Defendant Stuart Frost***