1  DONALD W. SEARLES (Cal. Bar No. 135705)
   Email: searlesd@sec.gov
2  DOUGLAS M. MILLER (Cal. Bar No. 240398)
   Email: millerdou@sec.gov
3  CHARLES E. CANTER (Cal. Bar No. 263197)
   Email: canterc@sec.gov
4
   Attorneys for Plaintiff
5  Securities and Exchange Commission
   Michele Wein Layne, Regional Director
6  Alka N. Patel, Associate Regional Counsel
   Amy J. Longo, Regional Trial Counsel
7  444 S. Flower Street, Suite 900
   Los Angeles, California 90071
8  Telephone: (323) 965-3998
   Facsimile: (213) 443-1904
9

10              **UNITED STATES DISTRICT COURT**

11              **CENTRAL DISTRICT OF CALIFORNIA**

12                     **Southern Division**

13

14  SECURITIES AND EXCHANGE          Case No. 8:19-cv-01559-JLS-JDE
    COMMISSION,
15                                   **PLAINTIFF SECURITIES AND**
              Plaintiff,             **EXCHANGE COMMISSION'S**
16                                   **AMENDED MEMORANDUM OF**
        vs.                          **CONTENTIONS OF FACT AND LAW**
17
    STUART FROST AND FROST           Date:      January 28, 2022
18  MANAGEMENT COMPANY, LLC,         Time:      10:30 a.m.
                                     Ctrm:      10A
19            Defendants.            Judge:     Hon. Josephine L. Staton

20

21

22

23

24

25

26

27

28

1

2

## <u>TABLE OF CONTENTS</u>

I.      INTRODUCTION ...................................................................................1

II.     PROCEDURAL HISTORY ....................................................................1

III.    PLAINTIFF'S CLAIMS.........................................................................2

    A.      Summary Statement of Each Claim ..............................................2

    B.      Elements Required to Establish Each Claim.................................3

        1.      Claim One – Sections 206(1) and 206(2) of the Advisers Act ..3

            a.      Investment Adviser...............................................4

            b.      Fiduciary Duty.....................................................4

            c.      Misrepresentation and Omission .......................5

            d.      Scienter................................................................6

            e.      Negligence............................................................6

            f.      Instrumentality of interstate commerce ..........7

        2.      Claim Two – Section 206(4) of the Advisers Act and Rule
            206(4)-8 Thereunder ...................................................7

    C.      Brief Description of Key Evidence in Support of Each Claim............8

        1.      Claims One and Two .......................................................8

            a.      The Offering Documents and Marketing Materials ........8

            b.      Expert Witnesses ...............................................10

            c.      Lay Witnesses.....................................................12

    D.      Anticipated Evidentiary *Issues* ...................................................13

        1.      Pending motions *in limine* .......................................13

         2.      Other evidentiary issues...............................................13

    E.      Issues of Law................................................................................14

        1.      The Scope of Defendants' Fiduciary Obligations. ............14

        2.      The Doctrine of *Respondeat Superior* and the Imputation of
            Knowledge. ...............................................................18

         3.      Remedial Relief.............................................................19

            a.      A permanent injunction is appropriate ...........19

i

          b.    Disgorgement should be ordered ....................................19
          c.    Civil penalties should be imposed .................................21
F.    Bifurcated Issues ..........................................................................21
G.    Jury Trial ......................................................................................21
H.    Attorneys Fees ..............................................................................21
I.    Abandonment of Issues .................................................................21

Case No. 8:19-cv-01559-JLS-JDE

# TABLE OF AUTHORITIES

## CASES

*Abrahamson v. Fleschner,*
568 F.2d 862 (2d Cir. 1977) ..................................................................4, 15

*Alsco, Inc. v. Premier Outsourcing Plus, LLC,*
2020 U.S. Dist. LEXIS 129036 (D. Del. July 22, 2020) ................................18

*Amendments to Form ADV,*
Advisers Act Rel. No. 3060, 2010 SEC LEXIS 2679 (Aug. 12, 2010) ...........17

*Basic, Inc. v. Levinson,*
485 U.S. 224 (1988) .....................................................................................17

*Chiarella v. United States,*
455 U.S. 222 (1980) .....................................................................................17

*Feeley v. NHAOCG,*
62 A. 3d 649 (Del Ch. 2012) ........................................................................16

*Herman & MacLean v. Huddleston,*
459 U.S. 375 (1983) .......................................................................................6

*Hollinger v. Titan Capital Corp.,*
914 F.2d 1564 (9th Cir. 1990) ........................................................................6

*In re ChinaCast Educ. Corp. Sec. Litig.,*
809 F.3d 471 (9th Cir. 2015) ........................................................................18

*In re USA Cafes, L.P. Litigation,*
600 A.2d 43 (Del. Chancery Ct. 1991) ..........................................................16

*Lincoln Nat'l Life Ins. Co. v. Snyder,*
722 F. Supp. 2d 546 (D. Del. July 15, 2010) ................................................18

*Liu v. SEC,*
140 S. Ct. 1936 (2020).............................................................................20, 21

*Monetta Fin. Servs., Inc. v. SEC,*
390 F.3d 952 (7th Cir. 2003) ................................................................5, 6, 15

*Official Comm. of Unsecured Creditors of Allegheny Health, Educ. And
Research Found. v. PricewaterhouseCoopers, LLP,*
2008 U.S. Dist. LEXIS 18823 (3d Cir. 2008) ...............................................19

*Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P.
(In re Fedders North America, Inc.),*
405 B.R. 527 (Bankr. D. Del. 2009)..............................................................16

*Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.,*
267 F.3d 340 (3d Cir. 2001) .........................................................................18

*Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC,*
2011 Del. Ch. LEXIS 116 (Aug. 8, 2011) .......................................................16

*SEC v. Abacus International Holding Corp.,*
[2001 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 91, 542, 2001 U.S.
Dist. LEXIS 12635, 2001 WL 940913 (N.D. Cal. August 16, 2001) ..............21

*SEC v. ABS Manager, LLC,*
No. 13cv319-GPC(BGS), 2014 U.S. Dist. LEXIS 175071
(S.D. Cal. Dec. 18, 2014) ...............................................................................15

*SEC v. Ahmed,*
308 F. Supp. 3d 628 (D. Conn. 2018) .............................................................17

*SEC v. Berger,*
244 F. Supp. 2d 180 (S.D.N.Y. 2001) .............................................................15

*SEC v. Burns,*
816 F.2d 471 (9th Cir. 1987) .............................................................................6

*SEC v. Capital Gains Research Bureau, Inc.,*
375 U.S. 180 (1963)..........................................................................4, 6, 15, 18

*SEC v. Colello,*
139 F.3d 674 (9th Cir. 1998) ...........................................................................21

*SEC v. Cross Fin. Servs., Inc.,*
908 F. Supp. 718 (C.D. Cal 1995) ...................................................................21

*SEC v. Dain Rauscher,*
254 F.3d 852 (9th Cir. 2001) .............................................................................7

*SEC v. First City Financial Corp., Ltd.,*
890 F.2d 1215 (D.C. Cir. 1989).......................................................................20

*SEC v. First Pacific Bancorp,*
142 F.3d 1186 (9th Cir. 1998) .........................................................................20

*SEC v. Haligiannis,*
470 F. Supp. 2d 373 (S.D.N.Y. 2007) ........................................................4, 15

*SEC v. Janus Spectrum LLC,*
Nos. 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710
(9th Cir. July 1, 2020) .....................................................................................20

*SEC v. Mack,*
CV-1008383 DSF(PSWx), 2021 U.S. Dist. LEXIS 200288
(C.D. Cal. Aug. 7. 2012) .................................................................................18

*SEC v. Merrill Scott & Assocs., Ltd.,*
505 F. Supp. 2d 1193 (D. Utah 2007) ...............................................................4

*SEC v. Mizrahi,*
No. CV 19-2284 PA (JEMX), 2020 WL 6114913
(C.D. Cal. Oct. 5, 2020)...................................................................................20

iv

*SEC v. Murphy,*
   626 F.2d 633 (9th Cir. 1980) ................................................................19

*SEC v. Nutmeg Grp., LLC,*
   162 F. Supp. 3d 754 (N.D. Ill. 2016) ..................................................15

*SEC v. Platforms Wireless,*
   617 F.3d 1072 (9th Cir. 2010) ........................................................6, 20

*SEC v. Quan,*
   11-cv-723 (ADM), 2013 WL 556252 (D. Minn. Oct. 8, 2013) .........7

*SEC v. Steadman,*
   967 F.2d 636 (D.C. Cir. 1992) ...............................................7, 14, 15

*SEC v. Wall Street Publ'g Inst., Inc.,*
   591 F. Supp. 1070 (D.D.C. 1984) .....................................5, 6, 15

*SEC v. Westport Capital Mkts., LLC,*
   408 F. Supp. 3d 93 (D. Conn. 2019) .......................................5

*SEC v. Yorkville Advisors, LLC,*
   No. 12 Civ. 7728 (GBD), 2013 U.S. Dist. LEXIS 110624
   (S.D.N.Y. Aug. 2013) .......................................................8

*Steadman v. SEC,*
   603 F.2d 1126 (5th Cir. 1979) ............................................17

*Thabault v. Chait,*
   541 F.3d 512 (3d Cir. 2008) ................................................18

*The Robare Group, Ltd. v. SEC,*
   922 F.3d 468 (D.C. Cir. 2019) .............................................5

*Transamerica Mortgage Advisors, Inc. v. Lewis,*
   444 U.S. 11 (1979) ...........................................................5

*United States v. Tagliaferri,*
   820 F.3d 568 (2d Cir. 2016) ...............................................5

*Vernazza v. SEC,*
   327 F.3d 851 (9th Cir. 2003),
   *amended by,* 335 F.3d 1096 (9th Cir. 2003) .................5, 6, 7, 14, 15

*Vernazza v. SEC,*
   No. 01-71857, 2003 U.S. App. LEXIS 14351 (9th Cir. Apr. 23, 2003) ...........17

*Wallace ex. rel. Cencom Cable Income Partners II, L.P. v. Wood,*
   752 A.2d 1175 (Del. Ch. 1999) ...........................................16

**FEDERAL STATUTES**

**Securities Exchange Act of 1934**

Section 21(d)
   [15 U.S.C. § 78u(d)] .......................................................20

Case No. 8:19-cv-01559-JLS-JDE

Section 21(d)(3)(B)(iii)
    [15 U.S.C. § 78u(d)(3)(B)(iii)] ...........................................................21

**Investment Advisers Act of 1940**

Section 202(a)(11)
    [15 U.S.C. § 80b-2(a)(11)] ...........................................................14, 16

Section 206
    [15 U.S.C. § 80b-6]...........................................................4, 16

Section 206(1)
    [15 U.S.C. § 80b-6(1)]...........................................1, 2, 6, 14, 15, 20

Section 206(2)
    [15 U.S.C. § 80b-6(2)]...........................1, 2, 6, 14, 15, 18, 20

Section 206(4)
    [15 U.S.C. § 80b-6(4)]...........................1, 3, 7, 14, 16, 18, 20

Section 209(e)
    [15 U.S.C. § 80b-9(e)] ...........................................................2

**FEDERAL REGULATIONS**

Rule 206(4)-8
    [17 C.F.R. § 275.206(4)-8] .............................1, 3, 7, 14, 16, 18

**FEDERAL RULES OF CIVIL PROCEDURE**

Fed. R. Civ. P. 38(b) ...........................................................21

**LOCAL RULES**

Local Rule 16-4...........................................................1

**OTHER AUTHORITIES**

4 Sand, et al. Modern Federal Jury Instructions, ¶ 82.02, Inst. 82-4 (Civil)
    (2012)...........................................................5

Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 ...................5, 7

Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.3 .......................6

**COMMISSION RELEASES**

*IMS/CPAs & Assocs.,*
    Securities Act Rel. No. 8031, 2001 SEC LEXIS 2323 (Nov. 5, 2001
    (Commission op.) ...........................................................15

## I.  <u>INTRODUCTION</u>

Pursuant to Local Rule 16-4, and the Court's Amended Civil Trial Order (Dkt. Nos. 24 & 31), Plaintiff Securities and Exchange Commission ("SEC") hereby submits this Amended Memorandum of Contentions of Fact and Law.

## II.  <u>PROCEDURAL HISTORY</u>

The SEC's complaint, filed on August 13, 2019, alleges that Frost Management Company, LLC ("FMC"), an exempt reporting adviser to five private venture capital funds, and its sole owner, Stuart Frost ("Frost") (collectively "Defendants"), violated Sections 206(1), 206(2), and 206(4) of the Investment Advisers Act of 1940 ("Advisers Act") and Rule 206(4)-8 thereunder.  (Dkt. No. 1.)

The SEC's first claim, brought under Sections 206(1) and (2), alleges, in substance, that Defendants made material misstatements and omissions, breached their fiduciary duties as investment advisers and engaged in a scheme to defraud their advisory clients, five private venture capital funds (the "Funds").  Defendants are alleged to have done this by: (1) charging over $14 million in undisclosed and excessive fees to start-up companies ("portfolio companies") in which the funds invested; (2) not disclosing the actual amount of fees that the portfolio companies paid Frost's company, Frost Data Capital, LLC ("FDC" or the "Incubator"): (3) creating more portfolio companies to generate even more excessive fees, and (4) charging some of the funds undisclosed management fees.

The SEC's second claim, brought under Section 206(4) of the Advisers Act and Rule 206(4)-8, alleges, in substance, that Defendants, through their conduct, also defrauded the Funds' investors by making material misstatements and omissions, and otherwise engaging in fraudulent, deceptive and manipulative course of business.

The SEC is seeking entry of permanent injunctions against Defendants from committing future violations of the above statutory and regulatory provisions.  The SEC is also seeking an order requiring the disgorgement of all ill-gotten gains, together with prejudgment interest thereon, and the payment of civil penalties.  *See*

15 U.S.C. § 80b-9(e).

## III.   PLAINTIFF'S CLAIMS

### A.   Summary Statement of Each Claim

1.   **Claim One** – Claim One alleges a violation of Sections 206(1) and (2) of the Advisers Act against defendants Frost and FMC based on material misstatements and omissions, and breaches of fiduciary duties to the Funds, by failing to disclose material information and conflicts of interest regarding the incubator fees that were being paid by the portfolio companies in which the Funds invested, including by:

(a)   failing to disclose to the Seed Fund, International Seed Fund, and International Feeder Fund that the portfolio companies in which they invested would be charged incubator fees;

(b)   failing to disclose to the Funds that the portfolio companies would be charged flat-rate incubator fees as opposed to incubator fees charged on a case-by-case basis, or at or below market rates;

(c)   failing to disclose the amount of incubator fees actually charged to the portfolio companies in quarterly status reports provided to the Funds' investors;

(d)   failing to disclose the existence or the amount of incubator fees actually charged to the portfolio companies to the Funds' advisory committees;

(e)   failing to disclose to the Funds that Frost created some of the new portfolio companies for the principal purpose of generating additional incubator fees to cover FDC's overhead and Frost's extravagant personal expenses; and

(f)   charging the portfolio companies in which the Funds invested over $14 million in excessive incubator fees.

In addition, Claim One alleges Defendants charged the Seed Fund and International Seed Fund undisclosed management fees of $402,875 and improperly charged Fund II over $1.7 million in management fees that should have been offset by the excessive incubator fees charged.  In engaging in that conduct, the complaint

alleges that Defendants acted knowing or recklessly (Section 206(1)) or at least negligently (Section 206(2)).

2. **Claim Two** – Claim Two alleges a violation of Section 206(4) of Advisers Act and Rule 206(4)-8(a)(1-(a)(2) by defendants Frost and FMC, by their failing to disclose the existence of and/or the amount of incubator fees and management fees, thus making the Funds' governing agreements, pitch materials, and quarterly status reports misleading.  In addition, the Claim Two alleges that Defendants engaged in multiple years of deceptive conduct by charging undisclosed, excessive and/or improper incubator and management fees and by starting new portfolio companies to generate additional incubator fees to cover FDC's overhead and Frost's personal expenses. In engaging in that conduct, the complaint alleges that Defendants acted knowing, recklessly, or at least negligently.

**B.     Elements Required to Establish Each Claim**

**1.     Claim One – Sections 206(1) and 206(2) of the Advisers Act**

As to a violation of Section 206(1), the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.     Defendants were investment advisers;

2.     they utilized the mails or instrumentalities of interstate commerce to employ a device, scheme or artifice;

3.     the device, scheme or artifice violated defendants' fiduciary duty to their clients in that they made false and misleading statements or omissions of material fact to their clients; and

4.     Defendants acted knowingly or recklessly.

As to a violation of Section 206(2), the SEC has the burden of proving each of the following elements by a preponderance of the evidence:

1.     Defendants were investment advisers;

2.     they utilized the mails or instrumentalities of interstate commerce to engage in any transaction, practice, or course of business;

3.      the transaction, practice, or course of business violated defendants' fiduciary duty to their clients in that they made false and misleading statements or omissions of material fact to their clients; and

4.      Defendants acted at least negligently.

### a.    Investment Adviser

People who manage[] the funds of others for compensation are 'investment advisers' within the meaning of the [Advisers Act].'" *SEC v. Haligiannis*, 470 F. Supp. 2d 373, 383 (S.D.N.Y. 2007) (quoting *Abrahamson v. Fleschner*, 568 F.2d 862, 870 (2d Cir. 1977)) (president/COO of investment adviser who had exclusive control over the management, operation, and investment decisions of hedge fund was an investment adviser under the Advisers Act).  An investment adviser is a fiduciary with "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts, as well as an affirmative obligation to employ reasonable care to avoid misleading his clients."  *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 194 (1963).

### b.    Fiduciary Duty

Section 206 establishes a fiduciary duty on investment advisers to act for the benefit of their clients, requiring investment advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients.  An investment adviser's failure to disclose material facts regarding the adviser's conflicts of interest constitutes fraud or deceit within the meaning of section 206.  *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007) (articulating elements); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. at 191, 195, 200 (noting that Section 206 imposes an "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts" on investment advisers; proof of intent to injure or injury to the client not required; "[f]ailure to disclose material facts must be deemed fraud or deceit" within the meaning of Section 206); 4 Sand, et al. Modern Federal Jury Instructions, ¶ 82.02,

Inst. 82-4 (Civil) (2012) (modified); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) (Section 206 "establishes 'federal fiduciary standards' to govern the conduct of investment advisers"); *Vernazza v. SEC*, 327 F.3d 851, 859-60 (9th Cir. 2003), *amended by*, 335 F.3d 1096 (9th Cir. 2003) (conflicts of interest are material facts; knowing or reckless conduct required to prove a violation of Section 206(1)); *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2003) (investment adviser's failure to disclose material information constitutes "fraud or deceit" under the Advisers Act); *SEC v. Wall Street Publ'g Inst., Inc.*, 591 F. Supp. 1070, 1084 (D.D.C. 1984) (same); *The Robare Group, Ltd. v. SEC*, 922 F.3d 468, 472, 477 (D.C. Cir. 2019) (failure by an investment adviser to disclose potential conflicts of interest to its clients constitutes fraud within the meaning of 206(1) and (2); negligence sufficient to prove a violation of 206(2)); *United States v. Tagliaferri*, 820 F.3d 568, 575 (2d Cir. 2016) (intent to harm not an element under 206); *SEC v. Westport Capital Mkts., LLC*, 408 F. Supp. 3d 93, 103 (D. Conn. 2019) (an investment advisor may violate 206(1) by failing to disclose material information about the advisor's conflicts of interest even if the advisor had not intent to injure his clients and even if his clients were no injured at all).

### c.      Misrepresentation and Omission

A misrepresentation is a statement of material fact that is false or misleading when it is made.  A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (definition of recurring terms). An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.  An omission is also a failure to disclose a material fact where the person has a fiduciary duty to disclose material facts.

An investment adviser's failure to disclose material information constitutes "fraud or deceit" under the Advisers Act.  *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d

at 955 (citing *Capital Gains*, 375 U.S. at 200).  Courts have held that an investment adviser's potential conflicts of interest are material and must be disclosed.  *Vernazza*, 327 F.3d at 859 (citing *Capital Gains*, 375 U.S. at 201)*; SEC v. Wall Street Publ'g Inst., Inc.*, 591 F. Supp. at 1084 (failure to disclose an economic self-interest constitutes a breach of an investment adviser's fiduciary duty under Section 206).

### d.    Scienter

Scienter under Section 206(1) requires a showing that the defendant acted knowingly or recklessly.  It does not require a showing of 'willful intent to defraud. *Vernazza*, 327 F.3d at 860; *Hollinger v. Titan Capital Corp.*, 914 F.2d 1564, 1568-69 (9th Cir. 1990).  It can be shown by either "deliberate recklessness" or "conscious recklessness," and may be inferred from circumstantial evidence.  *SEC v. Platforms Wireless*, 617 F.3d 1072, 1092 (9th Cir. 2010); *Herman & MacLean v. Huddleston*, 459 U.S. 375, 390-91, n.30 (1983); *SEC v. Burns*, 816 F.2d 471, 474 (9th Cir. 1987).

A defendant acts knowingly when he makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant also acts knowingly if he or she omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.  *See* Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.3 (definition of "knowingly").

Recklessness means highly unreasonable conduct that is an extreme departure from ordinary care, presenting a danger of misleading investors, which is either known to the defendant or is so obvious that the defendant must have been aware of it.  *See id.*, Civil § 18.3 (discussed in definition of "knowingly").

### e.    Negligence

A violation of Section 206(2) only requires a showing of simple negligence. *See SEC v. Steadman*, 967 F.2d 636, 641-43 n.5 (D.C. Cir. 1992); *see also Vernazza*, 327 F.3d at 860.  A person acts "negligently" when he or she fails to act with

reasonable prudence or fails to conform to the standard of care that would be
exercised by a reasonable person.  *See SEC v. Dain Rauscher*, 254 F.3d 852, 856 (9th
Cir. 2001).

**f.      Instrumentality of interstate commerce**

An instrumentality of interstate commerce includes the postal mails, e-mails,
telephone, telegraph, telefax, interstate highway system, Internet and similar methods
of communication and travel from one state to another within the United States.  *See*
Ninth Circuit Manual of Model Jury Instructions (2007): Civil § 18.0 (modified)
(definition of recurring terms).

**2.      Claim Two – Section 206(4) of the Advisers Act and Rule
206(4)-8 Thereunder**

For its claim under Section 206(4) of the Advisers Act and Rule 206(4)-8
thereunder, the SEC has the burden of proving each of the following elements by a
preponderance of the evidence:

1.      Defendant was an investment adviser of a pooled investment vehicle;

2.      Defendant made an untrue statement of material fact to an investor or
prospective investor in the pooled investment vehicle or omitted a material fact
necessary under the circumstances to keep the statement that was made from being
misleading, or otherwise engaged in any act, practice, or course of business that is
fraudulent, deceptive, or manipulative with respect to any investor or prospective
investor in the pooled investment vehicle; and

3.      Defendant acted at least negligently.

*See* 15 U.S.C. § 80b-6(4); 17 C.F.R. § 275.206(4)-8.

Scienter is not required for violations of Section 206(4) or Rule 206(4)-8
thereunder.  *Steadman*, 967 F.2d at 647; *see also SEC v. Quan*, 11-cv-723 (ADM),
2013 WL 556252, at *16 (D. Minn. Oct. 8, 2013) (applying *Steadman* to Rule
206(4)-8); *SEC v. Yorkville Advisors, LLC*, No. 12 Civ. 7728 (GBD), 2013 U.S. Dist.
LEXIS 110624 *3 (S.D.N.Y. Aug. 2013) (SEC must establish at least negligence to

7

*prove violations of 206(2) and 206(4)); Advisers Act Rel. No. 2628 at 23-24.*

### C.     Brief Description of Key Evidence in Support of Each Claim

From 2011 through 2016, FMC raised more than $63 million from investors in
the Funds.  The Funds invested in start-up companies created by FDC, which
purportedly provided operational support and other services to help "incubate" the
portfolios companies in anticipation of those companies maturing and ultimately
being sold or acquired by another company.  Frost, who had no prior experience as an
investment adviser or fund manager, owned and controlled both FMC and FDC.

During the relevant period FDC started 27 different portfolio companies.   The
portfolio companies, in turn, paid FDC a monthly service or "incubator" fee of
approximately $35,000 to $40,000 a month.  Despite raising over $63 million from
fund investors, the Funds are out of cash, and the Funds' investors have received ***no***
returns on their investments The only beneficiary of Frost's incubator model was
Frost himself, who used a significant portion of the incubator fees charged to the
portfolio companies to cover FDC's overhead and to pay Frost's exorbitant salary and
extravagant personal expenses.

### 1.     Claims One and Two

#### a.     The Offering Documents and Marketing Materials

At the heart all of the SEC's claims against Frost and FMC is that allegation
that they breached their fiduciary duties to the Fund and to the Funds' investors by
failing to disclose material information and conflicts of interest regarding the nearly
$22 million in incubator fees charged to the portfolio companies by FDC that were
paid using investor funds.  As to both Claims One and Two, in order to show the lack
of disclosure, the SEC will rely primarily on the offering documents and marketing
materials for the various funds, which Frost and FMC disseminated to investors and
prospective investors.  These offering documents and marketing materials will
include the PowerPoint presentations made to investors, operating and partnership
agreements signed by investors, various email exchanges between Frost and

investors, and executive summaries provided to investors.  The SEC anticipates that it will call investors who received these documents and that they will testify that these documents failed to disclose the existence of or the actual amount of incubator fees being paid using investors funds, or the nature of the expenses those fees covered.

For example, the SEC anticipates that it will show in connection with one of the funds, the Frost VP Seed, LLC (the "Seed Fund"), that investors received the Frost VP Seed, LLC Amended and Restated Operating Agreement (the "Seed Fund Agreement").  The SEC will show that the Seed Fund Agreement does not authorize the manager of the Seed Fund, that is Frost Management Company ("FMC"), to collect a management fee.  It merely authorizes payment by the Seed Fund to reimburse the manager's "out-of-pocket" expenses.  Although the Seed Fund Agreement identifies FDC, and that investment opportunities in companies formed by the FDC will be offered to the Seed Fund, nowhere does the Seed Fund Agreement disclose or otherwise authorize that the Seed Fund will be responsible for payment of the FDC's expenses, the payment of the portfolio companies' fees paid to FDC, or the exorbitant dollar amount of any such fees.

To further show the lack of disclosure about the fees being paid with investor money from the Seed Fund, the SEC anticipates it will introduce  marketing materials that were provided to investors in connection with the Seed Fund.  These marketing materials led investors to believe the FDC would provide services pursuant to arms-length transactions between the Incubator and the portfolio companies, and in a capital efficient manner:

> It is expected that the services provided from the incubator to the startup companies will be agreed to between the Boards of each individual company and [the incubator] *on a case-by-case basis*, and are expected to be *adjusted based on the individual needs of each company* as their business matures.  [The incubator's] policy will be to *only charge for services that the startup companies would require in the normal course of business*.  In general, this should mean that the startups receive higher quality services at a lower price than they would otherwise be able to afford (due to [the incubator's] ability to provide economies of scale.

The SEC anticipates the marketing materials will also show that Frost touted a "lean" start-up approach: "Our approach is to ensure that each company is highly capital efficient, especially in the earlier stages." Frost further represented that the FDC' mode of operation was "based on the popular Lean Startup methodology." The SEC anticipates it will show that this methodology emphasizes that start-ups should spend only what is necessary in their early stages, and that Frost touted that this process "allows us to bring new products to market very quickly and with modest initial investments."

Similarly, the SEC anticipates that it will show in connection with the Frost VP Early Stage Fund II, L.P., Limited Partnership Agreement (the "Fund II Agreement") that, unlike the Seed Fund Agreement, it authorized the Fund II general partners to collect a management fee of two percent (2%) per year. All "normal operating expenses" incurred in connection with the management of Fund II were to be paid from the management fee, including salaries, wages, travel, entertainment, overhead, rent, office expenses, and other expenses incurred in managing the investments of Fund II. The Fund II Agreement, unlike the Seed Fund Agreement, states that FDC "may receive a monthly fee" from the portfolio companies in exchange for certain shared services ("Service Fee"). However, the Service Fee would reduce the amount of the management fee Defendants were entitled to receive unless "such Service Fee [did] not exceed reasonable market rates." The SEC anticipates that it will show none of the Frost entities ever bothered to research market rates and that what Frost and FMC charged the portfolio companies far exceeded market rates such services.

### b. Expert Witnesses

To show that these and other representations in the offering documents and marketing materials were materially false and misleading, the SEC anticipates it will call three expert witness: David B. Weekly, Alex Malecki and Keith Palzer. The SEC anticipates that Weekly, a certified public accountant, will testify, in substance, that investor funds were spent in manner that was inconsistent with and beyond the

representations made in the offering documents and the marketing materials for the funds.  According to his expert report, the SEC anticipates Weekly will testify that the total excess incubator expenses paid to FDC through December 31, 2017 was $15,440,841 and that, of this amount, the excess fees attributable to investor funds was $12,798,195.  The SEC anticipates that Weekly will also testify about who much money Frost was paid by the Incubator, which was at least $2,983,685 according to his expert report.

The SEC anticipates that Maleki, an expert with specialized knowledge of standard industry practices involving the incubation of startup companies, the services typically provided by FDC to portfolio companies, and the reasonable costs and fees for such services.  Mr. Maleki will testify, in substance, that the fees FDC charged the portfolio companies, which were typically in the range of $35,000 to $40,000 per month, were excessive and not in accord with industry standards.  In addition, Mr. Maleki is expected to testify that the service fee agreements between FDC and the portfolio companies were not "arms-length" transactions, as they were signed by Frost and FDC's chief financial officer (acting on behalf of the portfolio companies) and fees were charged to the portfolio companies before they had any operations, officers or employees.  Mr. Maleki will also opine that FDC's flat rate, "one size fits all" fee model was not consistent with industry standards.

Mr. Palzer is an expert with specialized knowledge in investment fund manager governance, management, and operations, including private fund alternative investment vehicles such as private equity, venture capital, hedge, private credit, structured credit, commodity, managed futures, and other funds.  The SEC anticipates that he will testify, in substance, that Frost and FMC failed to meet investment fund management industry standards in failing to disclose to investors in the Seed Funds that the Portfolio Companies in which the funds invested would be charged service fees by the Incubator.  The SEC anticipates he will further testify that Frost failed to comply with industry standards by: (i) selling securities issued by the portfolio

companies to the Funds without obtaining proper consent and without disclosure of all conflicts of interest; (ii) failing to convene or utilize "limited partner advisory committees" ("LPACs"); and (iii) failing to cause the Funds to issue financial reports as required by the Funds' organizational documents.

### c.  Lay Witnesses

The SEC anticipates calling several lay witnesses, including Fund investors and several of the chief executive officers ("CEO") of the portfolio companies, who are expected to testify that the representations in the offering documents and marketing materials were materially false and misleading, and that the incubator fees charged to the portfolio companies were either undisclosed, excessive, or both.  For example, the SEC anticipates that several of the CEO's of the portfolio companies will testify that they consistently complained that the fees charged by FDC did not reflect the value received from the Incubator.  One or more are anticipated to describe the fees as "inflated" and that they valued the services at a fraction of what they were paying.  The SEC anticipates that the CEOs will also testify that the services provided and the fees charged by FDC were non-negotiable and that even though they objected to paying them they were required to pay nonetheless.  Finally, to show the fees were not adjusted based on the individual needs of each company as their business matured, the SEC anticipates the CEO witnesses will testify that when they asked for a breakdown or accounting of how the fees were calculated, their requests were repeatedly rejected.  One or more of the CEOs are expected to testify that when they tried to negotiate a lower fee based on the services the company needed, Frost responded by stating that that the  "[the Incubator] does not offer its services on some kind of a la carte basis. It's prix fixe only."

The SEC also anticipates calling several investors in the Funds, who are expected to testify that they were not aware of the incubator fees charged by FDC to the portfolio companies, the amount of those fees, or the nature of the costs and expenses those fees covered, and that such information, had it been disclosed, would

have material to the decision to invest in the Funds.

### D. Anticipated Evidentiary *Issues*

#### 1. Pending motions *in limine*

The SEC has filed three motions *in limine* motions to preclude defendants Frost and FMC from offering certain evidence and/or arguments at trial.  Dkt. Nos. 61-63. The SEC first motion *in limine* seeks to preclude Defendants' from offering expert testimony at trial from Andrew Ackerman and Kerry Jordan. Dkt. No. 61.  The SEC's second motion *in limine* seeks to preclude Defendants from offering any evidence or argument at trial that they reasonably relied on the advice of counsel or from presenting evidence concerning the presence or involvement of counsel presence of counsel.  Dkt. No. 62.  The SEC's third motion *in limine* motion seeks to preclude Defendants from offering any evidence or argument at trial regarding an unsigned version of an operating agreement related to the Seed Fund.  Dkt. No. 63.

Defendants have filed five motions *in limine*: to exclude SEC expert Keith Palzer (Dkt. No. 94); to exclude SEC expert Alex Maleki (Dkt. No. 95); to exclude evidence and testimony that Frost owed a fiduciary duty to Fund investors (Dkt. No. 103); to exclude evidence of Frost's personal expenses (Dkt. No. 104); and to exclude evidence concerning Frost's tax compliance (Dkt. No. 105)

On November 15, 2021, the Court denied the SEC's motion to exclude Ackerman, reserved ruling on the SEC's motion to exclude Jordan, and denied Defendants' motions to exclude Maleki and Palzer.  Dkt. No. 131.

#### 2. Other evidentiary issues

In their witness list provided to the SEC in the last week, Defendants identified eleven witnesses, including three witnesses formerly employed by Cooley LLP, who were not previously disclosed in Defendants' Rule 26 initial disclosures.

In addition, in the past week, and well after the close of fact discovery, Defendants produced additional documents relating to Snow Data Capital, which were responsive both to the SEC discovery requests in this action as well as to the

SEC's investigative subpoena directed to Snow Data Capital.

The SEC anticipates that it will challenge Defendants' late-disclosed witnesses as well as the introduction into evidence of the late disclosed documents.

**E.     Issues of Law**

**1.     The Scope of Defendants' Fiduciary Obligations.**

Sections 206(1) and 206(2) of the Advisers Act make it unlawful for an investment adviser to employ any device, scheme, or artifice to defraud any client or prospective client or to engage in any transaction, practice, or course of business which operates as a fraud or deceit upon any client or prospective client.  Scienter is required for Section 206(1) and may be established by showing knowing or reckless conduct, while Section 206(2) can be satisfied by a showing of simple negligence. *See Steadman*, 967 F.2d at 641-43 n.5; *see also Vernazza*, 327 F.3d at 860.

Section 206(4) of the Advisers Act and Rule 206(4)-8 thereunder prohibit an investment adviser from, directly or indirectly, engaging in any act, practice, or course of business that is fraudulent, deceptive, or manipulative.  The SEC must establish at least negligence to prove a violation of 206(4)); Advisers Act Rel. No. 2628 at 23 - 24.

As a threshold matter, both FMC and Frost are investment advisers.  Section 202(a)(11) of the Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities. . . ."  FMC meets this definition because it provided investment advice for fees that it charged; it also registered as an exempt reporting adviser that registered with California in 2012.  This element is not is dispute.

Frost also meets the definition of investment adviser.  Courts have held that "'people who manage[] the funds of others for compensation are 'investment advisers' within the meaning of the [Advisers Act].'"  *Haligiannis*, 470 F. Supp. 2d at 383 (quoting *Abrahamson*, 568 F.2d at 870; *accord SEC v. Nutmeg Grp., LLC*, 162 F.

1  Supp. 3d 754, 772 (N.D. Ill. 2016); *SEC v. ABS Manager, LLC*, No. 13cv319-

2  GPC(BGS), 2014 U.S. Dist. LEXIS 175071, at 10 (S.D. Cal. Dec. 18, 2014); *SEC v.*

3  *Berger*, 244 F. Supp. 2d 180, 193 (S.D.N.Y. 2001).  Here, Frost is the sole owner and

4  managing member of FMC as well as the sole owner of the managing members and

5  general partners of the Funds, and he received compensation for giving advice to the

6  Funds through those ownership interests and in directing the Funds' investments in

7  the portfolio companies.  Again, this element is not is dispute.

8       Sections 206(1) and 206(2) of the Advisers Act make it unlawful for an

9  investment adviser to employ any device, scheme, or artifice to defraud any client or

10 prospective client or to engage in any transaction, practice, or course of business

11 which operates as a fraud or deceit upon any client or prospective client.  Scienter is

12 required for Section 206(1) and may be established by showing knowing or reckless

13 conduct, while Section 206(2) can be satisfied by a showing of simple negligence.

14 *See Steadman*, 967 F.2d at 641-43 n.5; *see also Vernazza*, 327 F.3d at 860.

15      An investment adviser is a fiduciary with "an affirmative duty of utmost good

16 faith, and full and fair disclosure of all material facts, as well as an affirmative

17 obligation to employ reasonable care to avoid misleading his clients."  *Capital Gains*,

18 375 U.S. at 194.  An investment adviser's failure to disclose material information

19 constitutes "fraud or deceit" under the Advisers Act.  *Monetta Fin. Servs., Inc. v.*

20 *SEC*, 390 F.3d at 955 (citing *Capital Gains*, 375 U.S. at 200).  Courts have held that

21 an investment adviser's potential conflicts of interest are material and must be

22 disclosed.  *Vernazza*, 327 F.3d at 859 (citing *Capital Gains*, 375 U.S. at 201)*; see*

23 *also IMS/CPAs & Assocs.*, Securities Act Rel. No. 8031, 2001 SEC LEXIS 2323, at

24 *31 (Nov. 5, 2001 (Commission op.) ("economic conflicts of interest, such as

25 undisclosed compensation, are material facts that must be disclosed"); *Wall Street*

26 *Publ'g Inst.*, 591 F. Supp. at 1084 (failure to disclose an economic self-interest

27 constitutes a breach of an investment adviser's fiduciary duty under Section 206).

28      The SEC does not have to prove that Defendants were registered advisers with

15

SEC in order to prove any of its Section 206 violations.  These violations apply to any "investment adviser," regardless of their registration status.  The Advisers Act defines an "investment adviser" as "any person who, for compensation, engages in the business of advising others . . . as to the value of securities or as to the advisability of investing in, purchasing, or selling securities." *See* Adviser Act § 202(a)(11).

In addition to the fiduciary duties that Defendants owed to the Funds under the Advisers Act, Defendants also owned fiduciary duties to the Funds' investors under Delaware law, thereby making their material omissions, as well as their material misstatements to investors, actionable.  Under Delaware law, unless eliminated in the entity's operating agreement, member-managers of a Delaware limited liability company owe traditional fiduciary duties to both the LCC and to its non-managing members.  *Feeley v. NHAOCG*, 62 A. 3d 649, 663 (Del Ch. 2012); *Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)*, 405 B.R. 527, 539 (Bankr. D. Del. 2009).  Similarly, absent a contrary provision in the partnership agreement, the general partner of a Delaware limited partnership owes the traditional fiduciary duties of loyalty and care to the both the partnership and its partners.  *Feeley v. NHAOCG*, 62 A. 3d at 663; *accord Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 Del. Ch. LEXIS 116 (Aug. 8, 2011); *Wallace ex. rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999); *In re USA Cafes, L.P. Litigation*, 600 A.2d 43 (Del. Chancery Ct. 1991).

Although not an element of either of the SEC's claims, Defendants' fiduciary obligations under Delaware law to the Funds' investors are relevant to the SEC's claim under Section 206(4) and Rule 206(4)-8 that Frost made material omissions to Fund investors by, among other things, failing to disclose the existence of and/or the amount of incubator fees and management fees, and the nature of the expenses and costs covered by those fees.  Ordinarily, silence, absent a duty to disclose, is not

misleading.  *Basic, Inc. v. Levinson*, 485 U.S. 224, 239 n.1, 7 (1988).  Even absent any misleading statements, however, an independent duty to disclose may be implicated by a fiduciary-type relationship between two parties to a securities transaction.  *See Chiarella v. United States*, 455 U.S. 222, 227-30 (1980).  Here, there is such an independent fiduciary duty under Delaware law.

The SEC must also prove that Defendants' breaches of fiduciary duty and misstatements and omissions were material.  The standard for "materiality under the Advisers Act is whether there is a substantial likelihood that a reasonable investor would have considered the information [at issue] important." *Amendments to Form ADV*, Advisers Act Rel. No. 3060, 2010 SEC LEXIS 2679, at *23 n.35 (Aug. 12, 2010); *see also Steadman v. SEC*, 603 F.2d 1126, 1130 (5th Cir. 1979).  Based on the evidence the SEC expects to present, the Funds and fund investors would consider it important when deciding whether to invest, to know that the portfolio companies in which the Funds were investing would be paying undisclosed or improperly charged incubator fees that diminished the portfolio companies' assets.  The Funds and fund investors would also have considered it important to know that some of the portfolio companies in which the Funds were investing were not created because Frost thought these companies could pursue new and viable ideas but were created to generate additional incubator fees to cover Frost's extravagant personal expenses.  Similarly, the Funds and fund investors would have considered it important to know of the undisclosed and/or improperly charged management fees because paying these fees directly impacted the Funds' assets.

The same evidence showing that Frost knowingly and/or recklessly breached his fiduciary duties to the Funds and fund investors also demonstrates his scienter. *See, e.g., Vernazza v. SEC*, No. 01-71857, 2003 U.S. App. LEXIS 14351, at *19 (9th Cir. Apr. 23, 2003); *SEC v. Ahmed*, 308 F. Supp. 3d 628, 655 (D. Conn. 2018); *SEC v. Mack*, CV-1008383 DSF(PSWx), 2021 U.S. Dist. LEXIS 200288, at *6 (C.D. Cal. Aug. 7. 2012).

Case No. 8:19-cv-01559-JLS-JDE

Further, for purposes of Frost's liability under 206(2) and 206(4) of the Advisers Act and Rule 206(4)-8, the SEC is required to show that Frost acted at least negligently by falling below the standard of care expected of an investment adviser or a general partner through his self-dealing.  For an investment adviser, the standard of care is based on its fiduciary duty.  *Capital Gains*, 375 U.S. at 191-92.

### 2.  The Doctrine of *Respondeat Superior* and the Imputation of Knowledge.

Because Frost controlled FMC, his scienter and negligence can be imputed to the FMC.  *See, e.g.*, *In re ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015) (scienter of senior controlling officers may be imputed to corporation).

The SEC anticipates that Defendants may attempt to turn this doctrine on its head and argue that the Funds were not defrauded, as Frost's knowledge of the existence and amount of incubator fees charged by FDC can be imputed to the Funds. The SEC anticipates that Defendants will also argue that the knowledge of other members of the Funds' investment committees, who, collectively with Frost, approved the Funds' investments in the portfolio companies, were also knowledgeable of the existence and amount of incubator fees charged by FDC to the portfolio companies.

However, under the "adverse interest doctrine," an officer's knowledge will not be imputed to the corporation, if the officer's interests are adverse to the corporation and not for the benefit of the corporation.  *Thabault v. Chait*, 541 F.3d 512 (3d Cir. 2008); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340 (3d Cir. 2001); *Alsco, Inc. v. Premier Outsourcing Plus, LLC*, 2020 U.S. Dist. LEXIS 129036, at *18 (D. Del. July 22, 2020); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546 (D. Del. July 15, 2010).  The reason for this is obvious, if officers and directors were allowed to have their misconduct imputed to the corporation for purposes of avoiding liability for breaching their duties to the corporation, corporate stakeholders would have no recourse against disloyal corporate managers.  *Official Comm. of Unsecured Creditors of Allegheny Health, Educ. And Research Found. v.*

*PricewaterhouseCoopers, LLP*, 2008 U.S. Dist. LEXIS 18823, at *18 (3d Cir. 2008).

Here, Frost and the other member of the Fund's investment committees, including William Guerry, the secretary for the investment committees, were also employed by or otherwise held positions with FDC, the incubator.  As such, they operated under a conflict of interest when voting to approve Fund investments in the portfolio companies.  As a result, their knowledge of the existence and amount of FDC incubators fees cannot be imputed to the Funds.

### 3.    Remedial Relief

As for remedial relief, the SEC seeks permanent injunctions, disgorgement with prejudgment interest, and civil penalties.  All such relief is for the Court to decide following a jury finding that Defendants are liable for violating the provisions of the Advisers Act at issue.

### a.    A permanent injunction is appropriate

To obtain a permanent injunction, the SEC must establish that there is a reasonable likelihood of future violations.  *See SEC v. Murphy*, 626 F.2d 633, 655 (9th Cir. 1980).  Whether a likelihood of future violations exists depends upon the totality of the circumstances.  *Id.*  The existence of past violations may give rise to an inference that there will be future violations.  *Id*.  Courts also consider factors such as the degree of scienter involved, the isolated or recurrent nature of the violative conduct, the defendant's recognition of the wrongful nature of the conduct, the likelihood that, because of the defendant's occupation, future violations may occur, and the sincerity of defendant's assurances (if any) against future violations.  *See Murphy*, 626 F.2d at 655.  For all of the reasons set forth above, permanent injunctions are appropriate.

### b.    Disgorgement should be ordered

Disgorgement is designed to deprive a wrongdoer of unjust enrichment, and to deter others from violating securities laws by making violations unprofitable; a district court has broad equity powers to order the disgorgement of ill-gotten gains obtained

through violation of the securities laws. *Platforms Wireless*, 617 F.3d at 1096; *SEC v. First Pacific Bancorp*, 142 F.3d 1186, 1191 (9th Cir. 1998). In *Liu v. SEC*, the Supreme Court recently reaffirmed the Commission's authority to seek and the Court's authority to order disgorgement "that does not exceed a wrongdoer's net profits and is awarded for victims." *Liu v. SEC*, 140 S. Ct. 1936, 1940 (2020); *see SEC v. Janus Spectrum LLC*, *Nos*. 17-17042, 18-15403, 2020 U.S. App. LEXIS 20710, at *3 (9th Cir. July 1, 2020). To seek disgorgement under its scienter-based Section 206(1) claim, the SEC must bring its claim within 10 years, excluding any applicable tolling period agreed to by the parties, and within 5 years for its negligence-based claims under 206(2) and 206(4). *See* Section 6501 of the National Defense Authorization Act (Jan. 1, 2021), amending Section 21(d) of the Exchange Act extending limitations period for disgorgement to ten years for scienter-based violations of the Exchange Act, the Securities Act of 1933 and the Investment Advisers Act.

*Liu* did not disturb the principle that "[d]isgorgement need be 'only a reasonable approximation of profits causally connected to the violation.'" *Platforms Wireless*, 617 F.3d at 1096 (quoting *First Pacific Bancorp*, 142 F.3d at 1191; *SEC v. Mizrahi*, No. CV 19-2284 PA (JEMX), 2020 WL 6114913, at *1 (C.D. Cal. Oct. 5, 2020). Once the SEC has done this, the burden then shifts to the defendants to "demonstrate that the disgorgement figure was not a reasonable approximation." *Platforms Wireless*, 617 F.3d at 1096, quoting *SEC v. First City Financial Corp., Ltd.*, 890 F.2d 1215, 1232 (D.C. Cir. 1989).

Additionally, disgorgement normally includes prejudgment interest calculated based on the rate provided in 26 U.S.C. § 6621 for tax underpayments. *See Platforms Wireless*, 617 F.3d at 1099. This "ensure[s] that the wrongdoer does not profit from the illegal activity," *SEC v. Cross Fin. Servs., Inc.*, 908 F. Supp. 718, 734 (C.D. Cal 1995), *aff'd sub nom. SEC v. Colello*, 139 F.3d 674 (9th Cir. 1998), and nothing in *Liu* has disturbed this principle.

### c. Civil penalties should be imposed

If the violation "involved fraud, deceit, manipulation, or deliberate or reckless disregard of a regulatory requirement" and "such violation directly or indirectly resulted in substantial losses or created a significant risk of substantial losses to other persons" a third tier penalty may be imposed. *See* Section 21(d)(3)(B)(iii) of the Exchange Act, 15 U.S.C. § 78u(d)(3)(B)(iii). The factors used to determine the appropriateness of an injunction are helpful when assessing penalties. *SEC v. Abacus International Holding Corp.*, [2001 Transfer Binder] Fed. Sec. L. Rep. (CCH) ¶ 91, 542, 2001 U.S. Dist. LEXIS 12635, 2001 WL 940913, *5 (N.D. Cal. August 16, 2001).

### F.   Bifurcated Issues

All relief is to be determined by the Court.

### G.   Jury Trial

Defendants demanded a jury trial in their Answer to the SEC's complaint pursuant to Federal Rule of Civil Procedure 38(b).

### H.   Attorneys Fees

The SEC does not seek attorney's fees in this action.

### I.   Abandonment of Issues

The SEC is not abandoning any of the claims pleaded in its complaint.

Dated:  November 19, 2021                Respectfully submitted,

                                         */s/ Donald W. Searles*

                                         DONALD W. SEARLES
                                         DOUGLAS M. MILLER
                                         CHARLES E. CANTER
                                         Attorneys for Plaintiff
                                         Securities and Exchange Commission

Case No. 8:19-cv-01559-JLS-JDE

## **PROOF OF SERVICE**

I am over the age of 18 years and not a party to this action.  My business address is:

U.S. SECURITIES AND EXCHANGE COMMISSION,
444 S. Flower Street, Suite 900, Los Angeles, California 90071
Telephone No. (323) 965-3998; Facsimile No. (213) 443-1904.

On November 19, 2021, I caused to be served the document entitled **PLAINTIFF SECURITIES AND EXCHANGE COMMISSION'S AMENDED MEMORANDUM OF CONTENTIONS OF FACT AND LAW** on all the parties to this action addressed as stated on the attached service list:

☐     **OFFICE MAIL:**  By placing in sealed envelope(s), which I placed for collection and mailing today following ordinary business practices.  I am readily familiar with this agency's practice for collection and processing of correspondence for mailing; such correspondence would be deposited with the U.S. Postal Service on the same day in the ordinary course of business.

☐     **PERSONAL DEPOSIT IN MAIL:**  By placing in sealed envelope(s), which I personally deposited with the U.S. Postal Service.  Each such envelope was deposited with the U.S. Postal Service at Los Angeles, California, with first class postage thereon fully prepaid.

☐     **EXPRESS U.S. MAIL:**  Each such envelope was deposited in a facility regularly maintained at the U.S. Postal Service for receipt of Express Mail at Los Angeles, California, with Express Mail postage paid.

☐     **HAND DELIVERY:**  I caused to be hand delivered each such envelope to the office of the addressee as stated on the attached service list.

☐     **UNITED PARCEL SERVICE:**  By placing in sealed envelope(s) designated by United Parcel Service ("UPS") with delivery fees paid or provided for, which I deposited in a facility regularly maintained by UPS or delivered to a UPS courier, at Los Angeles, California.

☐     **ELECTRONIC MAIL:**  By transmitting the document by electronic mail to the electronic mail address as stated on the attached service list.

☒     **E-FILING:**  By causing the document to be electronically filed via the Court's CM/ECF system, which effects electronic service on counsel who are registered with the CM/ECF system.

☐     **FAX:**  By transmitting the document by facsimile transmission.  The transmission was reported as complete and without error.

I declare under penalty of perjury that the foregoing is true and correct.


Date:  November 19, 2021          */s/ Donald W. Searles*
                                                    Donald W. Searles

1
2

***SEC v. Stuart Frost, et al.***
**United States District Court—Central District of California**
**Case No. 8:19-cv-01559-JLS-JDE**

3

## <u>SERVICE LIST</u>

4

5   MARC J. SCHNEIDER
    Email:  mschneider@stradlinglaw.com
6   JASON DE BRETTEVILLE
    Email:  jdebretteville@stradlinglaw.com
7   KATHLEEN M. MARCUS
    Email:  kmarcus@stradlinglaw.com
8   LISA M. NORTHRUP
    Email:  lnorthrup@stradlinglaw.com
9   SEAN T. LOBB
    Email:  stlobb@stradlinglaw.com
10  STRADLING YOCCA CARLSON & RAUTH A PROFESSIONAL CORPORATION
    660 Newport Center Drive, Suite 1600
11  Newport Beach, CA 92660-6422
    ***Attorneys for Defendant STUART FROST***
12

13

14  ANDREW C. CALLARI
    Email:  ac@callarisummers.com
    34197 Pacific Coast Highway, Suite 100
15  Dana Point, CA 92629
    ***Attorney for Defendant FROST MANAGEMENT COMPANY, LLC***
16

17

18

19

20

21

22

23

24

25

26

27

28

Case No. 8:19-cv-01559-JLS-JDE