MARC J. SCHNEIDER, State Bar No. 214609
  mschneider@stradlinglaw.com
JASON DE BRETTEVILLE, State Bar No. 195069
  jdebretteville@stradlinglaw.com
KATHLEEN M. MARCUS, State Bar No. 199857
  kmarcus@stradlinglaw.com
SEAN T. LOBB, State Bar No. 324213
  stlobb@stradlinglaw.com
LISA M. NORTHRUP, State Bar No. 293784
  lnorthrup@stradlinglaw.com

STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Attorneys for Defendant
STUART FROST

ANDREW C. CALLARI, State Bar No. 159003
  ac@callarisummers.com
CALLARI & SUMMERS
34197 Pacific Coast Highway, Suite 100
Dana Point, CA 92629
Telephone: (714) 371-4110
Facsimile: (714) 882-7915

Attorney for Defendant
FROST MANAGEMENT COMPANY, LLC

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

# SOUTHERN DIVISION

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>Plaintiff,<br><br>vs.<br><br>STUART FROST and FROST MANAGEMENT COMPANY, LLC,<br><br>Defendants. | CASE NO. 8:19-cv-01559-JLS-JDE<br>Assigned to Hon. Josephine L. Staton<br><br>**DEFENDANTS FROST MANAGEMENT COMPANY, LLC'S AND STUART FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW**<br><br>Date:     January 28, 2022<br>Time:    10:30 a.m.<br>Ctrm:   10A<br>Judge:  Hon. Josephine L. Staton<br><br>Complaint Filed August 13, 2019 |

# TABLE OF CONTENTS

**Page**

I.   INTRODUCTION ........................................................................................ 7

II.  SEC'S CLAIMS ........................................................................................ 8

   A.   Summary of the SEC's Two Claims .................................................. 8

   B.   Elements Required to Establish the SEC's Claims ........................... 8

      1.   SEC's First Claim Alleged Under Sections 206(1) and 206(2) of the Advisers Act ............................................. 8

         a.   Fraud .................................................................... 9

         b.   Material Fact ........................................................ 10

         c.   Scienter ................................................................ 10

         d.   Negligence ........................................................... 11

      2.   SEC's Second Claim Alleged Under Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1)-(a)(2) ....................... 11

         a.   Fraud .................................................................... 12

   C.   Frost's Key Evidence in Opposition to the SEC's Claims .............. 13

      1.   SEC's First Claim ..................................................... 13

      2.   SEC's Second Claim .................................................. 16

III. FROST'S AFFIRMATIVE DEFENSES ................................................. 17

   A.   Summary of Frost's Affirmative Defenses ..................................... 17

   B.   Elements of Frost's Affirmative Defenses ..................................... 17

   C.   Key Evidence Supporting Frost's Affirmative Defenses ................ 18

IV.  ANTICIPATED EVIDENTIARY DISPUTES ........................................ 18

   A.   Defendants' Pending Motions in Limine ........................................ 18

   B.   SEC's Pending Motions in Limine ................................................. 20

   C.   Witnesses ....................................................................................... 21

V.   ISSUES OF LAW .................................................................................... 21

   A.   The SEC Must Prove Defendants Defrauded the Funds to Prevail on its First Claim ............................................................... 21

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-2-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

B.   There is No Fiduciary Duty at Issue With Respect to the SEC's Second Claim ............................................................................ 23

C.   Defendants' Reliance on Auditors Severely Undermines Any Potential Finding of Scienter ........................................................ 26

D.   Disgorgement ................................................................................ 27

VI.   OTHER ISSUES ....................................................................................... 28

A.   Bifurcation of Issues .................................................................... 28

B.   Demand for Jury Trial .................................................................. 28

C.   Attorneys' Fees ............................................................................ 28

D.   Abandonment of Issues ................................................................ 29

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

# TABLE OF AUTHORITIES

**Page(s)**

**Cases**

*Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*,
No. 3658-VCS, 2009 Del. Ch. LEXIS 54 (Ch. Apr. 20, 2009) ........................24

*Fialkov v. Microsoft Corp.*,
72 F. Supp. 3d 1220 (W.D. Wash. 2014) ..........................................................10

*Goldstein v. SEC*,
451 F.3d 873 (D.C. Cir. 2006) ..........................................................21, 22, 23, 24

*In re Hansen Nat. Corp. Sec. Litig.*,
527 F. Supp. 2d 1142 (C.D. Cal. 2007)..............................................................26

*Jones Mem'l Tr. v. Tsai Inv. Servs., Inc.*,
367 F. Supp. 491 (S.D.N.Y. 1973) .......................................................................9

*Liu v. SEC,* 140 St. Ct. 1936 (2020) ......................................................................26

*Mathews v. Centex Telemanagement*,
No. C-92-1837-CAL, 1994 U.S. Dist. LEXIS 7895 (N.D. Cal. June
8, 1994)................................................................................................................26

*Nemec v. Shrader*,
991 A.2d 1120 (Del. 2010)..................................................................................25

*Ortiz v. Canopy Growth Corp.*,
No. 2:19-cv-20543-KM-ESK, 2021 U.S. Dist. LEXIS 88372
(D.N.J. May 6, 2021)...........................................................................................26

*Parker v. Joe Lujan Enters., Inc.*,
848 F.2d 118 (9th Cir. 1988)...............................................................................25

*SEC v. Capital Gains Research Bureau, Inc.*,
375 U.S. 180 (1963) ......................................................................................10, 21

*SEC v. Conrad*,
No. 1:16-CV-02572-LMM, 2017 U.S. Dist. LEXIS 160423 (N.D.
Ga. May 2, 2017)................................................................................................22

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

*SEC v. Glt Dain Rauscher, Inc.*,
   254 F.3d 852 (9th Cir. 2001) ................................................................... 10, 11

*SEC v. Gowrish*,
   No. C 09-05883 SI, 2011 U.S. Dist. LEXIS 76114 (N.D. Cal. July
   14, 2011) ....................................................................................................... 27

*SEC v. Northshore Asset Mgmt.*,
   2008 U.S. Dist. LEXIS 36160 (S.D.N.Y. May 5, 2008) ................................. 22

*SEC v. Platforms Wireless Int'l Corp.*,
   617 F.3d 1072 (9th Cir. 2010) ...................................................................... 11

*SEC v. Steadman*,
   967 F.2d 636 (D.C. Cir. 1992) ...................................................................... 11

*SEC v. Trabulse*,
   526 F. Supp. 2d 1008 (N.D. Cal. 2007) ........................................................ 22

*SEC v. Westport Capital Mkts. LLC*,
   408 F. Supp. 3d 93 (D. Conn. 2019) ............................................................... 9

*Toombs v. Leone*,
   777 F.2d 465 (9th Cir. 1985) ........................................................................ 10

*Tsc Indus. v. Northway*,
   426 U.S. 438 (1976) ...................................................................................... 10

*United States SEC v. Quan*,
   No. 11-723 ADM/JSM, 2013 U.S. Dist. LEXIS 145146, at *52 (D.
   Minn. Oct. 8, 2013) ....................................................................................... 12

*Vernazza v. SEC*,
   327 F.3d 851 (9th. Cir. 2003) ....................................................................... 10

**Statutes**

17 C.F.R. § 275.206(4)-8 ................................................................................. 8, 12

15 U.S.C. § 78u(d)(8)(A) ...................................................................................... 17

15 U.S.C. § 80b–6 ................................................................................................. 21

15 U.S.C. § 80b–6(1) ........................................................................................... 8, 9

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-5-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

15 U.S.C. § 80b–6(2) ................................................................................... 8, 9, 17

15 U.S.C. § 80b–6(4) ........................................................................................ 12

15 U.S.C. § 80b-6(4) .......................................................................................... 17

Exchange Act Section 10(b) .............................................................................. 10

Securities Act Section 17(a)(1) ......................................................................... 10

**Other Authorities**

Fed. R. Evid. 401 .............................................................................................. 18

Fed. R. Evid. 403 .......................................................................................... 18, 20

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-6-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

8:19-cv-01559-JLS-JDE

Defendants Frost Management Company, LLC ("FMC") and Stuart Frost ("Frost") submit this Memorandum of Contentions of Fact and Law pursuant to Local Rule 16-4, this Courts Civil Trial Order (*see* Dkt. 24) and this Court's Order Granting Stipulation to Extend Final Pretrial Conference Deadline.  (*See* Dkt. 86).

## I.    INTRODUCTION

Stuart Frost developed a novel concept for an incubator focused on launching companies solving needs involving "Big Data."  Frost created five private venture capital funds (the "Funds") that raised more than $60 million from sophisticated, super-accredited individuals.  Frost also founded an incubator that developed more than twenty portfolio companies (the "Incubator"), in which the Funds invested.  The portfolio companies collectively raised more than $150 million in additional monies from outside investors, including prominent venture capital firms.  The incubator entered into a memorandum of understanding with GE Ventures LLC and pursued and developed other strategic partnership with large companies to increase the potential successful exist options for the portfolio companies.  When the enterprise started struggling with cash flow, Frost provided more than $4,760,000 in outstanding loans and investments.

The Securities and Exchange Commission ("SEC") filed suit in August 2019 alleging two claims under the Investment Advisers Act ("Advisers Act") against defendants FMC and Stuart Frost (together with FMC the "Defendants").  The SEC's first claim alleges that Defendants defrauded the Funds, including by failing to disclose to certain of the Funds that the portfolio companies in which they invested would be charged incubator fees.  As the evidence will show, there was no failure to disclose, as the Funds had knowledge of the incubator fees paid by the portfolio companies.  The SEC's second claim alleges that Defendants defrauded the investors in the Funds, including by failing to disclose the existence of incubator fees to investors.  Yet, the evidence is clear that investors also had

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-7-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

knowledge from oral and written disclosures as to the existence of the incubator fees paid by the portfolio companies.

## II.    SEC'S CLAIMS

### A.    Summary of the SEC's Two Claims

Claim 1: Frost violated Section 206(1) of the Investment Advisers Act ("Advisers Act") by using the mails or other means or instrumentality of interstate commerce, directly or indirectly, to employ any device, scheme, or artifice to defraud the Funds and violated Section 206(2) of the Investment Advisers Act by using the mails or other means or instrumentality of interstate commerce, directly or indirectly, to engage in any transaction, practice, or course of business which operated as a fraud or deceit upon the Funds.  *See* 15 U.S.C. § 80b–6(1).

Claim 2: Frost violated Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1)-(a)(2) by using the mails or other means or instrumentality of interstate commerce, directly or indirectly, to engage in any act, practice, or course of business which is fraudulent, deceptive, or manipulative.  *See* 15 U.S.C. § 80b–6(2); 17 C.F.R. § 275.206(4)-8.

### B.    Elements Required to Establish the SEC's Claims

#### 1.    SEC's First Claim Alleged Under Sections 206(1) and 206(2) of the Advisers Act

To prove that Frost violated Section 206(1) of the Advisers Act, the SEC must prove by a preponderance of the evidence each one of the following four elements:

(1) Frost was an investment adviser to the Funds;

(2) Frost used the mail or other means or instrumentalities of interstate commerce to employ a device, scheme, or artifice to defraud;

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-8-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

(3) Frost's device, scheme, or artifice defraud violated his fiduciary duty to the Funds in that it included false and misleading statements or omissions of material fact; and

(4) Frost acted with scienter.

*See* 15 U.S.C. § 80b–6(1) and authorities discussed, *infra*.

To prove that Frost violated Section 206(2) of the Advisers Act, the SEC must prove by a preponderance of the evidence each of the following four elements:

(1) Frost was an investment adviser to the Funds;

(2) Frost used the mail or other means or instrumentalities of interstate commerce in connection with engaging in any transaction, practice, or course of business that operated as a fraud or deceit on the Funds;

(3) Frost engaged in any transaction, practice, or course of business that operated as a fraud or deceit by violating his fiduciary duty to the Funds in that it included false and misleading statements or omissions of material fact; and

(4) Frost acted with at least negligence.

*See* 15 U.S.C. § 80b–6(2) and authorities discussed, *infra*.

### a.    Fraud

The defendant's breach of fiduciary duty must be grounded in fraud to constitute a violation of Section 206. *See SEC v. Westport Capital Mkts. LLC*, 408 F. Supp. 3d 93, 108 (D. Conn. 2019) ("Unlike section 206(1) and (2) of the Act, section 206(3) can be violated without a showing of fraud.") (citations omitted); *Jones Mem'l Tr. v. Tsai Inv. Servs., Inc.*, 367 F. Supp. 491, 497 (S.D.N.Y. 1973) ("The plain words of Section 206 of the Investment Advisers Act of 1940 make no mention of mismanagement, but speak solely and exclusively to concealment and misrepresentation.").

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-9-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

Accordingly, the SEC must prove that either the defendant made a statement to the Funds that was false and misleading when made, or the defendant failed to make a statement to the Funds that it/he should have made based on its/his fiduciary duty to the Funds, which is an omission.  In order for an omission to breach a defendant's fiduciary duty, the defendant must have had a duty to disclose that omitted statement.  *See Fialkov v. Microsoft Corp.*, 72 F. Supp. 3d 1220, 1229 (W.D. Wash. 2014) ("Where Plaintiffs rely on an omission-based theory of liability, they must demonstrate that Defendants possessed a duty to disclose the withheld information.. . . .  It is axiomatic that federal securities laws 'do not create an affirmative duty to disclose any and all material information.'" (quoting *Matrixx Initiatives, Inc. v. Siracusano*, 131 S. Ct. 1309, 1321 (2011)).   The SEC will have failed to meet its burden to prove the facts as alleged were omissions, if the Funds were aware of those facts.

### b.   Material Fact

A misrepresentation or omission must be of a <u>material</u> fact.  *See SEC v. Capital Gains Research Bureau, Inc*., 375 U.S. 180, 194 (1963).  A material fact is one such that its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his choice of action in the transaction. *See Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985).  There must be a substantial likelihood the fact would have been viewed by a reasonable person as having significantly altered the "total mix" of information made available.  *See Tsc Indus. v. Northway*, 426 U.S. 438, 449 (1976).

### c.   Scienter

A violation of Section 206(1) requires proof that the defendant acted with scienter.  Prior to *Vernazza v. SEC*, the Ninth Circuit had never considered what constitutes scienter under Section 206(1) of the Advisers Act.  In *Vernazza*, the Ninth Circuit held that "knowing or reckless conduct" constitutes scienter.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-10-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

*Vernazza v. SEC*, 327 F.3d 851, 859 (9th. Cir. 2003). As explained by the Ninth Circuit, this is the standard for violations of Exchange Act Section 10(b) and Rule 10b-5, a similar standard is required for violations of Securities Act Section 17(a)(1), and the language in Section 17(a)(1) is nearly identical to that in Section 206(1). *Vernazza* cited to *SEC v. Glt Dain Rauscher, Inc.,* 254 F.3d 852, 856 (9th Cir. 2001) in which the Ninth Circuit defined "reckless conduct" as "conduct that consists of a highly unreasonable act, or omission, that is an 'extreme departure from the standards of ordinary care, and which presents a danger of misleading buyers or sellers that is either known to the defendant or is so obvious that the actor must have been aware of it.'" (internal citation omitted). The Ninth Circuit has additionally explained that "scienter requires either 'deliberate recklessness' or 'conscious recklessness,' and that it includes 'a subjective inquiry' turning on 'the defendant's actual state of mind.'" *SEC v. Platforms Wireless Int'l Corp.*, 617 F.3d 1072, 1093 (9th Cir. 2010).

### d. Negligence

A violation of Section 206(2) requires proof that the defendant acted at least with negligence. *See SEC v. Steadman*, 967 F.2d 636, 643 n. 5 (D.C. Cir. 1992) ("a violation of § 206(2) of the Investment Advisers Act may rest on a finding of simple negligence"). Negligence is a failure to use reasonable care where reasonable care is the degree of care that a reasonably prudent person would use under similar circumstances. *See SEC v. Glt Dain Rauscher, Inc.*, 254 F.3d 852, 856 (9th Cir. 2001).

### 2. SEC's Second Claim Alleged Under Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1)-(a)(2)

SEC's Second Claim Alleged Under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8(a)(1)-(a)(2)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-11-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

To prove that Frost violated Section 206(4) of the Advisers Act and Rule 206(4)-8(a)(1)-(a)(2), the SEC must prove by a preponderance of the evidence each of the following four elements:

(1) Frost was an investment adviser to a pooled investment vehicle;

(2) Frost used the mail or other means or instrumentalities of interstate commerce in connection with his fraudulent conduct; and

(3) Frost engaged in an act, practice, or course of business that was fraudulent, deceptive, or manipulative by making an untrue statement of a material fact or by omitting to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in a pooled investment vehicle; and

(4) Frost acted at least negligently.

*See* 15 U.S.C. § 80b–6(4); 17 C.F.R. § 275.206(4)-8; *See United States SEC v. Quan*, No. 11-723 ADM/JSM, 2013 U.S. Dist. LEXIS 145146, at *52 (D. Minn. Oct. 8, 2013) (citing *SEC v. Steadman*, 967 F.2d 636, 643 n. 5 (D.C. Cir. 1992)) (holding that scienter is not a required element for a Section 206(4) claim).

### a.    Fraud[1]

Unlike the SEC's first claim, the SEC's second claim does not place at issue a fiduciary duty.  Accordingly, as reflected in the language of Rule 206(4)-8, an omission is not a sufficient basis for liability because defendants did not have a duty to disclose.  Rather, the SEC must show that the Defendants "omit[ed] to state a material fact necessary to make the statements made, in the light of the circumstances under which they were made, not misleading."  17 C.F.R.

---

[1] The primary element unique to the SEC's second claim is discussed herein.  The other elements and legal concepts including material fact and negligence are the same as discussed, *supra*, in connection with the SEC's first claim.

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

8:19-cv-01559-JLS-JDE

§ 275.206(4)-8.  Or the SEC may show that Defendants made "an untrue statement of a material fact."  17 C.F.R. § 275.206(4)-8.

### C.     Frost's Key Evidence in Opposition to the SEC's Claims

#### 1.     SEC's First Claim

The SEC's first claim alleges that Frost defrauded the Funds in three primary ways.  First, the SEC alleges that the Seed Fund improperly paid "management fees."  The Seed Fund operating agreement shows that the Seed Fund was required to bear all operating expenses incurred in connection with management of the Seed Fund.  Frost anticipates that the Funds' CFO, among other potential witnesses, including the Funds' outside auditor, Marcum LLP ("Marcum"), will confirm that no management fees were charged, but instead operating expenses were reimbursed as permitted by the Seed Fund operating agreement.  Frost also anticipates introducing documents into evidence showing that Marcum approved of the payment of the management expenses.

Second, the SEC alleges a failure to disclose the existence, amount, and nature of incubator fees, and, third, the SEC alleges that Frost failed to disclose to the Funds that Frost created some of the new portfolio companies for the principal purpose of generating additional incubator fees to cover the Incubator's overhead and Frost's personal expenses.  Frost anticipates that the evidence will defeat these allegations, and show both that there was no fraud and Frost did not engage in any fraudulent conduct with scienter or negligently.  Such evidence will include:

- Emails between the Funds' CFO and Marcum, as well as their testimony, that will show that the Funds' auditors understood the incubator cost structure, which was always designed to be based on a flat rate monthly fee, but varied and was adjusted over time

- Documents and testimony from CFO Bill Guerry that will show the Incubator was designed to "break even" if well-managed, and was a cost center, not a for-profit entity

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

- Investment Committee meeting members and documents that will show that the CFO and Investment Committee members for the Funds received information regarding the existence, amount, and nature of incubator fees as well as the high quality services being provided by the Incubator to the portfolio companies

- Investment Committee meeting minutes and written resolutions for the Funds that will show the Investment Committees were active and held regular meetings, and that the Investment Committee was not merely a "rubber stamp" committee, but rather rejected proposals and would delay funding at times pending further approvals, validation, and/or information

- Investment committee minutes and resolutions, and other documents and supporting testimony, that will show every portfolio company was approved by the Investment Committee for business reasons and resulted in the creation of a legitimate startup company

- Marcum's testimony will demonstrate that the auditors concluded the Investment Committee fulfilled its role

- Incubator executives' and employees' testimony will show the work that went into developing a proposal before it was presented to the Investment Committee and as well as the extensive services provided to the portfolio companies after approval including:

  o Strategy sessions with CEO, GM and CTOs

  o Technology and product support

  o Business development

  o Sales and Marketing (strategic messages, website development, product pricing, marketing strategy, PR resources, graphic designers and videographers)

  o Infrastructure

  o Executive mentoring, including with respect to following the "Lean methodology" for startups

  o Connections to large potential outside investors

- Portfolio company executives' testimony and documents that will show the high quality services provided by the Incubator and that the fees were not excessive

- Portfolio company executives' testimony and documents that will show the success the companies had in raising money from large, outside investors

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-14-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

8:19-cv-01559-JLS-JDE

such as GE Ventures, Connocco Phillips, Shell Technology Ventures, Intel Capital, Microsemi, Voyager Capital, Accenture, Toba Capital, and Avalon Capital, among others

- A contract and other documents and GE's testimony that will show that the Incubator entered into a memorandum of understanding with GE Ventures LLC and had plans for a strategic partnership with the Incubator creating 30 or more companies

- Emails and financial records that will demonstrate the Incubator's investments in response to the relationship with GE, and other potential developing strategic business partnerships, were extensive including by materially increasing the Incubators' employee count, which accounted for approximately 75% of incubator operating costs

- Documents, including emails with the Incubator's strategic partners such as GE and Symantec, that will show that the rapid expansion of the incubator and the creation of new portfolio companies occurred because of these valuable strategic partnerships and potential partnerships

- Financial records will demonstrate that, when the relationship with GE did not continue as expected due in large part to internal and executive changes at GE, Frost personally invested in and loaned substantial sums to the enterprise and personally covered shortfalls of incubator

In addition to the lay testimony discussed above, Frost plans to call two expert witnesses to testify:  Andrew Ackerman and Kerry Jordan.  Frost anticipates that Mr. Ackerman will provide testimony helpful to explain the Frost model vis-a-vis comparable companies, incubator services, and compensation.  In particular, Mr. Ackerman will opine on how the Frost incubator model was unique compared with other incubator/accelerator models in the industry at the time of its founding.  He will additionally provide testimony that Frost's incubator services provided at a fixed monthly fee basis afforded unique advantages compared to other models that charge for incubator services only when used.  Lastly, Mr. Ackerman will provide datapoints to show that Mr. Frost's compensation was in line with expected earnings for tech startup CEO and venture capital funds.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-15-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

8:19-cv-01559-JLS-JDE

Frost anticipates that Ms. Jordan will testify that while the incubator fees charged by the Frost entities were are on the higher end vis-à-vis other incubators, this was because the Incubator provided a higher level of involvement and service to the portfolio companies.  Frost anticipates that Ms. Jordan will also testify that the Incubator's formula was designed to alleviate many of the stressors founders face of startups by providing solutions to problems faced by startups that other incubators are not equipped and/or designed to tackle.  Ms. Jordan will additionally provide testimony of how the management fees charged by the Frost funds compare to other fund managers.

## 2.    SEC's Second Claim

The SEC's second claim alleges that the Defendants defrauded the investors in the Funds and focuses on similar allegations.  A key difference, however, is that while communications and disclosures to *investors* are not relevant to the SEC's first claim (as what is relevant is what the Funds knew) such documents are potentially relevant to the SEC's second claim.  In addition to the evidence discussed, *supra*, Frost anticipates key evidence showing he did not defraud the investors in the Funds and did not engage in fraud negligently include:

- Emails with Hollencrest, the investment adviser for a significant percentage of investors in the Funds, will show that Hollencrest actively provided comments on and was involved in the creation of marketing materials for the Seed Fund

- Emails with investors and potential investors in the Seed Fund as well as other marketing documents will show that the investors were informed about the Incubator fees

- Incubator executive and employees' testimony will show that Incubator fees were disclosed to potential investors and investors, including orally

- The partnership agreements and subscriptions agreements for Funds II and Fund III will show disclosure of the Incubator fees

- Emails and subscription agreements that will demonstrate that Fund investors were sophisticated, super-accredited individuals

STRADLING YOCCA CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-16-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

8:19-cv-01559-JLS-JDE

- Marcum's testimony will show the Funds' auditors affirmatively concluded that the amount of incubator fees need not be disclosed to investors

- Testimony from portfolio company executives, as well as the continued payment of incubator fees by the portfolio companies, will show that the incubator fees were not excessive

- Emails and financial records demonstrate that investors (both internal and external) invested after learning about the incubator fees

In addition to the expert testimony discussed, *supra*, that is also relevant to the SEC's claim, Frost anticipates that Ms. Jordan will provide testimony about the competing duties and disclosure obligations of the Funds and whether these disclosures were full and fair to investors and the funds in light of the duty Frost had to uphold client confidentiality to the startups' books and records and the different duties owed amongst the various entities.

## III.    FROST'S AFFIRMATIVE DEFENSES

### A.    Summary of Frost's Affirmative Defenses

The only affirmative defense Frost is pursuing is the statute of limitations with respect to the SEC seeking disgorgement of alleged management fees paid to FMC by the Seed Fund, International Seed Fund, and Fund II.

### B.    Elements of Frost's Affirmative Defenses

To recover disgorgement under Investment Advisers Act Sections 206(2), 206(4), and Rule 206(4)-8, the SEC must bring claims within five years of their accrual. 15 U.S.C. § 78u(d)(8)(A); 15 U.S.C. § 80b-6(2); 15 U.S.C. § 80b-6(4). Accordingly, to succeed on the statute of limitations defense, Defendants must prove that the harm alleged occurred before the five year limitations period, excluding any applicable tolling period agreed to by the parties, for filing a lawsuit for these claims. *See id.*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-17-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

## C.    Key Evidence Supporting Frost's Affirmative Defenses

Defendants entered into a tolling agreement with the SEC for the period beginning January 1, 2019 and ending August 21, 2019 and the SEC filed its complaint on August 21, 2019.  Thus, to be within the five year limitations period, the conduct complained of need to have occurred on or after January 1, 2014.

Testimony from Stuart Frost and William Guerry, as well as internal records reflecting the dates of the payments to FMC, among other evidence, will show that: (i) disgorgement as to the expenses paid by the Seed Fund and International Seed Fund is barred by the five year statute of limitations as these claims accrued, i.e. all the expenses had been paid from the Seed Fund and International to FMC, on or before September 2013; and  (ii) disgorgement as to the management fees paid by Fund II to FMC collected from Fund II before January 1, 2014 are barred by the five year statute of limitations.

## IV.    ANTICIPATED EVIDENTIARY DISPUTES

### A.    Defendants' Pending Motions *in Limine*

Defendants filed four pending motions *in limine*.

Defendants' first motion in limine seeks to exclude evidence or argument regarding a prior, adverse, arbitration award under Federal Rule of Evidence section 403.  (*See* Dkt. 93, 96.)  The SEC unsuccessfully brought a motion for summary judgment seeking to rely on offensive non-mutual collateral estoppel in relation to the arbitration award.  Still the SEC has offered the testimony of Keith Palzer, Esq., who impermissibly adopts the private arbitrator's legal opinions as his own, as his expert testimony.  The SEC in opposition states that it will not seek to introduce into evidence the arbitration award and will prepare its witnesses, including its expert witnesses, not to refer to that award.  (*See* Dkt. 114 at 21-22.) Yet, the SEC states that, rather than granting Defendants' motion *in limine*, a curative instruction would be appropriate. (*See id*.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-18-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

Defendants' second motion *in limine* seeks to preclude the SEC from (i) arguing, referring to, or introducing any evidence relating to any purported fiduciary duty owed by Frost to investors in the funds; and (ii) requiring a limiting instruction under Rule 105 directing the jury to consider the SEC's evidence in support of Frost having defrauded investors in the funds only for the purposes of the SEC's second claim alleged under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8. (*See* Dkt. 103, 107.) Frost's motion is made on the grounds that, under applicable law, there is no fiduciary duty between Frost and the individual investors in the funds, as Frost owed such duty only to the Funds and thus, any fiduciary duty owed from Frost to investors is not at issue with respect to either of the SEC's claims. Frost contends that such evidence and argument regarding a fiduciary duty owed to investors in the funds is irrelevant, confusing, and potentially prejudicial and therefore excludable under Rules 401 and 403.

Defendants' third motion *in limine* seeks to preclude evidence of specific personal expenses paid by corresponding reductions to Frost's compensation as such evidence is of minimal probative value and prejudicially appeals to class prejudices. (*See* Dkt. 104, 108.) Here, the SEC is seeking to double dip in its efforts to paint Frost as a wrongdoer by highlighting the character of Frost's personal expenses that were paid for by certain entities with a corresponding reduction in Frost's salary and then highlighting that his overall compensation, not excluding the reductions in salary for these personal expenses, was excessive. Frost contends that what Frost chose to spend his agreed-upon salary on, whether he paid it through a reimbursed company expense or personally, is of no bearing on the SEC's case. The SEC does not dispute that certain personal expenses were reimbursed by reductions to Frost's salary. (*See* Dkt. 115 at 7-10.)

Defendants' fourth motion *in limine* seeks to preclude evidence and argument regarding Frost's personal tax compliance as such argument, evidence,

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-19-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

or inference of other wrongdoing with regards to Frost's taxes is irrelevant to the claims the SEC has brought under the Advisers Act and only seeks to label Frost as a tax cheat when this is not at issue in this litigation. (*See* Dkt. 105, 109.) The SEC contends that it is entitled to explain the financial incentive and tax benefits Frost's charging personal expenses to his business provided and that this arrangement is relative to his motive to defraud. (*See* Dkt. 115 at 11-13.)

## B. SEC's Pending Motions *in Limine*

The SEC filed two pending motions *in limine*.

The SEC is seeking to exclude from evidence a draft, unsigned operating agreement for the Seed Fund that was not shown to investors as it would lead to jury confusion. (*See* Dkt. 63.) Frost contends that the SEC's motion is without merit as Frost has no intention of arguing or implying that any draft of the Seed Fund Operating Agreement was the operative agreement provided to investors and instead, the SEC is seeking to exclude relevant evidence of the drafting history of a document. (*See* Dkt. 113.) Frost's position is that the operating agreement's drafting history, including the draft operating agreement the SEC seeks to exclude, is plainly relevant to show the absence of any recklessness or negligence on the part of Defendants in preparing those documents.

The SEC is also seeking to exclude evidence that Frost relied on the advice of counsel or that counsel was present in drafting certain disclosure documents at issue in this case. (*See* Dkt. 62.) Frost responds that the SEC's motion is essentially asking the Court to exclude an affirmative defense that is not being asserted in this case, reliance on advice of counsel, in an attempt to convince the Court into also excluding related, probative evidence of Frost's good faith effort to provide adequate disclosures to the investors through consultation with counsel although such evidence is directly relevant to whether Defendants acted recklessly or with the intent to defraud. (*See* Dkt. 117.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-20-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

## C.  Witnesses

Defendants object to the presentation of testimony by the SEC's witnesses to the extent the SEC's witnesses would be presenting cumulative testimony as to two topics.  *See* Fed. R. Evid. 403 ("The court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following . . . needlessly presenting cumulative evidence.").  First, the SEC identifies 19 individuals as testifying as investors in the Fund(s) including Michael Colaco, Robert Wolford, Gregory Pellizzon, Michael Schulman, Cameron Akers, Louis Lauch, Charles Reynolds, James Cavaricci, Larry Sheakley, James Greene, Michael Kramer, Purav Asher, Christopher Buckstein, Gordon Clemons, William Davidson, Scott Kavanaugh, John Kensey, Darrell Krasnof, and Alan Weiner.  Second, the SEC identifies several different former or current CEOs of portfolio companies all as testifying with respect to the incubator fees including John Burke, Paul Meyer, Mark Lelinksi, Dean Sawyer, Doug Lawson, Brian Murphy, and Mark McNally.

Defendants also note that the SEC's witness list includes at least the following witnesses that do not appear to have been previously disclosed by the parties:  Tina Catalina, James Cavaricci, John Kinsey, Christopher Buckstein, Gordon Clemons, William Davidson, Scott Kavanaugh, John Kensey, Darrell Krasnoff, Alan Weiner, Erik Sisiel, Douglas Flemming, and Kyle Mallot.

## V.  ISSUES OF LAW

### A.  The SEC Must Prove Defendants Defrauded the Funds to Prevail on its First Claim

The only alleged fiduciary duty at issue in this case is that owed by Frost to the Funds.  Section 206(1) provides that "[i]t shall be unlawful for any investment adviser . . . (1) to employ any device, scheme, or artifice to defraud any <u>client</u> or prospective <u>client</u>[.]" 15 U.S.C. § 80b–6 (emphasis added).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-21-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

Courts have interpreted the Advisers Act as providing that an investment adviser owes a fiduciary duty to her clients. *See Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92, 201 (1963).  In the context of private funds, such as the venture capital funds at issue here, courts have further held that the "client" for purposes of Sections 206(1) and 206(2) are the funds, not the investors in the funds:

> An investor in a private fund may benefit from the adviser's advice (or he may suffer from it) but he does not receive the advice directly. He invests a portion of his assets in the fund. The fund manager -- the adviser -- controls the disposition of the pool of capital in the fund. The adviser does not tell the investor how to spend his money; the investor made that decision when he invested in the fund. Having bought into the fund, the investor fades into the background; his role is completely passive.

*Goldstein v. SEC*, 451 F.3d 873, 879-80 (D.C. Cir. 2006) (emphasis in original).

Thus, "[t]he adviser owes fiduciary duties only to the fund, not to the fund's investors." *Goldstein*, 451 F.3d at 881; *see also SEC v. Trabulse*, 526 F. Supp. 2d 1008, 1016 (N.D. Cal. 2007) ("With respect to the Investment Advisers Act, the SEC must show a breach of fiduciary duty to the fund itself.") (citing *Goldstein*, 451 F.3d at 881); *SEC v. Northshore Asset Mgmt.*, 2008 U.S. Dist. LEXIS 36160, at*19 (S.D.N.Y. May 5, 2008) ("Because under the Advisers Act, Saldutti's clients were the Ardent Entities, a failure to disclose information or misrepresentations to the Ardent Entities investors cannot form the basis for a claim that Saldutti breached his fiduciary duties to the Ardent Entities.") (citing *Goldstein*, 451 F.3d at 881). This is a necessary distinction, because "[i]f the investors are owed a fiduciary duty and the entity is also owed a fiduciary duty, then the adviser will inevitably face conflicts of interest" and "[i]t simply cannot be the case that

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-22-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

investment advisers are the servants of two masters in this way." *Goldstein*, 451 F.3d at 881.

The SEC has previously conceded that Sections 206(1) and 206(2) require the fraud to be on the funds. *See SEC v. Conrad*, No. 1:16-CV-02572-LMM, 2017 U.S. Dist. LEXIS 160423, at *4 (N.D. Ga. May 2, 2017) ("[SEC] does not dispute that Section 206(1) and Section 206(2) requires that the fraud be upon the hedge funds as Defendants' clients. . . .").

As a result, for the SEC to prevail on its first claim alleged under Advisers Act Sections 206(1) and 206(2), the SEC must prove that the Defendants defrauded the Funds (as opposed to the investors in the Funds). This is consistent with the SEC's complaint which alleges in the first claim that Frost violated Sections 206(1) and 206(2) of the Advisers Act because Frost "made material misstatements and omissions, and breached [his] fiduciary duties to the Funds. . . ." (Dkt. 1 at ¶ 122.) Accordingly, with respect to any alleged omissions, Defendants can prevail by showing that the Funds in fact had been informed of any allegedly material omissions.

## B.   There is No Fiduciary Duty at Issue With Respect to the SEC's Second Claim

The SEC acknowledges that neither Section 206(4) of the Advisers Act nor Rule 206(4)-8 itself create a fiduciary duty to investors. (*See* Doc. 114 at 15.) Yet, the SEC has taken the position that Frost owed a common law fiduciary duty arising under Delaware law that somehow creates a duty to disclose for purposes of Rule 206(4)-8 that could support fraud by omission. To be clear, the parties agree that the SEC can prove its claim with an omission of a material fact necessary to make statements by Defendants not misleading. But the SEC seeks to expand Rule 206(4)-8 to create a generalized duty to disclose any and all material facts to

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-23-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

investors, even if that fact is not necessary to make an affirmative statement not misleading.  This is incorrect for several reasons.

First, the court in *Goldstein* explained that for an investment adviser to private funds, the clients of the investment adviser must be the funds themselves and not the investors in the funds because to hold otherwise would create conflicting fiduciary duties for the investment adviser.  *See Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006).  The SEC's attempt to bring fiduciary duties owed to investors back into this statutory framework through the common law would create the very conflicting duties that the statutory framework, including Rule 206(4)-8, was designed to avoid and that were warned against in *Goldstein*.

If this Court were to layer common law fiduciary duties into the statutory framework, then the Court would need to decide complicated state law issues and this federal statute would vary from state to state.  Indeed, it is not clear if Frost or FMC even had a fiduciary duty of disclosure to investors under Delaware common law.  Neither Frost nor FMC was the member-manager for the two funds structured as limited liability companies (the Seed Fund and International Seed Fund) or the general partner of any of the three funds structured as limited partnerships (International Feeder Fund, Fund II, and Fund III).  Accordingly, Frost did not directly owe a fiduciary duty to the investors and at best owed a more limited, derivative fiduciary duty that did not include a duty to disclose.  *See Bay Ctr. Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 Del. Ch. LEXIS 54, at *32-39 (Ch. Apr. 20, 2009) (explaining that the fiduciary duty owed under such circumstances is limited to "the duty not to use control over the partnership's property to advantage the [affiliate] at the expense of the partnership") (quoting *In re USACafes, L.P. Litigation*, 600 A.2d 43, 49 (Del. Ch. 1991).  *Goldstein* does not require, and in fact does not permit, the Court to even undertake this state law analysis.

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

Second, even assuming *arguendo* that a common law fiduciary duty to investors could be imported into the statutory framework despite *Goldstein* (which it cannot), the Fund agreements contain exculpation provisions as to the fiduciary duties that would be owed by the manager or general partner.  For example, the Fund II agreement limits fiduciary duties to the extent the fiduciary duties are different than the obligations imposed by the agreement.  (*See* Doc. 106 at Ex. 5 at § 15.3 ("Notwithstanding anything to the contrary in this Agreement, to the extent that at law or in equity, an Indemnified Party has duties (including fiduciary duties) and liabilities relating thereto to the Partnership, any Partner or any other person, such Indemnified Party acting under this Agreement shall not be liable to the Partnership, any Partner or any other person for breach of fiduciary duty for its good faith reliance on the provisions of this Agreement, and the provisions of this Agreement, to the extent that they restrict or limit the duties (including fiduciary duties) and liabilities relating thereto of an Indemnified Party otherwise existing at law or in equity, are agreed by each Partner and the Partnership to so modify such other duties and liabilities of such Indemnified Party.")  The obligations imposed by the agreement with respect to disclosures are specifically identified and include quarterly reports, annual reports, and financial statements of the partnership.  (See, e.g. Doc. 106 at Ex. 5 at §§ 11.3-11.4 ("The General Partner shall transmit to the Limited Partners within sixty (60) days after the close of each of the first three quarters of each fiscal year, a summary of acquisitions and dispositions of investments made by the Partnership during such quarter together with a valuation of the investments then held. . . . the General Partner shall use reasonably commercial efforts to transmit to the Limited Partners within one hundred twenty (120) days after the close of the Partnership's fiscal year audited financial statements of the Partnership . . . The financial statements shall be accompanied by a report from the General Partner to the Limited Partners, which shall include a

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-25-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

status report on investments then held, a summary of acquisitions and dispositions of investments made by the Partnership during the preceding quarter and a valuation of each such investment.") Accordingly, to the extent a fiduciary duty is owed, the Fund agreements do not permit that fiduciary duty to extend to the general duty to disclose requested by the SEC. *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

Finally, the SEC's Complaint does not allege a fiduciary duty owed to the investors in the Funds under Delaware law, or any other law. Instead, the SEC only alleges that Frost owed a fiduciary duty to the Funds; nowhere does the SEC allege that Frost owed a fiduciary duty to the investors in the Funds. (*See* Compl. ¶ 122 (alleging "Frost and FMC made material misstatements and omissions, and breached their fiduciary duties to the Funds").) The SEC is bound by its Complaint at this late stage in the litigation. *See, e.g., Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988). It should not be allowed to amend its allegations, on the fly, to conform to some new, unfounded legal theory that is not pleaded in its Complaint.

### C. Defendants' Reliance on Auditors Severely Undermines Any Potential Finding of Scienter

Courts have held that a defendant's reliance on disclosures consistent with an auditor's opinions severely undermines the possibility of finding the defendant acted with scienter. For example, in *In re Hansen Nat. Corp. Sec. Litig.* the court explained that it "finds Deloitte & Touche LLP's unqualified opinion 'highly probative' of an absence of scienter." *In re Hansen Nat. Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007); *see also Mathews v. Centex Telemanagement*, No. C-92-1837-CAL, 1994 U.S. Dist. LEXIS 7895, at *21 (N.D. Cal. June 8, 1994) (finding that plaintiffs failed to show scienter and explaining that "Defendants also conferred with and relied in good faith on their outside

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-26-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

auditor"). Additionally, in *Ortiz v. Canopy Growth Corp.*, the court held that "[w]hile a clean audit does not rule out the possibility of finding scienter, it is difficult to conclude that plaintiffs behaved recklessly in omitting to inform investors facts when trained financial professionals investigating the company did not conclude that such a disclosure was necessary." *Ortiz v. Canopy Growth Corp.*, No. 2:19-cv-20543-KM-ESK, 2021 U.S. Dist. LEXIS 88372, at \*133 (D.N.J. May 6, 2021) (internal citation omitted).

### D.     Disgorgement

The SEC seeks disgorgement from Frost. The complaint contends that Frost received $378,000 and $24,875 from the Seed Fund and the International Seed Fund, respectively, for undisclosed management fees. The complaint further alleges that Frost received more than $1,700,000 in management fees that should have been offset by incubator fees purportedly charged in excess of reasonable market rates, for a total of $2,102,875 in alleged wrongful payments. (*See* Dkt. 1 at ¶¶ 104-107.)  However, even if the SEC succeeds in proving Frost should not have received these fees (a fact Frost strongly disputes), established law would prevent any disgorgement of these funds.

The Supreme Court recently confirmed that courts may not enter an award of disgorgement that exceeds the net profit from the wrongdoing or "the gain made upon any business or investment." *Liu v. SEC,* 140 St. Ct. 1936, at 1945 (2020) (citations omitted).  To this end, the Supreme Court held that "courts must deduct legitimate expenses before ordering disgorgement . . . ." *Id.* at 1950.  Here, it is undisputed that Frost did not profit from any alleged wrongdoing but instead poured millions of dollars from his personal fortune to support the enterprise. The evidence will show that Frost contributed more than $4,760,000 in outstanding loans and investments that could not be recouped when the incubator closed.  The evidence will also show that Frost personally funded over $2,100,000 toward a

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-27-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

settlement with investors. In total, Frost's losses exceed $6,860,000 while the SEC alleges he received $2,102,875 in wrongful payments (amounting to a delta of more than $4,750,000). Therefore, even accepting the SEC's contentions as true, Frost has made loans, invested in the funds or otherwise returned capital to investors in amounts that far exceed any alleged "ill-gotten gains." Frost's $6,860,000 in contributions to the business must be deducted in any disgorgement calculation. Accordingly, under these facts, disgorgement should not be ordered as a matter of law.

## VI. OTHER ISSUES

### A. Bifurcation of Issues

The parties have requested in the final pretrial order that the jury shall determine all findings relevant to determining liability; the Court shall determine all findings specific to determining remedies and shall determine all remedies (if either of the Defendants is found liable). *See, e.g., SEC v. Gowrish*, No. C 09-05883 SI, 2011 U.S. Dist. LEXIS 76114, at *7 (N.D. Cal. July 14, 2011) (court determined all remedies following finding of liability during jury trial). Any evidence that is only relevant to remedies, and not relevant to liability, should only be heard by the Court and not by the jury.

### B. Demand for Jury Trial

Defendants demanded a jury trial in their answer (*see* Dkt. 16 at 17), but sought the SEC's waiver when coordinating the joint pretrial filings. The SEC refused to waive a jury trial. The parties have requested in the final pretrial order, and as stated, *supra*, that the jury determine liability as to both of the SEC's claims and the Court determine all remedies.

### C. Attorneys' Fees

Defendants are not seeking attorneys' fees in this action.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

-28-

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW
8:19-cv-01559-JLS-JDE

**D.    Abandonment of Issues**

Defendants are not pursuing any affirmative defenses as plead in the Answer (*see* Dkt. 16) other than the statute of limitations as discussed, *supra*.

DATED: November 19, 2021            STRADLING YOCCA CARLSON & RAUTH A PROFESSIONAL CORPORATION


By:    */s/ Marc J. Schneider*
      Marc J. Schneider
      Jason de Bretteville
      Kathleen M. Marcus
      Sean T. Lobb
      Lisa M. Northrup

*Attorneys for Defendant*
*STUART FROST*


CALLARI AND SUMMERS


By:    */s/ Andrew C. Callari*
      Andrew C. Callari

*Attorneys for Defendant FROST MANAGEMENT COMPANY, LLC*

FROST'S MEMORANDUM OF CONTENTIONS OF FACT AND LAW

**ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)**

**CERTIFICATION**

Under L.R. 5-4.3.4(a)(2)(i), I, Marc J. Schneider, attest that all signatories identified above, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.


By: */s/ Marc J. Schneider*

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

-30-
SIGNATURE ATTESTATION
8:19-cv-01559-JLS-JDE