DONALD W. SEARLES (Cal. Bar No. 135705)
Email:  searlesd@sec.gov
DOUGLAS M. MILLER (Cal. Bar No. 240398)
Email: millerdou@sec.gov
CHARLES E. CANTER (Cal. Bar No. 263197)
Email: canterc@sec.gov

Attorneys for Plaintiff
Securities and Exchange Commission
Michele Wein Layne, Regional Director
Alka N. Patel, Associate Regional Counsel
Amy J. Longo, Regional Trial Counsel
444 S. Flower Street, Suite 900
Los Angeles, California 90071
Telephone: (323) 965-3998
Facsimile: (213) 443-1904

MARC J. SCHNEIDER, State Bar No. 214609
  mschneider@stradlinglaw.com
JASON DE BRETTEVILLE, State Bar No. 195069
  jdebretteville@stradlinglaw.com
KATHLEEN M. MARCUS, State Bar No. 199857
  kmarcus@stradlinglaw.com
LISA M. NORTHRUP, State Bar No. 293784
  lnorthrup@stradlinglaw.com
SEAN T. LOBB, State Bar No. 324213
  stlobb@stradlinglaw.com

STRADLING YOCCA CARLSON & RAUTH
A PROFESSIONAL CORPORATION
660 Newport Center Drive, Suite 1600
Newport Beach, CA 92660-6422
Telephone:  (949) 725-4000
Facsimile:  (949) 725-4100

Attorneys for Defendant
STUART FROST

ANDREW C. CALLARI, State Bar No. 159003
  ac@callarisummers.com
CALLARI & SUMMERS
34197 Pacific Coast Highway, Suite 100
Dana Point, CA 92629
Telephone: (714) 371-4110
Facsimile: (714) 882-7915

Attorney for Defendant
FROST MANAGEMENT COMPANY, LLC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1
2
3
4
5
6
7
8
9
10

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

**SOUTHERN DIVISION**

| | |
|---|---|
| SECURITIES AND EXCHANGE COMMISSION,<br><br>            Plaintiff,<br><br>        vs.<br><br>STUART FROST and FROST MANAGEMENT COMPANY, LLC,<br><br>          Defendants. | CASE NO. 8:19-cv-01559-JLS-JDE<br>Assigned to Hon. Josephine L. Staton<br><br>**JOINT PROPOSED JURY INSTRUCTIONS**<br><br>Complaint Filed August 13, 2019 |

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

# TABLE OF CONTENTS

## JOINT PROPOSED JURY INSTRUCTIONS - OPENING JURY INSTRUCTIONS

NO. 1 - DUTY OF THE JURY ................................................................- 1 -

NO. 2 - PARTIES TO THE CASE ........................................................- 2 -

NO. 3 - CLAIMS AND DEFENSES ......................................................- 3 -

NO. 4 - BURDEN OF PROOF—PREPONDERANCE OF THE
      EVIDENCE................................................................................- 5 -

NO. 5 - WHAT IS EVIDENCE .............................................................- 6 -

NO. 6 - WHAT IS NOT EVIDENCE ....................................................- 7 -

NO. 7 - EVIDENCE FOR LIMITED PURPOSE...................................- 8 -

NO. 8 - DIRECT AND CIRCUMSTANTIAL EVIDENCE ...................- 9 -

NO 9 - RULING ON OBJECTIONS.....................................................- 10 -

NO. 10 - CREDIBILITY OF WITNESSES .........................................- 11 -

NO. 11 - CONDUCT OF THE JURY ..................................................- 13 -

NO. 12 - NO TRANSCRIPT AVAILABLE TO JURY ........................- 16 -

NO. 13 - TAKING NOTES...................................................................- 17 -

NO. 14 - BENCH CONFERENCES AND RECESSES........................- 18 -

NO. 15 - OUTLINE OF TRIAL............................................................- 19 -

## INSTRUCTIONS TO BE GIVEN DURING TRIAL

NO. 16 - CAUTIONARY INSTRUCTION AT END OF DAY ...........- 20 -

## CLOSING JURY INSTRUCTIONS

NO. 17 - DUTY OF JURY....................................................................- 21 -

NO. 18 - BURDEN OF PROOF—PREPONDERANCE OF THE
      EVIDENCE................................................................................- 22 -

NO. 19 - TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS- 23 -

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

NO. 20 - WHAT IS EVIDENCE ............................................................- 24 -

NO. 21 - WHAT IS NOT EVIDENCE....................................................- 25 -

NO. 22 - DIRECT AND CIRCUMSTANTIAL EVIDENCE ...............- 26 -

NO. 23 - CREDIBILITY OF WITNESSES .........................................- 27 -

NO. 24 - EXPERT OPINION ...............................................................- 29 -

NO. 25 - CHARTS AND SUMMARIES NOT RECEIVED IN
         EVIDENCE...............................................................................- 30 -

NO. 26 - CHARTS AND SUMMARIES RECEIVED IN EVIDENCE- 31 -

NO. 27 – STIPULATIONS OF FACT ...................................................- 32 -

NO. 28 - ELEMENTS OF THE SEC'S CLAIM UNDER SECTION
         206(1).......................................................................................- 38 -

NO. 29 - ELEMENTS OF THE SEC'S CLAIM UNDER SECTION
         206(2)......................................................................................- 39 -

NO. 30 - ELEMENTS OF THE SEC'S CLAIM UNDER 206(4) AND
         RULE 206(4)-8 .......................................................................- 40 -

NO. 31 MATERIALITY .......................................................................- 41 -

NO. 32 - KNOWING OR RECKLESS CONDUCT ............................- 42 -

NO. 33 - NEGLIGENCE .....................................................................- 43 -

NO. 34 – LIABILITY OF LIMITED LIABILITY COMPANIES........- 44 -

NO. 35 - DUTY TO DELIBERATE......................................................- 45 -

NO. 36 - RELIEF ................................................................................- 46 -

NO. 37 - CONSIDERATION OF EVIDENCE—CONDUCT OF THE
         JURY.......................................................................................- 47 -

NO. 38 - COMMUNICATION WITH COURT....................................- 49 -

NO. 39 - RETURN OF VERDICT .......................................................- 50 -

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

**SEC'S PROPOSED CLOSING JURY INSTRUCTIONS OPPOSED**

**BY DEFENDANTS**

SEC Proposed Instruction No. 40

    Misrepresentation and Omission ...................................- 51 -

SEC Proposed Instruction No. 41

    Fiduciary Duty Under the Advisers Act.......................- 56 -

SEC Proposed Instruction No. 42

    Fiduciary Duty Under Delaware Law .........................- 62 -

SEC Proposed Instruction No. 43

    Imputation of Knowledge............................................- 67 -

**DEFENDANTS' PROPOSED  CLOSING JURY INSTRUCTIONS**

**OPPOSED BY THE SEC**

NO. 44 - IMPUTED KNOWLEDGE OF TRUE FACTS .....................- 69 -

NO. 45 - PRESENCE OF COUNSEL AND PROFESSIONAL

    AUDITORS ...........................................................- 72 -

NO. 46 - OPINION STATEMENTS ....................................- 75 -

NO. 47 - PUFFERY ......................................................- 78 -

NO. 48 - FIDUCIARY DUTY ............................................- 81 -

NO. 49 - CONDUCT NOT ACTIONABLE...........................- 83 -

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

iii
TABLE OF CONTENTS

8:19-cv-01559-JLS-JDE

# JOINT PROPOSED JURY INSTRUCTIONS
## OPENING JURY INSTRUCTIONS
### NO. 1 - DUTY OF THE JURY

Members of the jury: You are now the jury in this case. It is my duty to instruct you on the law.

It is your duty to find the facts from all the evidence in the case. To those facts you will apply the law as I give it to you. You must follow the law as I give it to you whether you agree with it or not. And you must not be influenced by any personal likes or dislikes, opinions, prejudices or sympathy. That means that you must decide the case solely on the evidence before you. You will recall that you took an oath to do so.

At the end of the trial I will give you final instructions. It is the final instructions that will govern your duties.

Please do not read into these instructions, or anything I may say or do, that I have an opinion regarding the evidence or what your verdict should be.

**Source**: Instruction 1.3, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 1 -

# NO. 2 - PARTIES TO THE CASE

The plaintiff in this case is the Securities and Exchange Commission, which I will refer to as the SEC. The SEC is an independent agency of the federal government charged with regulating the securities industry.

In this action, the defendants are an entity called Frost Management Company, LLC, which will also be referred to as "FMC" and an individual named Stuart Frost.  You should decide the case as to each of the defendants, FMC and Mr. Frost, separately.

**Source**: Adapted from Instruction 1.8, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf (as to separate defendants)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 2 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

## NO. 3 - CLAIMS AND DEFENSES

To help you follow the evidence, I will give you a brief overview of the case:

This is a civil action, brought by the United States Securities and Exchange Commission, sometimes referred to as the "SEC."  The SEC is the agency of the federal government that is responsible for enforcing the securities laws of the United States.

The SEC has filed a civil complaint against Stuart Frost and his company, Frost Management Company, LLC, also known as FMC, an investment advisory firm in California. The SEC has asserted claims against Mr. Frost and FMC for violating a federal securities law called the Investment Advisers Act of 1940. The SEC alleges that Mr. Frost and FMC served as investment advisers to five private venture capital funds from 2012 through 2016. You may hear these funds referred to as the Seed Fund, the International Seed Fund, Fund II, the International Feeder Fund, and Fund III, or, collectively, as the "Funds." The Funds invested in start-up companies, which may be referred to as "portfolio companies." Mr. Frost owned another company called Frost Data Capital, which created the portfolio companies and provided certain services to them. You may hear Frost Data Capital referred to as "FDC" or the "Incubator."

The SEC alleges two causes of action against Mr. Frost and FMC. The SEC's first claim alleges that Mr. Frost and FMC violated Sections 206(1) and 206(2) of the Advisers Act by defrauding the Funds. The SEC's second claim alleges that Mr. Frost and FMC violated Section 206(4) of the Advisers Act and SEC Rule 206(4)-8 by defrauding the investors in the Funds. According to the SEC, the defendants deceived the Funds (with respect to Sections 206(1) and 206(2) of the Advisers Act), and the investors in the Funds (with respect to Section 206(4) of the Advisers Act and SEC Rule 206(4)-8)), by, among other things,

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  making misleading statements and by failing to disclose information regarding the

2  existence and/or amount of (i) fees the Incubator charged portfolio companies and

3  (ii) management fees charged to some of the Funds by defendants, and by forming

4  new portfolio companies to generate additional revenue for the Incubator. The SEC

5  has the burden of proving its claims by a preponderance of the evidence. FMC and

6  Mr. Frost have denied the SEC's allegations and contend that the SEC will not be

7  able to meets its burden to prove that either FMC or Mr. Frost defrauded either the

8  Funds or the investors in the Funds as alleged.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 4 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**NO. 4 - BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source**: Instruction 1.6, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 5 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**NO. 5 - WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

(1)     the sworn testimony of any witness;

(2)     the exhibits that are admitted into evidence;

(3)     any facts to which the parties have agreed; and

(4)     any facts that I may instruct you to accept as proved.

**Source**: Adapted from Instruction 1.9, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 6 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

## NO. 6 - WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**Source**: Instruction 1.10, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 7 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 7 - EVIDENCE FOR LIMITED PURPOSE**

Some evidence may be admitted only for a limited purpose.

When I instruct you that an item of evidence has been admitted only for a limited purpose, you must consider it only for that limited purpose and not for any other purpose.

**Source**: Instruction 1.11, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

## NO. 8 - DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

**Source**: Instruction 1.12 and comment thereto, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 9 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**NO 9 - RULING ON OBJECTIONS**

There are rules of evidence that control what can be received into evidence. When a lawyer asks a question or offers an exhibit into evidence and a lawyer on the other side thinks that it is not permitted by the rules of evidence, that lawyer may object. If I overrule the objection, the question may be answered or the exhibit received. If I sustain the objection, the question cannot be answered, and the exhibit cannot be received. Whenever I sustain an objection to a question, you must ignore the question and must not guess what the answer might have been.

Sometimes I may order that evidence be stricken from the record and that you disregard or ignore that evidence. That means when you are deciding the case, you must not consider the stricken evidence for any purpose.

**Source**: Instruction 1.13 and comment thereto, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 10 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

# NO. 10 - CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)     the opportunity and ability of the witness to see or hear or know the things testified to;

(2)     the witness's memory;

(3)     the witness's manner while testifying;

(4)     the witness's interest in the outcome of the case, if any;

(5)     the witness's bias or prejudice, if any;

(6)     whether other evidence contradicted the witness's testimony;

(7)     the reasonableness of the witness's testimony in light of all the evidence; and

(8)     any other factors that bear on believability.


Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 11 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

2

3

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

**Source**: Instruction 1.14, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 12 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

# NO. 11 - CONDUCT OF THE JURY

I will now say a few words about your conduct as jurors.

First, keep an open mind throughout the trial, and do not decide what the verdict should be until you and your fellow jurors have completed your deliberations at the end of the case.

Second, because you must decide this case based only on the evidence received in the case and on my instructions as to the law that applies, you must not be exposed to any other information about the case or to the issues it involves during the course of your jury duty. Thus, until the end of the case or unless I tell you otherwise:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, or computer, or any other electronic means, via email, text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, Tiktok, or any other forms of social media. This applies to communicating with your fellow jurors until I give you the case for deliberation, and it applies to communicating with everyone else including your family members, your employer, the media or press, and the people involved in the trial, although you may notify your family and your employer that you have been seated as a juror in the case, and how long you expect the trial to last. But, if you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and report the contact to the court.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 13 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14

Because you will receive all the evidence and legal instruction you properly may consider to return a verdict: do not read, watch or listen to any news or media accounts or commentary about the case or anything to do with it, although I have no information that there will be news reports about this case; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use the Internet or any other resource to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or hear anything touching on this case in the media, turn away and report it to me as soon as possible.

15
16
17
18
19
20
21
22
23
24

These rules protect each party's right to have this case decided only on evidence that has been presented here in court. Witnesses here in court take an oath to tell the truth, and the accuracy of their testimony is tested through the trial process. If you do any research or investigation outside the courtroom, or gain any information through improper communications, then your verdict may be influenced by inaccurate, incomplete or misleading information that has not been tested by the trial process. Each of the parties is entitled to a fair trial by an impartial jury, and if you decide the case based on information not presented in court, you will have denied the parties a fair trial. Remember, you have taken an oath to follow the rules, and it is very important that you follow these rules.

25
26
27

A juror who violates these restrictions jeopardizes the fairness of these proceedings.  If any juror is exposed to any outside information, please notify the court immediately.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 14 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23   **Source**: Instruction 1.15, Model Civil Jury Instructions For the District Courts of

24   the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-

25   instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 15 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1    **NO. 12 - NO TRANSCRIPT AVAILABLE TO JURY**

2    I urge you to pay close attention to the trial testimony as it is given.  During

3    deliberations you will not have a transcript of the trial testimony.

23   **Source**: Instruction 1.17, Model Civil Jury Instructions For the District Courts of

24   the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-

25   instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 16 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 13 - TAKING NOTES**

If you wish, you may take notes to help you remember the evidence.  If you do take notes, please keep them to yourself until you go to the jury room to decide the case.  Do not let notetaking distract you.  When you leave, your notes should be left in the jury room.  No one will read your notes.

Whether or not you take notes, you should rely on your own memory of the evidence.  Notes are only to assist your memory.  You should not be overly influenced by your notes or those of other jurors.

**Source**: Instruction 1.18, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8:19-cv-01559-JLS-JDE

## NO. 14 - BENCH CONFERENCES AND RECESSES

From time to time during the trial, it may become necessary for me to talk with the attorneys out of the hearing of the jury, either by having a conference at the bench when the jury is present in the courtroom, or by calling a recess. Please understand that while you are waiting, we are working. The purpose of these conferences is not to keep relevant information from you, but to decide how certain evidence is to be treated under the rules of evidence and to avoid confusion and error.

Of course, we will do what we can to keep the number and length of these conferences to a minimum. I may not always grant an attorney's request for a conference. Do not consider my granting or denying a request for a conference as any indication of my opinion of the case or of what your verdict should be.

**Source**: Instruction 1.20, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 18 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

**NO. 15 - OUTLINE OF TRIAL**

2  Trials proceed in the following way:  First, each side may make an opening

3  statement.  An opening statement is not evidence.  It is simply an outline to help

4  you understand what that party expects the evidence will show.  A party is not

5  required to make an opening statement.

6  Plaintiffs will then present evidence, and counsel for Defendants may cross-

7  examine.  Then the Defendants may present evidence, and counsel for Plaintiffs

8  may cross-examine.

9  After the evidence has been presented, I will instruct you on the law that

10  applies to the case and the attorneys will make closing arguments.

11  After that, you will go to the jury room to deliberate on your verdict.

12

13

14

15

16

17

18

19

20

21

22

23  **Source**: Instruction 1.21 Model Civil Jury Instructions For the District Courts of

24  the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-

25  instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

26

27

28

- 19 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## <u>INSTRUCTIONS TO BE GIVEN DURING TRIAL</u>

## **NO. 16 - CAUTIONARY INSTRUCTION AT END OF DAY**

As I indicated before this trial started, you as jurors will decide this case based solely on the evidence presented in this courtroom. This means that, after you leave here for the night, you must not conduct any independent research about this case, the matters in the case, the legal issues in the case, or the individuals or other entities involved in the case. This is important for the same reasons that jurors have long been instructed to limit their exposure to traditional forms of media information such as television and newspapers. You also must not communicate with anyone, in any way, about this case. And you must ignore any information about the case that you might see while browsing the internet or your social media feeds.

**Source**: Instruction 2.0 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 20 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

# CLOSING JURY INSTRUCTIONS

## NO. 17 - DUTY OF JURY

Members of the Jury:  Now that you have heard all of the evidence and the arguments of the attorneys, it is my duty to instruct you on the law that applies to this case.

A copy of these instructions will be sent to the jury room for you to consult during your deliberations.

It is your duty to find the facts from all the evidence in the case.  To those facts you will apply the law as I give it to you.  You must follow the law as I give it to you whether you agree with it or not.  And you must not be influenced by any personal likes or dislikes, opinions, prejudices, or sympathy.  That means that you must decide the case solely on the evidence before you.  You will recall that you took an oath to do so.

Please do not read into these instructions or anything that I may say or do or have said or done that I have an opinion regarding the evidence or what your verdict should be.

**Source**: Instruction 1.4 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf

**NO. 18 - BURDEN OF PROOF—PREPONDERANCE OF THE EVIDENCE**

When a party has the burden of proving any claim or affirmative defense by a preponderance of the evidence, it means you must be persuaded by the evidence that the claim is more probably true than not true.

You should base your decision on all of the evidence, regardless of which party presented it.

**Source**: Instruction 1.6, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 22 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## NO. 19 - TWO OR MORE PARTIES—DIFFERENT LEGAL RIGHTS

You should decide the case as to each of the defendants, Frost Management Company, LLC and Stuart Frost, separately. Unless otherwise stated, the instructions apply to all parties.

**Source**: Instruction 1.8, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 23 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 20 - WHAT IS EVIDENCE**

The evidence you are to consider in deciding what the facts are consists of:

      (1)    the sworn testimony of any witness;

      (2)    the exhibits that are admitted into evidence;

      (3)    any facts to which the parties have agreed; and

      (4)    any facts that I may instruct you to accept as proved.

**Source**: Adapted from Instruction 1.9, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

# NO. 21 - WHAT IS NOT EVIDENCE

In reaching your verdict, you may consider only the testimony and exhibits received into evidence.  Certain things are not evidence, and you may not consider them in deciding what the facts are.  I will list them for you:

(1)     Arguments and statements by lawyers are not evidence.  The lawyers are not witnesses.  What they may say in their opening statements, closing arguments and at other times is intended to help you interpret the evidence, but it is not evidence.  If the facts as you remember them differ from the way the lawyers have stated them, your memory of them controls.

(2)     Questions and objections by lawyers are not evidence.  Attorneys have a duty to their clients to object when they believe a question is improper under the rules of evidence.  You should not be influenced by the objection or by the court's ruling on it.

(3)     Testimony that is excluded or stricken, or that you are instructed to disregard, is not evidence and must not be considered.  In addition some evidence may be received only for a limited purpose; when I instruct you to consider certain evidence only for a limited purpose, you must do so and you may not consider that evidence for any other purpose.

(4)     Anything you may see or hear when the court was not in session is not evidence.  You are to decide the case solely on the evidence received at the trial.

**Source**: Instruction 1.10, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

## NO. 22 - DIRECT AND CIRCUMSTANTIAL EVIDENCE

Evidence may be direct or circumstantial.  Direct evidence is direct proof of a fact, such as testimony by a witness about what that witness personally saw or heard or did.  Circumstantial evidence is proof of one or more facts from which you could find another fact.  You should consider both kinds of evidence.  The law makes no distinction between the weight to be given to either direct or circumstantial evidence.  It is for you to decide how much weight to give to any evidence.

By way of example, if you wake up in the morning and see that the sidewalk is wet, you may find from that fact that it rained during the night. However, other evidence, such as a turned on garden hose, may provide a different explanation for the presence of water on the sidewalk. Therefore, before you decide that a fact has been proved by circumstantial evidence, you must consider all the evidence in the light of reason, experience and common sense.

**Source**: Instruction 1.12 and comment thereto, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 26 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

## NO. 23 - CREDIBILITY OF WITNESSES

In deciding the facts in this case, you may have to decide which testimony to believe and which testimony not to believe.  You may believe everything a witness says, or part of it, or none of it.

In considering the testimony of any witness, you may take into account:

(1)  the opportunity and ability of the witness to see or hear or know the things testified to;

(2)  the witness's memory;

(3)  the witness's manner while testifying;

(4)  the witness's interest in the outcome of the case, if any;

(5)  the witness's bias or prejudice, if any;

(6)  whether other evidence contradicted the witness's testimony;

(7)  the reasonableness of the witness's testimony in light of all the evidence; and

(8)  any other factors that bear on believability.

Sometimes a witness may say something that is not consistent with something else he or she said. Sometimes different witnesses will give different versions of what happened. People often forget things or make mistakes in what they remember. Also, two people may see the same event but remember it differently. You may consider these differences, but do not decide that testimony is untrue just because it differs from other testimony.

However, if you decide that a witness has deliberately testified untruthfully about something important, you may choose not to believe anything that witness said. On the other hand, if you think the witness testified untruthfully about some things but told the truth about others, you may accept the part you think is true and ignore the rest.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

The weight of the evidence as to a fact does not necessarily depend on the number of witnesses who testify. What is important is how believable the witnesses were, and how much weight you think their testimony deserves.

**Source**: Instruction 1.14, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

- 28 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 24 - EXPERT OPINION**

You have heard testimony from witnesses who testified to opinions and the reasons for their opinions.  This opinion testimony is allowed, because of the education or experience of these witnesses.

Such opinion testimony should be judged like any other testimony.  You may accept it or reject it, and give it as much weight as you think it deserves, considering the witnesses' education and experience, the reasons given for the opinion, and all the other evidence in the case.

**Source**: Instruction 2.13, Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 29 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 25 - CHARTS AND SUMMARIES NOT RECEIVED IN EVIDENCE**

Certain charts and summaries not admitted into evidence have been shown to you in order to help explain the contents of books, records, documents, or other evidence in the case. Charts and summaries are only as good as the underlying evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Source**: Instruction 2.14 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

- 30 -
STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

### NO. 26 - CHARTS AND SUMMARIES RECEIVED IN EVIDENCE

Certain charts and summaries have been admitted into evidence to illustrate information brought out in the trial. Charts and summaries are only as good as the testimony or other admitted evidence that supports them. You should, therefore, give them only such weight as you think the underlying evidence deserves.

**Source**: Instruction 2.15 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

## NO. 27 – STIPULATIONS OF FACT

The parties have agreed to certain facts.  You must therefore treat the following facts as having been proved:

- From 2012 to 2016, Defendants raised nearly $63 million for the funds, mostly from high net worth individuals and trusts. The funds were invested in a portfolio of start-up companies ("portfolio companies"), using the so-called "Frost incubator model," in which a Frost-owned company, Frost Data Capital ("FDC"), purportedly provided operational support and other services to help "incubate" the portfolio companies in anticipation of those companies maturing and ultimately being sold or acquired by another company. In return for those support services, the portfolio companies paid incubator fees to FDC.

- FMC, a Delaware limited liability company, was an exempt reporting investment adviser formerly located in San Juan Capistrano, California. As of December 31, 2018, FMC failed to renew its status as an exempt reporting adviser. It was the adviser to the five private venture capital funds described below. FMC had assets under management of $49.9 million at year-end 2016, the last year for which information is available. The last Form ADV filed by FMC was dated February 8, 2017.

- Frost VP Seed, LLC ("Seed Fund") is a Delaware limited liability company formed in 2011. During the relevant time period, its manager was FMC.

- Frost VP Seed International, LLC ("International Seed Fund") is a Delaware limited liability company formed in 2012. Its manager is FMC.

- Frost VP Early Stage Fund II, LP ("Fund II") is a Delaware limited partnership formed in 2013. During the relevant time period, its general partner was Frost Venture Partners GP, LLC. As of October 21, 2016, Frost

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8:19-cv-01559-JLS-JDE

was the sole member of the general partner (at inception in May 2013, Frost
was a 62.5% member).

- FVP International Feeder Fund L.P. ("International Feeder Fund") is a
  Cayman Islands limited partnership formed in 2013. Its general partner is
  FMC.

- Frost Fund III, L.P. ("Fund III") is a Delaware limited partnership formed in
  2015. During the relevant time period, its general partner was Frost Fund III,
  GP, LLC. As of December 31, 2016, Frost was the sole member of the
  general partner (at inception in August 2015, Frost was an 81% member).

- Frost formed both FMC and FDC in 2011.

- FMC was an exempt reporting investment adviser pursuant to Section 203(l)
  of the Advisers Act [15 U.S.C. §§ 80b-3(l)], which provides for exemption
  from registration to investment advisers who act solely as an adviser to
  venture capital funds.

- From 2012 through 2016, FMC raised nearly $63 million from high net
  worth individuals and trusts, who invested in the Funds as follows:

  (a) The Seed Fund raised approximately $7,570,000 from roughly 30
      investors in 2012.

  (b) The International Seed Fund raised approximately £412,750 ($636,798)
      from roughly 45 investors in 2012.

  (c) Fund II raised approximately $41,189,521 from roughly 74 investors in
      2013-2014.

  (d) The International Feeder Fund raised approximately $5,250,000 from
      roughly two investors in 2013-2015, which was then invested in Fund II.

  (e) Fund III raised approximately $13,440,000 from roughly 11 investors in
      2015-2016.

- FMC had no advisory clients aside from the Funds.

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- The Funds invested in portfolio companies created by FDC that had a purported emphasis on big data analytics and cloud computing and later, the "internet of things."

- In addition to the Funds, other investors in the portfolio companies included high net worth individuals, trusts, non-Frost funds, and affiliates of public companies.

- FDC started, incubated, and provided support and services to the portfolio companies.

- The portfolio companies, in turn, paid FDC monthly fees for those services.

- The Seed Fund's operating agreement provided for the creation of an investment committee, which generally consisted of no more than five (5) persons, selected by Frost in his capacity as manager of FMC.

- The Seed Fund's investment committee was responsible for approving all investments presented to it by Frost, in his capacity as manager of FMC.

- Members of the Seed Fund's investment committee could be removed by Frost, in his capacity as manager of FMC, at his sole discretion.

- All actions of the Seed Fund's investment committee required at least a majority vote of its members, provided, however, in the event of a tie vote, the investment decision would be made by Frost, in his capacity as the manager of FMC, in his sole discretion.

- Frost solicited investors and prospective investors through the use of the Internet, wire and other electronic means of communication, and at in-person and group presentations.

- Frost also made and used PowerPoint marketing presentations in soliciting investors and prospective investors. Frost's PowerPoint presentation for the Seed Fund touted the "no fee" "no carry" opportunity to invest in "big data" analytics, and specifically in start-up ideas and start-up companies, approved

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

by a majority of a fund's investment committee, and then incubated by FDC, with exits projected from 2-5 years from startup by way of an acquisition by a "major player" in the computer industry.

- Investors in the Funds also signed operating and partnership agreements that were countersigned by Frost, on behalf of the Funds' manager or general partner.

- Frost also provided investor executive summaries to investors and prospective investors, which provided a high level summary of the Frost incubator model, the investment focus of the particular fund, the deal structure, Frost's background and qualifications, and a short description of some of the companies then being incubated.

- Frost also provided Fund investors with quarterly status reports that generally described that quarter's acquisitions, the status or activities of the portfolio companies in which the Fund had invested, and a valuation of the investments then held.

- Frost represented to investors and prospective investors that he envisioned a highly-focused incubator model in which he would come up with ideas or identify the needs of big data companies and pass them through FDC, the incubator. FDC would then write up a business plan and pass that plan onto a newly created portfolio company, which would obtain seed investments from the Funds or other investors. The portfolio company would then incubate ideas into software that, ideally, would eventually lead to an "exit," either through sale of the software or the company.

- FDC charged a monthly incubator fee for operational support provided to the portfolio companies.

- The executive summary for the Seed Fund stated:

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 35 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

"Note that the [Seed Fund] will not be expected to cover expenses and salaries incurred by FDC, which is a completely separate corporate entity. It is expected that services provided from the incubator to the startup companies will be agreed to between the boards of each individual company and FDC on a case-by-case basis and expected to be adjusted based on the individual needs of each company as their business matures. FDC's policy will be to only charge for services that the startup companies would require in the normal course of business. In general, this should mean that the startups receive higher quality services at a lower price than they would otherwise be able to afford (due to Frost VP's ability to provide economies of scale)."

- The governing documents for Fund II disclosed that FDC "may" receive a monthly service fee from the companies in which the partnership holds an investment in exchange for certain shared advisory and support services provided by FDC.

- The PowerPoint disclosure for Fund II was silent regarding incubator fees.

- The governing documents for Fund III disclosed that the portfolio companies in which the fund invested would enter into agreements with FDC pursuant to which each of the companies would reimburse FDC a monthly amount for its share of the cost of resources provided by FDC for shared facilities, shared personnel, and other shared resources.

- No effort was made to allocate the time FDC's staff spent working on tasks for the different portfolio companies.

- Cancellation of the service agreements [for the portfolio companies' payment of the incubator fees] required 180 days' notice.

- CEOs of the portfolio companies voiced concern to Frost and other members of FDC's management over the incubator fees.

1   • Some of the CEOs of the portfolio companies attempted to negotiate the
2   amount of the incubator fees.
3   • Frost informed at least one CEO that the incubator fees were "prix fixe," not
4   "a la carte."
5   • Frost was also part owner of a second incubator-related company, Snow
6   Data Capital ("SDC").
7   • SDC was created in 2014 to provide marketing services to the portfolio
8   companies.
9   • FMC and Frost failed to disclose the incubator fees paid by the portfolio
10   companies or their amounts in the Funds' quarterly status reports which
11   were distributed to the Funds' investors.
12   • Frost was the only member of Fund III's investment committee in late 2016,
13   and was thus solely responsible for approving the fund's investment in the
14   last two newly formed portfolio companies.
15   • Fund II's governing document allowed its general partner to collect a 2%
16   management fee. The governing document also provided that incubator fees
17   paid to FDC would not reduce the management fee "so long as such
18   [incubator] fees [do] not exceed reasonable market rates."
19   • Fund II paid management fees of over $1.7 million.
20
21
22
23
24
25
26
27
28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 37 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 28 - ELEMENTS OF THE SEC'S CLAIM UNDER SECTION 206(1)**

I will now explain the four elements the SEC must prove with respect to each Defendant to succeed on its first claim under Section 206(1) of the Investment Advisers Act.

First, the SEC must prove that the Defendant was an investment adviser to the Funds.

Second, the SEC must prove the Defendant employed a device, scheme, or artifice to defraud that violated its/his fiduciary duty to at least one of the Funds in that it/he made false and misleading statements or omissions of material fact.

Third, the SEC must prove that the Defendant used the mails or any other means or instrumentality of interstate commerce, directly or indirectly, in connection with its/his fraudulent conduct that satisfied the second element.

Fourth, the SEC must prove that the Defendant acted knowingly or recklessly.

The SEC does not need to prove that the investment adviser intended to injure the client, nor does the SEC need to prove that the client suffered any loss as a result of the investment adviser's conduct.

**Authority**: *See* 15 U.S.C. § 80b–6(1).

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8:19-cv-01559-JLS-JDE

## NO. 29 - ELEMENTS OF THE SEC'S CLAIM UNDER SECTION 206(2)

I will now explain the four elements the SEC must prove with respect to each Defendant to succeed on its claim under Section 206(2) of the Investment Advisers Act.

First, the SEC must prove that the Defendant was an investment adviser to the Funds.

Second, the SEC must prove the Defendant engaged in any transaction, practice, or course of business that operated as a fraud or deceit by violating its/his fiduciary duty to at least one of the Funds in that it made false and misleading statements or omissions of material fact.

Third, the SEC must prove that the defendant used the mails or any other means or instrumentality of interstate commerce, directly or indirectly in connection with its/his fraudulent conduct that satisfied the second element.

Fourth, the SEC must prove that the Defendant acted at least negligently.

The SEC does not need to prove that the investment adviser intended to injure the client, nor does the SEC need to prove that the client suffered any loss as a result of the investment adviser's conduct.

**Authority**:  *See* 15 U.S.C. § 80b–6(2).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 39 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

## NO. 30 - ELEMENTS OF THE SEC'S CLAIM UNDER 206(4) AND RULE 206(4)-8

I will now explain the four elements the SEC must prove with respect to each Defendant to succeed on its claim as to that Defendant as alleged under Section 206(4) of the Investment Advisers Act and Rule 206(4)-8.

First, the SEC must prove that the Defendant was an investment adviser to the Funds.

Second, the SEC must prove the Defendant:

(a) made untrue statements of a material fact or omitted to state a material fact necessary in order to make the statements made, in the light of the circumstances under which they were made, not misleading, to any investor or prospective investor in the Funds; <u>or</u>

(b) engaged in acts, practices or courses of business that were fraudulent, deceptive, or manipulative with respect to any investor or prospective investor in the Funds. Deceptive or manipulative conduct is conduct intended to create a false appearance of fact.

Third, the SEC must prove the Defendant used the mails or any other means or instrumentality of interstate commerce, directly or indirectly in connection with its/his fraudulent conduct that satisfied the second element.

Fourth, the SEC must prove that the Defendant acted at least negligently.

The SEC does not need to prove that anyone actually relied or made an investment decision based on, or was harmed by, Defendants' alleged fraud.

**Authority**:  *See* 15 U.S.C. § 80b–6(4); 17 C.F.R. § 275.206(4)-8.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1

**NO. 31 MATERIALITY**

2
3
4
5
6

A fact is material if its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his choice of action in the transaction.  There must be a substantial likelihood that the fact would have been viewed by the reasonable person as having significantly altered the "total mix" of information made available.

7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27

**Authority:**  *See Toombs v. Leone*, 777 F.2d 465, 468 (9th Cir. 1985) ("A fact is material if its existence or nonexistence is a matter to which a reasonable person would attach importance in determining his choice of action in the transaction."); *Tsc Indus. v. Northway*, 426 U.S. 438, 449, (1976) ("Put another way, there must be a substantial likelihood that the disclosure of the omitted fact would have been viewed by the reasonable investor as having significantly altered the 'total mix' of information made available."

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

## NO. 32 - KNOWING OR RECKLESS CONDUCT

A defendant acts knowingly when it/he makes an untrue statement with the knowledge that the statement was false or with reckless disregard for whether the statement was true.  A defendant acts knowingly when it/he omits necessary information with the knowledge that the omission would make the statement false or misleading or with reckless disregard for whether the omission would make the statement false or misleading.

A defendant acts recklessly when it/he engages in highly unreasonable conduct that is an extreme departure from ordinary care, and which presents a danger of misleading a person  that is either known to the defendant or is so obvious that the defendant must have been aware of it.

**Authority**:  Modified Instruction 18.5 (re knowingly) Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/juryinstructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.  In *Vernazza*, the Ninth Circuit held that "knowing or reckless conduct" constitutes scienter.  *Vernazza v. SEC*, 327 F.3d 851, 859 (9th. Cir. 2003).  The Ninth Circuit explained what "reckless conduct" is in *SEC v. Dain Rauscher, Inc.,* 254 F.3d 852, 856 (9th Cir. 2001).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 42 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

**NO. 33 - NEGLIGENCE**

"Negligence" is the failure to use reasonable care.  Reasonable care is the degree of care that a reasonably prudent person would use under similar circumstances to the ones that existed in this case. Negligence may consist either of doing something that a reasonably prudent person would not do under the circumstances, or in failing to do something that a reasonably prudent person would do under the circumstances.

**Authority**:  Manual of Model Civil Jury Instructions for the Ninth Circuit, 2007 edition, Section 6.3.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 43 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1

## NO. 34 – LIABILITY OF LIMITED LIABILITY COMPANIES

2      Under the law, a limited liability company, often referred to as an "LLC." is

3  considered to be a person.  It can only act through its employees, agents, managers,

4  or members.  Therefore, an LLC is responsible for the acts of its employees,

5  managers or members performed within the scope of authority.

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26  **Authority**:          Manual of Model Civil Jury Instructions for the Ninth Circuit,

27          2017 edition, Section 4.2, modified.

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

## NO. 35 - DUTY TO DELIBERATE

Before you begin your deliberations, elect one member of the jury as your presiding juror. The presiding juror will preside over the deliberations and serve as the spokesperson for the jury in court.

You shall diligently strive to reach agreement with all of the other jurors if you can do so. Your verdict must be unanimous. Each of you must decide the case for yourself, but you should do so only after you have considered all of the evidence, discussed it fully with the other jurors, and listened to their views.

It is important that you attempt to reach a unanimous verdict but, of course, only if each of you can do so after having made your own conscientious decision. Do not be unwilling to change your opinion if the discussion persuades you that you should. But do not come to a decision simply because other jurors think it is right, or change an honest belief about the weight and effect of the evidence simply to reach a verdict.

**Source**: Instruction 3.1 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1   **NO. 36 - RELIEF**

2       You are to determine only whether either Frost Management Company, LLC

3   and/or Mr. Frost have violated the Investment Advisers Act as I have described the

4   relevant law to you. If you find that any of the defendants violated the law, it will

5   be my job to decide what the remedy should be.  In considering whether the

6   defendants violated the law, you should not consider what relief I might award.

23   **Authority**: The parties have requested in the final pretrial order that the jury

24   determine liability and the Court determine all remedies should the jury find either

25   of the defendants liable.  *See, e.g., SEC v. Gowrish*, No. C 09-05883 SI, 2011 U.S.

26   Dist. LEXIS 76114, at *7 (N.D. Cal. July 14, 2011) (court determined all remedies

27   following finding of liability during jury trial as agreed to by the parties).

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 46 -

**NO. 37 - CONSIDERATION OF EVIDENCE—CONDUCT OF THE JURY**

Because you must base your verdict only on the evidence received in the case and on these instructions, I remind you that you must not be exposed to any other information about the case or to the issues it involves.  Except for discussing the case with your fellow jurors during your deliberations:

> Do not communicate with anyone in any way and do not let anyone else communicate with you in any way about the merits of the case or anything to do with it. This includes discussing the case in person, in writing, by phone, tablet, computer, or any other means, via email, via text messaging, or any internet chat room, blog, website or application, including but not limited to Facebook, YouTube, Twitter, Instagram, LinkedIn, Snapchat, TikTok, or any other forms of social media. This applies to communicating with your family members, your employer, the media or press, and the people involved in the trial. If you are asked or approached in any way about your jury service or anything about this case, you must respond that you have been ordered not to discuss the matter and to report the contact to the court.

> Do not read, watch, or listen to any news or media accounts or commentary about the case or anything to do with it; do not do any research, such as consulting dictionaries, searching the Internet, or using other reference materials; and do not make any investigation or in any other way try to learn about the case on your own. Do not visit or view any place discussed in this case, and do not use Internet programs or other devices to search for or view any place discussed during the trial. Also, do not do any research about this case, the law, or the people involved—including the parties, the witnesses or the lawyers—until you have been excused as jurors. If you happen to read or

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1   hear anything touching on this case in the media, turn away and report it to

2   me as soon as possible.

3       These rules protect each party's right to have this case decided only on

4   evidence that has been presented here in court. Witnesses here in court take an oath

5   to tell the truth, and the accuracy of their testimony is tested through the trial

6   process. If you do any research or investigation outside the courtroom, or gain any

7   information through improper communications, then your verdict may be

8   influenced by inaccurate, incomplete or misleading information that has not been

9   tested by the trial process. Each of the parties is entitled to a fair trial by an

10  impartial jury, and if you decide the case based on information not presented in

11  court, you will have denied the parties a fair trial. Remember, you have taken an

12  oath to follow the rules, and it is very important that you follow these rules.

13      A juror who violates these restrictions jeopardizes the fairness of these

14  proceedings.  If any juror is exposed to any outside information, please notify the

15  court immediately.

16

17

18

19

20

21

22

23  **Source**: Instruction 3.2 Model Civil Jury Instructions For the District Courts of the

24  Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-

25  instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 48 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

**NO. 38 - COMMUNICATION WITH COURT**

2      If it becomes necessary during your deliberations to communicate with me,

3  you may send a note through the clerk, signed by any one or more of you. No

4  member of the jury should ever attempt to communicate with me except by a

5  signed writing. I will not communicate with any member of the jury on anything

6  concerning the case except in writing or here in open court. If you send out a

7  question, I will consult with the lawyers before answering it, which may take some

8  time. You may continue your deliberations while waiting for the answer to any

9  question. Remember that you are not to tell anyone—including the court—how the

10  jury stands, whether in terms of vote count or otherwise, until after you have

11  reached a unanimous verdict or have been discharged.

12

13

14

15

16

17

18

19

20

21

22

23  **Source**: Instruction 3.3 Model Civil Jury Instructions For the District Courts of the

24  Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-

25  instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 49 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**NO. 39 - RETURN OF VERDICT**

A verdict form has been prepared for you.  You will take this form to the jury room.  The answer to each question on the form must be the unanimous answer of the jury. Your presiding juror will write the unanimous response of the jury in the space provided below each question.  After you have reached unanimous agreement on a verdict; your presiding juror should complete the verdict form according to your deliberations, sign and date it, and advise the clerk that you are ready to return to the courtroom.

**Source**: Adapted from Instruction 3.5 Model Civil Jury Instructions For the District Courts of the Ninth Circuit, available at https://www.ce9.uscourts.gov/jury-instructions/sites/default/files/WPD/Civil_Instructions_2021_9_0.pdf.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 50 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**SEC'S PROPOSED CLOSING JURY INSTRUCTIONS OPPOSED**

**BY DEFENDANTS**

**SEC Proposed Instruction No. 40**

**Misrepresentation and Omission**

A misrepresentation is a statement of material fact that is false or misleading when it is made. A statement may be misleading even if it is literally true if the context in which the statement was made caused the listener or reader to remain unaware of the actual state of affairs.

An omission is a failure to disclose a material fact that had to be disclosed to prevent other statements that were made from being misleading.

An omission is also a failure to disclose a material fact where the person has a fiduciary duty to disclose material facts.


Requesting

Party/Parties:           SEC

Authority:               <u>Manual of Model Civil Jury Instructions for the Ninth Circuit,</u>
                         2017 edition, Section 4.2, modified. *Matrixx Initiatives, Inc. v.*
                         *Siracusano*, 563 U.S. 27, 44 (2011) (a duty to disclose arises
                         "when necessary 'to make . . . statements made, in the light of
                         the circumstances under which they were made, not
                         misleading"); *Hanon v. Dataproducts Corp.*, 976 F.2d 497, 504
                         (9th Cir. 1992) ("Rule 10b-5 imposes a duty to disclose
                         material facts that are necessary to make disclosed statements,
                         whether mandatory or volunteered, not misleading").
                         *Paracor Fin., Inc. v. Gen. Electric Capital Corp.,* 96 F.3d 1151,
                         1157 (9th Cir. 1996) (a duty of disclosure may also arise when
                         the parties have "a fiduciary or agency relationship, prior

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1     dealings or circumstances such that one party has placed trust

2     and confidence in the other").

3     **Basis for Defendants' Objection:**

4          The concept of an omission is already explained in the elements and does

5     not require repeating in a separate instruction.  In addition, Defendants object to

6     the SEC's second definition of an omission in this instruction as misleading

7     because this definition of omission, which the SEC ties to a fiduciary duty, would

8     only be applicable to the SEC's claim as alleged under Section 206(1) and 206(2).

9     It is, therefore, misleading to include this definition in an instruction that

10    universally applies to the SEC's claims.

11         The SEC acknowledges that neither Section 206(4) of the Advisers Act nor

12    Rule 206(4)-8 itself create a fiduciary duty to investors.  (*See* Doc. 114 at 15.)  Yet,

13    the SEC has taken the position that Frost owed a common law fiduciary duty

14    arising under Delaware law that somehow creates a duty to disclose for purposes of

15    Rule 206(4)-8 that could support fraud by omission.  To be clear, the parties agree

16    that the SEC can prove its claim with an omission of a material fact necessary to

17    make statements by Defendants not misleading.  But the SEC seeks to expand Rule

18    206(4)-8 to create a generalized duty to disclose any and all material facts to

19    investors, even if that fact is not necessary to make an affirmative statement not

20    misleading.  This is incorrect for several reasons.

21         First, the court in *Goldstein* explained that for an investment adviser to

22    private funds, the clients of the investment adviser must be the funds themselves

23    and not the investors in the funds because to hold otherwise would create

24    conflicting fiduciary duties for the investment adviser.  *See Goldstein v. SEC*, 451

25    F.3d 873, 881 (D.C. Cir. 2006).  The SEC's attempt to bring fiduciary duties owed

26    to investors back into this statutory framework through the common law would

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1    create the very conflicting duties that the statutory framework, including Rule

2    206(4)-8, was designed to avoid and that were warned against in *Goldstein*.

3         If this Court were to layer common law fiduciary duties into the statutory

4    framework, then the Court would need to decide complicated state law issues and

5    this federal statute would vary from state to state.  Indeed, it is not clear if Frost or

6    FMC even had a fiduciary duty of disclosure to investors under Delaware common

7    law.  Neither Frost nor FMC was the member-manager for the two funds structured

8    as limited liability companies (the Seed Fund and International Seed Fund) or the

9    general partner of any of the three funds structured as limited partnerships

10   (International Feeder Fund, Fund II, and Fund III).  Accordingly, Frost did not

11   directly owe a fiduciary duty to the investors and at best owed a more limited,

12   derivative fiduciary duty that did not include a duty to disclose.  *See Bay Ctr.*

13   *Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 Del. Ch.

14   LEXIS 54, at *32-39 (Ch. Apr. 20, 2009) (explaining that the fiduciary duty owed

15   under such circumstances is limited to "the duty not to use control over the

16   partnership's property to advantage the [affiliate] at the expense of the

17   partnership") (quoting *In re USACafes, L.P. Litigation*, 600 A.2d 43, 49 (Del. Ch.

18   1991).  *Goldstein* does not require, and in fact does not permit, the Court to even

19   undertake this state law analysis.

20        Second, even assuming *arguendo* that a common law fiduciary duty to

21   investors could be imported into the statutory framework despite *Goldstein* (which

22   it cannot), the Fund agreements contain exculpation provisions as to the fiduciary

23   duties that would be owed by the manager or general partner.  For example, the

24   Fund II agreement limits fiduciary duties to the extent the fiduciary duties are

25   different than the obligations imposed by the agreement.  (*See* Doc. 106 at Ex. 5 at

26   § 15.3 ("Notwithstanding anything to the contrary in this Agreement, to the extent

27   that at law or in equity, an Indemnified Party has duties (including fiduciary duties)

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 53 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

and liabilities relating thereto to the Partnership, any Partner or any other person, such Indemnified Party acting under this Agreement shall not be liable to the Partnership, any Partner or any other person for breach of fiduciary duty for its good faith reliance on the provisions of this Agreement, and the provisions of this Agreement, to the extent that they restrict or limit the duties (including fiduciary duties) and liabilities relating thereto of an Indemnified Party otherwise existing at law or in equity, are agreed by each Partner and the Partnership to so modify such other duties and liabilities of such Indemnified Party.")  The obligations imposed by the agreement with respect to disclosures are specifically identified and include quarterly reports, annual reports, and financial statements of the partnership.  (See, e.g. Doc. 106 at Ex. 5 at §§ 11.3-11.4 ("The General Partner shall transmit to the Limited Partners within sixty (60) days after the close of each of the first three quarters of each fiscal year, a summary of acquisitions and dispositions of investments made by the Partnership during such quarter together with a valuation of the investments then held. . . . the General Partner shall use reasonably commercial efforts to transmit to the Limited Partners within one hundred twenty (120) days after the close of the Partnership's fiscal year audited financial statements of the Partnership . . . The financial statements shall be accompanied by a report from the General Partner to the Limited Partners, which shall include a status report on investments then held, a summary of acquisitions and dispositions of investments made by the Partnership during the preceding quarter and a valuation of each such investment.")  Accordingly, to the extent a fiduciary duty is owed, the Fund agreements do not permit that fiduciary duty to extend to the general duty to disclose requested by the SEC.  *See Nemec v. Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

Finally, the SEC's Complaint does not allege a fiduciary duty owed to the investors in the Funds under Delaware law, or any other law.  Instead, the SEC

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 54 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1   only alleges that Frost owed a fiduciary duty to the Funds; nowhere does the SEC

2   allege that Frost owed a fiduciary duty to the investors in the Funds.  (*See* Compl.

3   ¶ 122 (alleging "Frost and FMC made material misstatements and omissions, and

4   breached their fiduciary duties to the Funds").)  The SEC is bound by its Complaint

5   at this late stage in the litigation. *See, e.g., Parker v. Joe Lujan Enters., Inc.*, 848

6   F.2d 118, 121 (9th Cir. 1988).  It should not be allowed to amend its allegations, on

7   the fly, to conform to some new, unfounded legal theory that is not pleaded in its

8   Complaint.

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

8:19-cv-01559-JLS-JDE

## SEC Proposed Instruction No. 41

### <u>Fiduciary Duty Under the Advisers Act</u>

A fiduciary duty exists whenever one person places special trust and confidence in another person—the fiduciary—in reliance that the fiduciary will exercise his or her discretion and expertise with the utmost honesty and forthrightness in the interests of the person, such that the person relaxes the care and vigilance that he or she would ordinarily exercise, and the fiduciary knowingly accepts that special trust and confidence and thereafter undertakes to act on behalf of the other person based on such reliance.

Section 206 establishes a fiduciary duty on investment advisers to act for the benefit of their clients, requiring investment advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients. An investment adviser's failure to disclose material facts regarding the adviser's conflicts of interest constitutes fraud or deceit within the meaning of section 206.

Requesting
Party/Parties:         SEC

Authority:         <u>Manual of Model Criminal Jury Instructions</u>, 2010 edition, Section 8.123 (defining fiduciary duty); 15 U.S.C. §§ 80b-6(1), 80b-6(2); *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007) (articulating elements); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191, 195, 200 (1963) (noting that Section 206 imposes an "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts" on investment advisers; proof of intent to injure or injury to the client not required; "[f]ailure to disclose material facts must be deemed fraud or deceit" within the

1  meaning of Section 206); 4 Sand, et al. Modern Federal Jury

2  Instructions, ¶ 82.02, Inst. 82-4 (Civil) (2012) (modified);

3  *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11,

4  17 (1979) (Section 206 "establishes 'federal fiduciary

5  standards' to govern the conduct of investment advisers");

6  *Vernazza v. SEC*, 327 F.3d 851, 859, 860 (9th Cir. 2003),

7  *amended by*, 335 F.3d 1096 (9th Cir. 2003) (conflicts of interest

8  are material facts; knowing or reckless conduct required to

9  prove a violation of Section 206(1)); *Monetta Fin. Servs., Inc.*

10 *v. SEC*, 390 F.3d 952, 955 (7th Cir. 2003) (investment adviser's

11 failure to disclose material information constitutes "fraud or

12 deceit" under the Advisers Act); *SEC v. Wall Street Publ'g*

13 *Inst., Inc.*, 591 F. Supp. 1070, 1084 ((D.D.C. 1984) (same); *The*

14 *Robare Group, Ltd. v. SEC*, 922 F.3d 468, 472, 477 (D.C. Cir.

15 2019) (failure by an investment adviser to disclose potential

16 conflicts of interest to its clients constitutes fraud within the

17 meaning of 206(1) and (2); negligence sufficient to prove a

18 violation of 206(2)); *United States v Tagliaferri*, 820 F.3d 568,

19 575 (2d Cir. 2016) (intent to harm not an element under 206);

20 *SEC v. Westport Capital Mkts., LLC*, 408 F. Supp. 3d 93, 103

21 (D. Conn. 2019) (an investment advisor may violate 206(1) by

22 failing to disclose material information about the advisor's

23 conflicts of interest even if the advisor had not intent to injure

24 his clients and even if his clients were no injured at all).

25 **Basis for Defendants' Objection:**

26 The SEC's proposed instruction is misleading because for the reasons

27 explained in further detail, *infra*, a fiduciary duty is only at issue with respect to the

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 57 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

SEC's claims alleged under Section 206(1) and 206(2) (and does not apply to the SEC's claim alleged under Section 206(4)).  Yet, this instruction is drafted to universally apply to the SEC's claims.  The definition of fiduciary duty is not specific to the duty at issue for claims alleged under the Investment Advisers Act, whereas Defendants' proposed alternative instruction on fiduciary duty is.  (*See, supra*, Instruction No. 48.)  Additionally, the last sentence of this instruction improperly sets forth a legal argument by the SEC rather than instructing the jury as to the applicable law.

The SEC acknowledges that neither Section 206(4) of the Advisers Act nor Rule 206(4)-8 itself create a fiduciary duty to investors.  (*See* Doc. 114 at 15.)  Yet, the SEC has taken the position that Frost owed a common law fiduciary duty arising under Delaware law that somehow creates a duty to disclose for purposes of Rule 206(4)-8 that could support fraud by omission.  To be clear, the parties agree that the SEC can prove its claim with an omission of a material fact necessary to make statements by Defendants not misleading.  But the SEC seeks to expand Rule 206(4)-8 to create a generalized duty to disclose any and all material facts to investors, even if that fact is not necessary to make an affirmative statement not misleading.  This is incorrect for several reasons.

First, the court in *Goldstein* explained that for an investment adviser to private funds, the clients of the investment adviser must be the funds themselves and not the investors in the funds because to hold otherwise would create conflicting fiduciary duties for the investment adviser.  *See Goldstein v. SEC*, 451 F.3d 873, 881 (D.C. Cir. 2006).  The SEC's attempt to bring fiduciary duties owed to investors back into this statutory framework through the common law would create the very conflicting duties that the statutory framework, including Rule 206(4)-8, was designed to avoid and that were warned against in *Goldstein*.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 58 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1    If this Court were to layer common law fiduciary duties into the statutory

2    framework, then the Court would need to decide complicated state law issues and

3    this federal statute would vary from state to state.  Indeed, it is not clear if Frost or

4    FMC even had a fiduciary duty of disclosure to investors under Delaware common

5    law.  Neither Frost nor FMC was the member-manager for the two funds structured

6    as limited liability companies (the Seed Fund and International Seed Fund) or the

7    general partner of any of the three funds structured as limited partnerships

8    (International Feeder Fund, Fund II, and Fund III).  Accordingly, Frost did not

9    directly owe a fiduciary duty to the investors and at best owed a more limited,

10   derivative fiduciary duty that did not include a duty to disclose.  *See Bay Ctr.*

11   *Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 Del. Ch.

12   LEXIS 54, at *32-39 (Ch. Apr. 20, 2009) (explaining that the fiduciary duty owed

13   under such circumstances is limited to "the duty not to use control over the

14   partnership's property to advantage the [affiliate] at the expense of the

15   partnership") (quoting *In re USACafes, L.P. Litigation*, 600 A.2d 43, 49 (Del. Ch.

16   1991).  *Goldstein* does not require, and in fact does not permit, the Court to even

17   undertake this state law analysis.

18   Second, even assuming *arguendo* that a common law fiduciary duty to

19   investors could be imported into the statutory framework despite *Goldstein* (which

20   it cannot), the Fund agreements contain exculpation provisions as to the fiduciary

21   duties that would be owed by the manager or general partner.  For example, the

22   Fund II agreement limits fiduciary duties to the extent the fiduciary duties are

23   different than the obligations imposed by the agreement.  (*See* Doc. 106 at Ex. 5 at

24   § 15.3 ("Notwithstanding anything to the contrary in this Agreement, to the extent

25   that at law or in equity, an Indemnified Party has duties (including fiduciary duties)

26   and liabilities relating thereto to the Partnership, any Partner or any other person,

27   such Indemnified Party acting under this Agreement shall not be liable to the

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 59 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

Partnership, any Partner or any other person for breach of fiduciary duty for its
good faith reliance on the provisions of this Agreement, and the provisions of this
Agreement, to the extent that they restrict or limit the duties (including fiduciary
duties) and liabilities relating thereto of an Indemnified Party otherwise existing at
law or in equity, are agreed by each Partner and the Partnership to so modify such
other duties and liabilities of such Indemnified Party.")  The obligations imposed
by the agreement with respect to disclosures are specifically identified and include
quarterly reports, annual reports, and financial statements of the partnership.  (See,
e.g. Doc. 106 at Ex. 5 at §§ 11.3-11.4 ("The General Partner shall transmit to the
Limited Partners within sixty (60) days after the close of each of the first three
quarters of each fiscal year, a summary of acquisitions and dispositions of
investments made by the Partnership during such quarter together with a valuation
of the investments then held. . . . the General Partner shall use reasonably
commercial efforts to transmit to the Limited Partners within one hundred twenty
(120) days after the close of the Partnership's fiscal year audited financial
statements of the Partnership . . . The financial statements shall be accompanied by
a report from the General Partner to the Limited Partners, which shall include a
status report on investments then held, a summary of acquisitions and dispositions
of investments made by the Partnership during the preceding quarter and a
valuation of each such investment.")  Accordingly, to the extent a fiduciary duty is
owed, the Fund agreements do not permit that fiduciary duty to extend to the
general duty to disclose requested by the SEC.  *See Nemec v. Shrader*, 991 A.2d
1120, 1129 (Del. 2010).

Finally, the SEC's Complaint does not allege a fiduciary duty owed to the
investors in the Funds under Delaware law, or any other law.  Instead, the SEC
only alleges that Frost owed a fiduciary duty to the Funds; nowhere does the SEC
allege that Frost owed a fiduciary duty to the investors in the Funds.  (*See* Compl.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 60 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

¶ 122 (alleging "Frost and FMC made material misstatements and omissions, and breached their fiduciary duties to the Funds").) The SEC is bound by its Complaint at this late stage in the litigation. *See, e.g., Parker v. Joe Lujan Enters., Inc.*, 848 F.2d 118, 121 (9th Cir. 1988).  It should not be allowed to amend its allegations, on the fly, to conform to some new, unfounded legal theory that is not pleaded in its Complaint.

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

- 61 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

## SEC Proposed Instruction No. 42

### **Fiduciary Duty Under Delaware Law**

In addition to the fiduciary duty imposed on investment adviser under Section 206 of the Advisers Act, under Delaware law a general partner of a partnership, as well as a manager of a limited liability company, owes a fiduciary duty to the limited partners of the partnership and to the members of the limited liability company to act in good faith and to disclose all information, including all conflicts of interest, that would be material to a limited partner's or member's decision to participate in the partnership or company.


Requesting
Party/Parties:      SEC

Authority:      *Feeley v. NHAOCG*, 62 A. 3d 649, 663 (Del Ch. 2012) (under
               Delaware law, unless eliminated in the entity's operating or
               partnership agreement, member-managers of a Delaware
               limited liability company and general partners of a Delaware
               limited partnership owe traditional fiduciary duties to both the
               LCC and to its non-managing members, and to the partnership
               and its limited partners); accord *Official Comm. of Unsecured
               Creditors v. Goldman Sachs Credit Partners L.P. (In re
               Fedders North America, Inc.)*, 405 B.R. 527, 539 (Bankr. D.
               Del. 2009); *Paige Capital Mgmt., LLC v. Lerner Master Fund,
               LLC*, 2011 Del. Ch. LEXIS 116 (Aug. 8, 2011); *Wallace ex. rel.
               Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d
               1175, 1180 (Del. Ch. 1999); *In re USA Cafes, L.P. Litigation*,
               600 A.2d 43 (Del. Chancery Ct. 1991).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 62 -

1  **Basis for Defendants' Objection:**

2    The SEC's proposed instruction falsely claims that Section 206 of the

3  Advisers Act generally imposes a fiduciary duty, and erroneously asserts an

4  irrelevant potential fiduciary duty arising under state law.  Worse still, it

5  improperly assumes facts that the SEC would have to prove as well as unresolved

6  legal issues related to whether any of the separate agreements for each of the five

7  funds actually provide for any fiduciary duties under state law and, if so, what

8  those duties are.

9    The SEC acknowledges that neither Section 206(4) of the Advisers Act nor

10  Rule 206(4)-8 itself create a fiduciary duty to investors.  (*See* Doc. 114 at 15.)  Yet,

11  the SEC has taken the position that Frost owed a common law fiduciary duty

12  arising under Delaware law that somehow creates a duty to disclose for purposes of

13  Rule 206(4)-8 that could support fraud by omission.  The parties agree that the

14  SEC can prove its claim with an omission of a material fact necessary to make

15  statements by Defendants not misleading.  But the SEC improperly seeks to

16  expand Rule 206(4)-8 to create a generalized duty to disclose any and all material

17  facts to investors, even if that fact is not necessary to make an affirmative

18  statement not misleading.  This is incorrect for several reasons.

19    First, the court in *Goldstein* explained that for an investment adviser to

20  private funds, the clients of the investment adviser must be the funds themselves

21  and not the investors in the funds because to hold otherwise would create

22  conflicting fiduciary duties for the investment adviser.  *See Goldstein v. SEC*, 451

23  F.3d 873, 881 (D.C. Cir. 2006).  The SEC's attempt to bring fiduciary duties owed

24  to investors back into this statutory framework through the common law would

25  create the very conflicting duties that the statutory framework, including Rule

26  206(4)-8, was designed to avoid and that were warned against in *Goldstein*.

27

28

Stradling Yocca
Carlson & Rauth
Lawyers
Newport Beach

- 63 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1   　　If this Court were to layer common law fiduciary duties into the statutory

2   framework, then the Court would need to decide complicated state law issues and

3   this federal statute would vary from state to state.  Indeed, it is not clear if Frost or

4   FMC even had a fiduciary duty of disclosure to investors under Delaware common

5   law.  Neither Frost nor FMC was the member-manager for the two funds structured

6   as limited liability companies (the Seed Fund and International Seed Fund) or the

7   general partner of any of the three funds structured as limited partnerships

8   (International Feeder Fund, Fund II, and Fund III).  Accordingly, Frost did not

9   directly owe a fiduciary duty to the investors and at best owed a more limited,

10  derivative fiduciary duty that did not include a duty to disclose.  *See Bay Ctr.*

11  *Apartments Owner, LLC v. Emery Bay PKI, LLC*, No. 3658-VCS, 2009 Del. Ch.

12  LEXIS 54, at *32-39 (Ch. Apr. 20, 2009) (explaining that the fiduciary duty owed

13  under such circumstances is limited to "the duty not to use control over the

14  partnership's property to advantage the [affiliate] at the expense of the

15  partnership") (quoting *In re USACafes, L.P. Litigation*, 600 A.2d 43, 49 (Del. Ch.

16  1991).  *Goldstein* does not require, and in fact does not permit, the Court to even

17  undertake this state law analysis.

18  　　Second, even assuming *arguendo* that a common law fiduciary duty to

19  investors could be imported into the statutory framework despite *Goldstein* (which

20  it cannot), the Fund agreements contain exculpation provisions as to the fiduciary

21  duties that would be owed by the manager or general partner.  For example, the

22  Fund II agreement expressly limits fiduciary duties to the extent the fiduciary

23  duties are different than the obligations imposed by the agreement.  (*See* Doc. 106

24  at Ex. 5 at § 15.3 ("Notwithstanding anything to the contrary in this Agreement, to

25  the extent that at law or in equity, an Indemnified Party has duties (including

26  fiduciary duties) and liabilities relating thereto to the Partnership, any Partner or

27  any other person, such Indemnified Party acting under this Agreement shall not be

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 64 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1   liable to the Partnership, any Partner or any other person for breach of fiduciary

2   duty for its good faith reliance on the provisions of this Agreement, and the

3   provisions of this Agreement, to the extent that they restrict or limit the duties

4   (including fiduciary duties) and liabilities relating thereto of an Indemnified Party

5   otherwise existing at law or in equity, are agreed by each Partner and the

6   Partnership to so modify such other duties and liabilities of such Indemnified

7   Party.")

8       The obligations imposed by the agreement with respect to disclosures are

9   specifically identified and include quarterly reports, annual reports, and financial

10  statements of the partnership.  (See, e.g. Doc. 106 at Ex. 5 at §§ 11.3-11.4 ("The

11  General Partner shall transmit to the Limited Partners within sixty (60) days after

12  the close of each of the first three quarters of each fiscal year, a summary of

13  acquisitions and dispositions of investments made by the Partnership during such

14  quarter together with a valuation of the investments then held. . . . the General

15  Partner shall use reasonably commercial efforts to transmit to the Limited Partners

16  within one hundred twenty (120) days after the close of the Partnership's fiscal year

17  audited financial statements of the Partnership . . . The financial statements shall be

18  accompanied by a report from the General Partner to the Limited Partners, which

19  shall include a status report on investments then held, a summary of acquisitions

20  and dispositions of investments made by the Partnership during the preceding

21  quarter and a valuation of each such investment.")  Accordingly, to the extent a

22  fiduciary duty is owed, the Fund agreements do not permit that fiduciary duty to

23  extend to the general duty to disclose requested by the SEC.  *See Nemec v.*

24  *Shrader*, 991 A.2d 1120, 1129 (Del. 2010).

25      Finally, the SEC's Complaint does not allege a fiduciary duty owed to the

26  investors in the Funds under Delaware law, or any other law.  Instead, the SEC

27  only alleges that Frost owed a fiduciary duty to the Funds; nowhere does the SEC

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 65 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1  allege that Frost owed a fiduciary duty to the investors in the Funds.  (*See* Compl.

2  ¶ 122 (alleging "Frost and FMC made material misstatements and omissions, and

3  breached their fiduciary duties to the Funds").) The SEC is bound by its Complaint

4  at this late stage in the litigation. *See, e.g., Parker v. Joe Lujan Enters., Inc*., 848

5  F.2d 118, 121 (9th Cir. 1988).  It should not be allowed to amend its allegations, on

6  the fly, to conform to some new, unfounded legal theory that is not pleaded in its

7  Complaint.

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

**SEC Proposed Instruction No. 43**

**Imputation of Knowledge**

Ordinarily, the knowledge of an agent acting with the scope of his or her authority may be imputed to the agent's principal.

There is an exception to this general rule, however, called the adverse interest doctrine.  Under this legal doctrine, an agent's knowledge may not be imputed to his principal where the agent is acting to advance his own personal financial interest

Requesting

Party/Parties:          SEC

Authority:              *Costa Brava P'ship III, LP v. ChinaCast Educ. Corp. Sec. Litig.*, 809 F.3d 471, 476 (9th Cir. 2015); *Thabault v. Chait*, 541 F.3d 512, 527 (3d. Cir. 2008); *Official Comm. of Unsecured Creditors v. R.F. Lafferty & Co.*, 267 F.3d 340, 359 (3d. Cir. 2001); *Lincoln Nat'l Life Ins. Co. v. Snyder*, 722 F. Supp. 2d 546, 555-56 (D. Del. 2010); *Smith v. Anderson*, No. 01-CV-0218-PHX-PGR, 2005 U.S. Dist. LEXIS 58033, at 12 (D. Az. Jan. 27, 2005); *see also*, *Paradigm Capital Management, Inc. and Candace King Weir* (SEC Administrative Proceeding, File No. 3-15930, June 16, 2014) (use of a "conflicts committee" to approve principal transactions under 206(3) of the Advisers Act would not be sufficient for "investor consent" to conflicts of interest from securities transactions between manager controlled funds and investors fund).

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 67 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**Basis for Defendants' Objection:**

The SEC's proposes this instruction without including in this instruction, or separately proposing, an instruction that explains what the implication of the Funds having knowledge is under the law.  As a result, this instruction warning against the imputation of such knowledge to the Funds under certain circumstances is untethered and has no apparent relevance to the case.

Furthermore, the SEC incorrectly explains the law as to the adverse interest exception to make it seem much broader than it is.  "The adverse interest exception is narrow and generally requires an agent to *completely* abandon the principals interests and act *entirely* for his own purposes . . . In other words, the agent's relations to the subject matter must be 'so adverse as practically to destroy the relation of agency. Courts generally require total abandonment to invoke the adverse interest exception because [t]his rule avoids ambiguity where there is a benefit to both the insider and the corporation, and reserves this most narrow of exceptions for those cases-outright theft or looting or embezzlement —where the insider's misconduct benefits only himself or a third party." *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1144-45 (N.D. Cal. 2013) (international citations and quotations omitted); *see also In re Crazy Eddie Sec. Litig.*, 802 F. Supp. 804, 817 (E.D.N.Y. 1992) (adverse interest exception inapplicable "when the agent acts both for himself and for the principal," even where "his primary interest is inimical to the principal"). Defendants' proposed instruction correctly explains both what the implication of the Funds having knowledge is as well as when the exception is applicable.  (*See, supra*, Instruction No. 44.)

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 68 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**DEFENDANTS' PROPOSED  CLOSING JURY INSTRUCTIONS**

**OPPOSED BY THE SEC**

**NO. 44 - IMPUTED KNOWLEDGE OF TRUE FACTS**

Where the relevant Fund or investor is aware of the true facts there can be no false and misleading statement or omission of material fact.

The knowledge of an agent acting within the scope of his or her authority may be imputed to the agent's principal.  If, however, an agent completely abandons the principal's interests and acts entirely for his or her own purposes, then the agent's may not be imputed to his or her principal.

**Authority**: Defendants propose this instruction because the SEC's imputed knowledge proposed instruction only warns against imputation of knowledge without informing the jury of the implications of imputing knowledge to the Funds. Accordingly, the jury needs to be informed that if the relevant Fund or investor is aware of the true facts there can be no false and misleading statement or omission of material fact.  *See Newby v. Enron Corp. (In re Enron Corp. Sec. Deriv. & ERISA Litig.)*, 529 F. Supp. 2d 644, 659-60 (S.D. Tex. 2006) (holding that investors who had purchased securities after corrections were made to earlier, misleading, statements "could not have relied on the alleged fraud"); *see also In re Enron Corp. Secs., Deriv., & ERISA Litig.*, 235 F. Supp. 2d 549, 574 (S.D. Tex. 2002) (holding that a misrepresentation is "immaterial if the information is already known to the market because the misrepresentation therefore cannot defraud the

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 69 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

market").  The breach of the defendant's fiduciary duty must be grounded in fraud to constitute a violation of Section 206.  *See SEC v. Westport Capital Mkts. LLC*, 408 F. Supp. 3d 93, 108 (D. Conn. 2019) ("Unlike section 206(1) and (2) of the Act, section 206(3) can be violated without a showing of fraud.") (citations omitted); *Jones Mem'l Tr. v. Tsai Inv. Servs., Inc.*, 367 F. Supp. 491, 497 (S.D.N.Y. 1973) ("The plain words of Section 206 of the Investment Advisers Act of 1940 make no mention of mismanagement, but speak solely and exclusively to concealment and misrepresentation.").

"The adverse interest exception is narrow and generally requires an agent to *completely* abandon the principals interests and act *entirely* for his own purposes . . . In other words, the agent's relations to the subject matter must be 'so adverse as practically to destroy the relation of agency. Courts generally require total abandonment to invoke the adverse interest exception because [t]his rule avoids ambiguity where there is a benefit to both the insider and the corporation, and reserves this most narrow of exceptions for those cases-outright theft or looting or embezzlement —where the insider's misconduct benefits only himself or a third party."  *Cement & Concrete Workers Dist. Council Pension Fund v. Hewlett Packard Co.*, 964 F. Supp. 2d 1128, 1144-45 (N.D. Cal. 2013) (international citations and quotations omitted); *see also In re Crazy Eddie Sec. Litig.*, 802 F. Supp. 804, 817 (E.D.N.Y. 1992) (adverse interest exception inapplicable "when the agent acts both for himself and for the principal," even where "his primary interest is inimical to the principal").

**Basis for SEC's Objection:**

The SEC has proposed an alternative instruction on the imputation of knowledge and the limits thereon where an agent has an economic conflict of interest, which accurately states the law.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 70 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1    In addition, Defendants' proposed instruction to the effect "Where the

2    relevant Fund or investor is aware of the true facts there can be no false and

3    misleading statement or omission of material fact" is confusing and is premised on

4    cases under Section 10(b) of the Exchange Act where a plaintiff in a private

5    securities action under the PSLRA must show reliance, which is not an element of

6    any of the SEC's claims under the Investment Advisers Act.  The proposed

7    instruction also serves to eliminate an investment adviser's fiduciary duties under

8    Section 206, which creates an affirmative duty to disclose all material facts to his

9    or her clients.  *SEC v. Nutmeg Grp., LLC*, 162 F. Supp. 3d 754, 779-80 (N.D. Ill.

10   2016) (The "obligation to provide disclosure," is "on the people who solicit and

11   manage investors' money;" investors should not have to "seek out disclosures.").

12   In addition, the proposed instruction is redundant to the parties' proposed

13   instruction of materiality.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 71 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

## NO. 45 - PRESENCE OF COUNSEL AND PROFESSIONAL AUDITORS

2

You may consider the presence and involvement of counsel and/or the

3

auditors in determining whether or not that defendant acted with knowing or

4

reckless conduct.

5

6

7

**Authority**:  Defendants propose this instruction because it is a correct statement of

8

the law.  Courts have held that a defendant's reliance on the presence of counsel

9

and disclosures consistent with an auditor's opinions severely undermines the

10

possibility of finding the defendant acted with scienter, even when the defendant is

11

not asserting an advice of counsel affirmative defense.  *See In re Hansen Nat.*

12

*Corp. Sec. Litig.*, 527 F. Supp. 2d 1142, 1158 (C.D. Cal. 2007) (explaining it

13

"finds Deloitte & Touche LLP's unqualified opinion 'highly probative' of an

14

absence of scienter"); *see also Mathews v. Centex Telemanagement*, No. C-92-

15

1837-CAL, 1994 U.S. Dist. LEXIS 7895, at *21 (N.D. Cal. June 8, 1994) (finding

16

that plaintiffs failed to show scienter and explaining that "Defendants also

17

conferred with and relied in good faith on their outside auditor); *Ortiz v. Canopy*

18

*Growth Corp.*, No. 2:19-cv-20543-KM-ESK, 2021 U.S. Dist. LEXIS 88372, at

19

*133 (D.N.J. May 6, 2021) ("[w]hile a clean audit does not rule out the possibility

20

of finding scienter, it is difficult to conclude that plaintiffs behaved recklessly in

21

omitting to inform investors facts when trained financial professionals

22

investigating the company did not conclude that such a disclosure was necessary")

23

(internal citation omitted).  The same is true with respect to whether reliance on the

24

advice of counsel can be a relevant consideration in undermining scienter.  *See*

25

*Howard v. SEC*, 376 F.3d 1136, 1147 (D.C. Cir. 2004) ("reliance on the advice of

26

counsel need not be a formal defense; it is simply evidence of good faith, a

27

relevant consideration in evaluating a defendant's scienter).

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 72 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**Basis for SEC's Objection:**

Defendants have stated in various pleadings and on multiple occasions that they are not asserting a reliance on counsel. Yet they are attempting to present that very defense in their proposed instruction to the "each defendant **relied** upon the presence and involvement of counsel and professional auditors" and that the jury may consider "a defendant's **reliance** upon the presence and involvement of counsel and/or the auditors in determining whether or not that defendant acted with knowing or reckless conduct." In light of the SEC's objections to an earlier version of this proposed instruction, Defendants have modified it to the current proposed language (as opposed to the language quoted above which overtly uses the word "reliance") but the intent of the proposed instruction remains the same: to suggest to the jury they relied on counsel and/or accountants.

In light of Defendants' position that they are not asserting a reliance on counsel defense, it would be confusing to the jury and unduly prejudicial to the SEC to allow Defendants to present a reliance on counsel defense or to suggest that they acted in good faith based on the mere presence or involvement of lawyers or accountants. *See SEC v. Lek Sec. Corp.,* No. 17cv1789 (DLC), 2019 U.S. Dist. LEXIS 192042, *9 (S.D.N.Y. Nov. 5, 2019); *SEC v. Mapp*, No. 4:16-CV-00246, 2017 U.S. Dist. LEXIS 220012, *6 (E.D. Tex. Dc. 4, 2017); *SEC v. Tourre*, 950 F. Supp.2d 666, 684 (S.D.N.Y. 2013).

It would be equally prejudicial to instruct the jury on any such evidence, particularly in the form proposed by Defendants, which allows the Defendants to present a reliance on counsel defense without meeting any of the elements of such a defense. To the extent any instruction is appropriate, the Court should instruct the jury as follows:

You have heard testimony during the course of trial concerning Defendants' use of attorneys and accountants. Do not confuse this with a reliance on counsel or

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

1  reliance on accountants defense.  The presence of attorneys or accountants is not a

2  defense unless Defendants' satisfy each of the following elements: (1) Defendants

3  made a complete disclosure to counsel [or their accountants] regarding the

4  disclosures and fiduciary duties at issue in this case; (2) Defendants' requested

5  counsel's [or their accountants] advice as to the disclosures and fiduciary duties at

6  issue in this case; (3) Defendants received advice that what they were

7  contemplating was legal; and (4) Defendants relied in good faith on that advice.

8  Defendants are not asserting such a defense.

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 74 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

## NO. 46 - OPINION STATEMENTS

During the course of this trial, you heard testimony regarding opinion statements expressed by Frost Management Company, LLC and/or Stuart Frost. The law treats a statement of opinion differently than it treats a statement of fact. A statement of fact is a thing done or existing; by contrast, a statement of opinion is a reflection of a person's belief, view, or understanding about a particular subject. For each statement that the SEC claims is a material misrepresentation, you must determine whether it is a statement of fact or opinion.  If you determine the statement was an opinion, you must determine whether the opinion was false under the law as described below.

To prove that a material misrepresentation of opinion is false, the SEC must prove that at the time the speaker made the statement of opinion:

1) the speaker did not actually believe the opinion; and

2) the statement of opinion was untrue.

As to the first element, in determining whether the speaker did not actually believe the opinion at the time it was made, you should not consider whether at a later time the opinion turned out to be incorrect.


**Authority**:  Defendants propose this instruction because it is a correct statement of the law and the SEC alleges that Frost is liable under the Advisors Act based, in part, on statements of opinion.  *See Omnicare, Inc. v. Laborers Dist. Council Const. Indus.*, 135 S. Ct. 1318, 1325-27 (2015); *Levi v. Atossa Genetics, Inc. (In re Atossa Genetics Inc. Sec. Litig.)*, 868 F.3d 784, 801-02 (9th Cir. 2017) ("when a plaintiff relies on a theory of material misrepresentation, the plaintiff must allege both that 'the speaker did not hold the belief she professed' and that the belief is objectively untrue) (quoting *City of Dearborn Heights Act 345 Police & Fire Ret.*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 75 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1    *Sys. v. Align Tech., Inc*., 856 F.3d 605, 615-16 (9th Cir. 2017) (quoting *Omnicare*,

2    135 S. Ct. at 1327, 1332))).

3    **Basis for SEC's Objection**:

4         This case is not about statements of opinion, which may or may not be

5    actionable under Section 10(b) of the Exchange Act.  This case is brought under

6    the Investment Advisors Act and concerns Defendants' breach of fiduciary duties

7    to the Funds and to the Funds' investors by making material misstatements and

8    omissions. Section 206 establishes a fiduciary duty on investment advisers to act

9    for the benefit of their clients, requiring investment advisers to exercise the utmost

10    good faith in dealing with clients, to disclose all material facts, and to employ

11    reasonable care to avoid misleading clients.  An investment adviser's failure to

12    disclose material facts regarding the adviser's conflicts of interest constitutes fraud

13    or deceit within the meaning of section 206.  *SEC v. Merrill Scott & Assocs., Ltd.*,

14    505 F. Supp. 2d 1193, 1215 (D. Utah 2007 (articulating elements); *SEC v. Capital*

15    *Gains Research Bureau, Inc.*, 375 U.S. at 191, 195, 200 (noting that Section 206

16    imposes an "an affirmative duty of utmost good faith, and full and fair disclosure

17    of all material facts" on investment advisers; proof of intent to injure or injury to

18    the client not required; "[f]ailure to disclose material facts must be deemed fraud or

19    deceit" within the meaning of Section 206); *Transamerica Mortgage Advisors, Inc.*

20    *v. Lewis*, 444 U.S. 11, 17 (1979) (Section 206 "establishes 'federal fiduciary

21    standards' to govern the conduct of investment advisers"); *Vernazza v. SEC*, 327

22    F.3d 851, 859-60 (9th Cir. 2003), *amended by*, 335 F.3d 1096 (9th Cir. 2003)

23    (conflicts of interest are material facts; knowing or reckless conduct required to

24    prove a violation of Section 206(1)); *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d

25    952, 955 (7th Cir. 2003) (investment adviser's failure to disclose material

26    information constitutes "fraud or deceit" under the Advisers Act); *SEC v. Wall*

27    *Street Publ'g Inst., Inc.*, 591 F. Supp. 1070, 1084 (D.D.C. 1984 (same); *The*

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 76 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1   *Robare Group, Ltd. v. SEC*, 922 F.3d 468, 472, 477 (D.C. Cir. 2019 (failure by an

2   investment adviser to disclose potential conflicts of interest to its clients constitutes

3   fraud within the meaning of 206(1) and (2); negligence sufficient to prove a

4   violation of 206(2)); *United States v. Tagliaferri*, 820 F.3d 568, 575 (2d Cir. 2016)

5   (intent to harm not an element under 206); *SEC v. Westport Capital Mkts., LLC*,

6   408 F. Supp. 3d 93, 103 (D. Conn. 2019) (an investment advisor may violate

7   206(1) by failing to disclose material information about the advisor's conflicts of

8   interest even if the advisor had no intent to injure his clients and even if his clients

9   were no injured at all).

10       In short, even if Defendants subjectively held the opinion that their

11   statements were true and complete and that they had no duty to disclose what else

12   they knew, their statements and omissions may still be materially misleading and

13   actionable under Sections 206(1), (2) & (4) of the Advisors Act and Rule 206(4)-8.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 77 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

# NO. 47 - PUFFERY

Vague, generalized assertions of optimism or statements of "mere puffing" are not actionable as material misrepresentations.  Statements of "mere puffing" are not capable of objective verification.

**Authority**:  Defendants propose this instruction vague, generalized assertions of optimism or statements of "mere puffing" are not actionable as material misrepresentations and have described such statements as not capable of objective verification.  *See, e.g. In re Impac Mortg. Holdings, Inc.*, 554 F. Supp. 2d 1083, 1096 (C.D. Cal. 2008) ("Various circuit courts, including the Ninth Circuit, have held that vague, generalized assertions of corporate optimism or statements of 'mere puffing' are not actionable material misrepresentations under federal securities laws . . . Because such a statement is not capable of objective verification, it is properly characterized as a statement of 'mere puffing.'"); *Gammel v. Hewlett-Packard Co.*, 905 F. Supp. 2d 1052, 1071 (C.D. Cal. 2012) (stating same).

JOINT PROPOSED JURY INSTRUCTIONS

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

**Basis for SEC's Objection**:

This case is not about statements of "mere puffing" which may or may not be actionable under Section 10(b) of the Exchange Act. This case is brought under the Investment Advisors Act and concerns Defendants' breach of fiduciary duties to the Funds and to the Funds' investors by making material misstatements and omissions. Section 206 establishes a fiduciary duty on investment advisers to act for the benefit of their clients, requiring investment advisers to exercise the utmost good faith in dealing with clients, to disclose all material facts, and to employ reasonable care to avoid misleading clients.  An investment adviser's failure to disclose material facts regarding the adviser's conflicts of interest constitutes fraud or deceit within the meaning of section 206.  *SEC v. Merrill Scott & Assocs., Ltd.*, 505 F. Supp. 2d 1193, 1215 (D. Utah 2007 (articulating elements); *SEC v. Capital Gains Research Bureau, Inc.*, 375 U.S. at 191, 195, 200 (noting that Section 206 imposes an "an affirmative duty of utmost good faith, and full and fair disclosure of all material facts" on investment advisers; proof of intent to injure or injury to the client not required; "[f]ailure to disclose material facts must be deemed fraud or deceit" within the meaning of Section 206); *Transamerica Mortgage Advisors, Inc. v. Lewis*, 444 U.S. 11, 17 (1979) (Section 206 "establishes 'federal fiduciary standards' to govern the conduct of investment advisers"); *Vernazza v. SEC*, 327 F.3d 851, 859-60 (9th Cir. 2003), *amended by*, 335 F.3d 1096 (9th Cir. 2003) (conflicts of interest are material facts; knowing or reckless conduct required to prove a violation of Section 206(1)); *Monetta Fin. Servs., Inc. v. SEC*, 390 F.3d 952, 955 (7th Cir. 2003) (investment adviser's failure to disclose material information constitutes "fraud or deceit" under the Advisers Act); *SEC v. Wall Street Publ'g Inst., Inc.*, 591 F. Supp. 1070, 1084 (D.D.C. 1984 (same); *The Robare Group, Ltd. v. SEC*, 922 F.3d 468, 472, 477 (D.C. Cir. 2019 (failure by an investment adviser to disclose potential conflicts of interest to its clients constitutes

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 79 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1   fraud within the meaning of 206(1) and (2); negligence sufficient to prove a

2   violation of 206(2)); *United States v. Tagliaferri*, 820 F.3d 568, 575 (2d Cir. 2016)

3   (intent to harm not an element under 206); *SEC v. Westport Capital Mkts., LLC*,

4   408 F. Supp. 3d 93, 103 (D. Conn. 2019) (an investment advisor may violate

5   206(1) by failing to disclose material information about the advisor's conflicts of

6   interest even if the advisor had no intent to injure his clients and even if his clients

7   were no injured at all).

8         Finally, Defendants' proposed instruction is confusing and redundant in light

9   the instructions setting forth the elements of the SEC's claims and the definition of

10  materiality.

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 80 -
JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

**NO. 48 - FIDUCIARY DUTY**

You have heard references to "fiduciary duty."  In the context of the SEC's claims, the only relevant fiduciary duty is that owed by Defendants, under Sections 206(1) and 206(2) of the Investment Adviser Act, to disclose material facts to the Funds.

**Authority**:  Defendants propose this instruction as an alternative to the SEC's proposed instruction No. 41, because the Defendants' instruction contains a correct statement of the law.  *See* 15 U.S.C. § 80b–6(1).  An investment adviser owes a fiduciary duty to his clients under Sections 206(1) and 206(2) of the Investment Adviser Act, which in this case are the Funds.  *See Securities and Exchange Commission v. Capital Gains Research Bureau, Inc.*, 375 U.S. 180, 191-92, 201 (1963).  No other fiduciary duty is at issue in this case.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

**Basis for SEC's Objection**:

Defendants' proposed instruction is an inaccurate statement of the law. In addition to the fiduciary duties that Defendants owed to the Funds under Section 206 of the Advisers Act, Defendants also owed fiduciary duties to the Funds' investors under Delaware law, thereby making their material omissions, as well as their material misstatements to investors, actionable.  Under Delaware law, unless eliminated in the entity's operating agreement, member-managers of a Delaware limited liability company owe traditional fiduciary duties to both the LCC and to its non-managing members.  *Feeley v. NHAOCG*, 62 A. 3d 649, 663 (Del Ch. 2012); *Official Comm. of Unsecured Creditors v. Goldman Sachs Credit Partners L.P. (In re Fedders North America, Inc.)*, 405 B.R. 527, 539 (Bankr. D. Del. 2009). Similarly, absent a contrary provision in the partnership agreement, the general partner of a Delaware limited partnership owes the traditional fiduciary duties of loyalty and care to the both the partnership and its partners.  *Feeley  v. NHAOCG*, 62 A. 3d at 663; *accord Paige Capital Mgmt., LLC v. Lerner Master Fund, LLC*, 2011 Del. Ch. LEXIS 116 (Aug. 8, 2011); *Wallace ex. rel. Cencom Cable Income Partners II, L.P. v. Wood*, 752 A.2d 1175, 1180 (Del. Ch. 1999); *In re USA Cafes, L.P. Litigation*, 600 A.2d 43 (Del. Chancery Ct. 1991).

In contrast to Defendants' proposed instruction, the SEC's proposed instructions regarding fiduciary duty accurately state the law, define "fiduciary duty" for the jury, and explain the application of fiduciary duties to the claims in this case.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

## NO. 49 - CONDUCT NOT ACTIONABLE

The Investment Advisers Act does not create liability for poor business judgment or failed operations or investments that does not rise to the level of negligence.

**Authority**:  Defendants propose this instruction because it is a correct statement of the law and Defendants are just as entitled as the SEC to have the jury instructed on what is or is not sufficient to establish liability under the law.  *See* 15 U.S.C. § 80b–6.

**Basis for SEC's Objection:**

The parties' proposed instructions on the elements of the SECs' claims clearly explain what the SEC must prove.  Defendants' proposed instruction is not a statement of law, is nowhere reflected in the language of Section 206 (which is the only authority cited), and is argumentative.

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 83 -
JOINT PROPOSED JURY INSTRUCTIONS
8:19-cv-01559-JLS-JDE

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

DATED: November 19, 2021   STRADLING YOCCA CARLSON & RAUTH A PROFESSIONAL CORPORATION

By:  */s/ Marc J. Schneider*
Marc J. Schneider
Jason de Bretteville
Kathleen M. Marcus
Sean T. Lobb
Lisa M. Northrup

*Attorneys for Defendant*
*STUART FROST*

DATED: November 19, 2021   CALLARI AND SUMMERS

By:  */s/ Andrew C. Callari*
Andrew C. Callari

*Attorneys for Defendant FROST*
*MANAGEMENT COMPANY, LLC*

DATED: November 19, 2021   Securities and Exchange Commission

By:  */s/ Donald W. Searles*
Donald W. Searles
Douglas M. Miller
Charles E. Canter

*Attorneys for Plaintiff*
*SECURITIES AND EXCHANGE*
*COMMISSION*

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 84 -

JOINT PROPOSED JURY INSTRUCTIONS

8:19-cv-01559-JLS-JDE

1

2

## **ATTESTATION PURSUANT TO LOCAL RULE 5-4.3.4(a)(2)(i)**
## **CERTIFICATION**

3    Under L.R. 5-4.3.4(a)(2)(i), I, Marc J. Schneider, attest that all signatories

4    identified above, and on whose behalf the filing is submitted, concur in the filing's

5    content and have authorized the filing.

6

7                                         By: /s/ Marc J. Schneider_____

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

STRADLING YOCCA
CARLSON & RAUTH
LAWYERS
NEWPORT BEACH

- 85 -
E-FILING ATTESTATION

8:19-cv-01559-JLS-JDE